Larry W. Lee (State Bar No. 228175)
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa St., Suite 1250
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile
lwlee@diversitylaw.com

Dennis S. Hyun (State Bar No. 224240)
dhyun@hyunlegal.com
**HYUN LEGAL, APC**
515 S. Figueroa St., Suite 1250
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class
[Additional Counsel on Next Page]

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENNIFER MANZO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MCDONALD'S RESTAURANTS OF CALIFORNIA INC., a corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 1:20-cv-01175-NONE-HBK<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          November 24, 2021<br>Time:          2:00 p.m.<br>Courtroom:     Yosemite Courthouse<br>Magistrate Judge: Hon. Helena M.<br>                Barch-Kuchta |

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

Edward W. Choi, Esq. SBN 211334
**LAW OFFICES OF CHOI & ASSOCIATES**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
Telephone: (213) 381-1515
Facsimile: (213) 465-4885
Email: edward.choi@choiandassociates.com

WILLIAM L. MARDER, ESQ. (CBN 170131)
bill@polarislawgroup.com
**POLARIS LAW GROUP LLP**
501 San Benito Street, Suite 200
Hollister, CA 95023
Tel: (831) 531-4214
Fax: (831) 634-0333

Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 24, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 1, of the United States District Court for the Eastern District of California, Yosemite Federal Courthouse located at 9004 Castle Cliffs Ct, Yosemite Valley, CA 95389, Plaintiff Gennifer Manzo ("Plaintiff") will and hereby does move the Court for preliminary approval of the proposed Class Action Settlement Agreement and Release ("Agreement" or "Settlement"). Specifically, Plaintiff respectfully requests that the Court: (1) grant preliminary approval for the proposed class action settlement and approval of the Private Attorneys General Act ("PAGA") settlement as set forth in the Settlement; (2) grant certification of the proposed Classes, for settlement purposes only: (a) all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from June 2, 2020 through the Preliminary Approval Date ("June 2, 2020 Subclass Class Period") and who were subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc*., Los Angeles County Superior Court Case No. BC499888 (the "June 2, 2020 Settlement Subclass"); and (b) all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from April 6, 2019 through the Preliminary Approval Date ("April 6, 2019 Subclass Class Period"), and who were not subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc*., Los Angeles County Superior Court Case No. BC499888 (the "April 6, 2019 Settlement Subclass"); (3) authorize the mailing of the proposed Notice of Class Action and PAGA Settlement ("Class Notice"); and (4) schedule a "fairness hearing," i.e., a hearing on the final approval of the settlement.

Plaintiff makes this unopposed Motion on the grounds that the proposed Settlement is within the range of possible final approval and consistent with the standards for approval of class action settlements, and notice should, therefore, be provided to the Class. This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, the attached Memorandum of Points and Authorities, the Declarations of Larry W. Lee, William L.

Marder, Edward W. Choi, Dennis S. Hyun, and Gennifer Manzo filed herewith, the Class Action Settlement Agreement and Release attached to the Declaration of Edward W. Choi, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

DATED:  October 22, 2021                      LAW OFFICES OF CHOI & ASSOCIATES


                                              By:  /s/ Edward W. Choi
                                                   Edward W. Choi
                                                   Attorneys for Plaintiff and the Class

## TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL HISTORY .............................................................................. 3

    A.   The PAGA Notice and Original Complaint. .................................... 3

    B.   Investigation and Private Mediation. ............................................... 3

III.  SUMMARY OF THE PROPOSED SETTLEMENT ...................................... 4

    A.   The Class. ............................................................................................ 4

    B.   Class Settlement Amount and Allocation ........................................ 5

    C.   PAGA Allocation ................................................................................ 5

    D.   Service Payment to Plaintiff. ............................................................ 6

    E.   Attorney's Fees and Costs. ................................................................ 6

    F.   Settlement Administration Costs. ..................................................... 6

    G.   Scope of Release. ................................................................................ 7

    H.   Proposed Implementation Schedule. ................................................ 8

IV.   PROVISIONAL AND CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE ............................................................................................... 8

    A.   The Settlement Class Satisfies FRCP 23(a) and (b). ...................... 8

        1.   Rule 23(a)(1) – Numerosity. ................................................... 9

        2.   Rule 23(a)(2) – Commonality. ................................................ 9

        3.   Rule 23(a)(3) – Typicality. ...................................................... 9

        4.   Rule 23(a)(4) – Adequacy. ...................................................... 10

    B.   Common Issues Predominate and Class-wide Treatment is Superior. ............... 11

V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ........ 11

    A.   Legal Standards for Preliminary Approval of Class Action Settlements. ......... 11

    B.   The Settlement is Fair and Reasonable and Not the Result of Fraud or Collusion. ............................................................................. 13

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1.  The Settlement Is a Fair Compromise Given the Risks and Uncertainties Presented by Continued Litigation.........................................................14

2.  The Class Settlement Amount represents 13.75% of the Maximum Penalties at Issue .....................................................................................15

3.  An Analysis of the Terms of the Settlement Agreement. .........................15

    a.  Nature of Any Injunctive Relief.......................................................15

    b.  Amount and Manner of Distribution of the Compensation to be Provided to Class Members, Including an Estimate of What Each Class Member Will Receive. ............................................................16

    c.  Whether, and Under What Circumstances, Amounts Available for Payment in Settlement Might Not Be Paid to Class Members or Might Revert to the Defendant. .......................................................16

    d.  The Scope of the Release of Class Members' Claims. ....................17

    e.  Tax Treatment of the Individual Settlement Payments. ................18

    f.  Affirmative Obligations to be Undertaken by Class Members or Class Counsel and the Reasons for Any Such Obligations. ..........18

C.  The Court Should Order Dissemination of the Notice.........................................18

    1.  The Class Notice is Accurate and Informative.........................................19

    2.  The Class Notice Satisfies Due Process. .......................................................19

D.  The Settlement of PAGA Claims Merits Approval. ..........................................20

E.  The Settlement Administrator's Fees are Reasonable. .......................................21

F.  The Service Payment to Plaintiff is Reasonable. ................................................21

G.  Class Counsel's Attorneys' Fees and Costs are Reasonable, Fair, and Appropriate. ......................................................................................................23

VI.  A FINAL APPROVAL HEARING AND ALL APPURTENANT DEADLINES SHOULD BE SET...........................................................................................................24

VII.  CONCLUSION ............................................................................................................25

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arias v. Superior Court*, 46 Cal. 4th 969 (2009) .......................................................... 5

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) .................................... 15

*Castellanos v. Pepsi Bottling Group, Inc.,* No. RG07332684 (Alameda Cnty. Super. Ct., March 11, 2010) ........................................................................................................... 22

*Early v. Superior Court,* 79 Cal. App. 4th 1420, 1427 (2000) ...................................... 23

*General Atomics v. Superior Court*, 64 Cal. App. 5th 987 (2021) ........................... 3, 14

*In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th at 1394-95 ..................... 22

*Lealao v. Beneficial California Inc.*, 82 Cal.App.4th 19, 26-30 (2000) ........................ 23

*Lubin v. The Wackenhut Corp.*, 5 Cal. App. 5th 926, 959 (2016) ................................. 9

*Maria P. v. Riles*, 43 Cal. 3d 1281, 1290-91 (1987) .................................................... 23

*Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) .............. 12, 22

*Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977) ................................................................ 23

*Trotsky v. Los Angeles Fed. Sav. & Loan*, 48 Cal.App.3d 139, 152 and fn. 13 (1975) ............... 19

*Wershba v. Apple Computer*, 91 Cal.App.4th at 254 (2001) ....................................... 23

*Westside Cmty. For Indep. Living, Inc. v. Obledo*, 33 Cal. 3d 348, 352-53 (1983) ..... 23

**Federal Cases**

*Ahmed v. Beverly Health & Rehab. Servs., Inc.*, No. 2:16–1747 WBS KJN, 2018 WL 746393, at *10 (E.D. Cal. Feb. 7, 2018) ....................................................................... 31

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ....................................... 21

*Bellinghausen v. Tractor Supply Co.*, No. 13-CV-02377-JSC, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) ................................................................................................. 26

*Birch v. Office Depot, Inc.* (S.D. Cal. Sept. 28, 2007)  Case No. 06cv1690 DMS ..................... 34

*Blum v. Stenson,* 465 U.S. 886, 900 n. 16 (1984) ...................................................... 34

*Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ................................................ 34

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

*Bond v. Ferguson Enterprises, Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) ................................................................................................ 33

*Boyd v. Bank of Am. Corp*, 2014 WL 6473804, at *8-*12, (C.D. Cal. No. 18, 2014) ................. 34

*Boyd v. Bank of America Corp.*, 300 F.R.D. 431, 440-44 (2014) .................................................. 20

*Chun-Hoon v. McKee Foods Corp.,* 2009 WL 3349549, at *2 (N.D. Cal. Oct. 15, 2009) .......... 22

*Churchill Village v. General Electric*, 361 F.3d at 576 (9th Cir. 2004) ........................................ 23

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ................................ 22, 23

*Cordy v. USS-Posco Indus.,* 2013 U.S. Dist. LEXIS 108952, at *3 (N.D. Cal. 2013) ................. 22

*Garner v. State Farm Mut. Auto. Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................................................................ 33

*Greko v. Diesel U.S.A., Inc*., No. 10–cv–02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) ....................................................................................................................... 26

*Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990) ................................................................... 23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ......................................... passim

*Harris v. Radioshack Corp.*, No. C–07–4499 EMC, 2010 WL 3155645, at *3-4 (N.D. Cal. Aug. 9, 2010) .......................................................................................................... 31

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ..................................... 19

*In re Armored Car Antitrust Litig*., 472 F. Supp. 1357 (N.D. Ga. 1979) .................................... 24

*In re Chicken Antitrust Litig*., 560 F. Supp. 957, 962 (N.D. Ga. 1980) ....................................... 23

*In re NJOY Consumer Class Action Litigation,* 120 F. Supp. 3d 1050, 1091 (C.D. Cal. 2015) ... 19

*In re Pac. Enters. Securities Litig.,* 47 F.3d 373, 378 (9th Cir. 1995) ......................................... 23

*In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ........................... 24

*Louie v. Kaiser Found. Health Plan, Inc*., No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314 .................................................................................................................... 33

*Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668 (9th Cir. 2021) ......................................... 14

*Magadia v. Wal-Mart Associates, Inc.,* 2018 WL 339139 (N.D. Cal. 2018 .......................... 20, 25

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987) .................................................................................................................. 23

*Martin v. FedEx Ground Package Sys., Inc.* (N.D. Cal. Decl. 31, 2008) No. C 06-6883 VRW, 2008 WL 5478576 ...................................................................................................... 34

*Martin v. Legacy Supply Chain Servs. II, Inc.*, No. 3:16-cv-02471-WQH-BLM, 2018 WL 828131, at *2 (S.D. Cal. Feb. 12, 2018) ...................................................................... 31

*Mex. Workers v. Ariz. Citrus Growers,* 904 F. 2d 1301, 1311 (9th Cir. 2002)............................ 34

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).... 23, 24

*O'Connor v. Uber Techs.*, 201 F. Supp. 3d. 1110, 1134 (N.D. Cal. 2016) ........................... 30, 31

*Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989)................................................................ 23

*Quezada v. Con-Way Freight, Inc.* (N.D. Cal. Jan. 15, 2015)  No. 09-cv-3670.......................... 34

*Rieve v. Coventry Healthcare Inc.* (C.D. Cal. Aug. 8, 2014)  No. 11-cv-1032-DOC ................ 34

*Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 965 (9th Cir. 2009).................................... 23

*Singer v. Becton Dickinson and Co.* (S.D. Cal. Jun. 1, 2010)  No. 08-CV-821-IEG (BLM) 2010 WL 2196104 .......................................................................................................... 34

*Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571 (E.D. Pa. 1978) ....... 24

*Spann v. J.C. Penney Corp.,* 314 F.R.D. 312, 319 (C.D. Cal. 2016)............................... 22, 23, 30

*Stafford v. Brink's, Inc.*, 2015 WL 12699458 (C.D. Cal., 2015) ................................................ 19

*Stanton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003) ......................................................... 32

*Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979).............................................................. 23

*Stuart v. Radioshack Corp.* (N.D. Cal. Aug. 9, 2010) No. C-07-4499 EMC, at *5-*7, 2010 WL 3155645 ................................................................................................................ 34

*Van Ba Ma v. Covidien Holding Inc.*, U.S. Dist. Ct. Case No. 8:12-cv-02161 (C.D. Cal. 2014) 26

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995)......................... 32

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010)..................... 33, 34

*Viceral v. Mistras Gorup, Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) ..................................................................................................... 31

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6
   (N.D. Cal. Nov. 21, 2012) ................................................................................................ 26

*Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987) ................................................ 20

*West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558 . 33

*Willner v. Manpower Inc.*, 35 F.Supp.3d 1116, 1127 (N.D. Cal., 2014) ..................................... 20

*Wren v. RGIS Inventory Specialties,* 2011 U.S. Dist. Lexis 38667, at *19 (N.D. Cal April 1,
   2011) ............................................................................................................................ 23, 34

## Statutes

2699(e)(2) ........................................................................................................................ 20, 21

2699(g) ................................................................................................................................ 23

2699(l)(2) of the California Labor Code ................................................................................. 20

Cal. Labor Code § 2698 ......................................................................................................... 3

Civil Code § 1542 .................................................................................................................. 8

Civil Code section 1542 .................................................................................................... 18, 23

Labor Code § 226 ............................................................................................................... 1, 3

Labor Code section 226(a) ..................................................................................................... 4

Section 226(e) ....................................................................................................................... 4

## Other Authorities

3 Newberg § 8:32 ................................................................................................................. 19

4 Newberg § 11.25 ............................................................................................................... 11

4 Newberg § 11:25 ............................................................................................................... 11

*Newberg*, § 14:6 ................................................................................................................... 23

## Rules

23(a) and (b) .......................................................................................................................... 8

23(c)(2)(B) ........................................................................................................................... 19

F.R.C.P. 23(e)(2) .................................................................................................................. 12

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND
PAGA SETTLEMENT**

Fed. R. Civ. P. 23(a) ................................................................................................ 8, 9, 11

Fed. R. Civ. P. 23(a) and (b) ................................................................................................ 8

Fed. R. Civ. P. 23(b)(3) ................................................................................................ 11

Fed. R. Civ. P. 23(e)(1) ................................................................................................ 19

Fed. R. Civ. P. 23(e)(2) ................................................................................................ 8

**Rule 23(a)(4)** ................................................................................................ 10

Rule 23(c)(2)(B) ................................................................................................ 18

Rule 23(e) ................................................................................................ 18, 19

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND
PAGA SETTLEMENT

## MEMORANDUM OF POINTS & AUTHORITIES

Plaintiff Gennifer Manzo ("Plaintiff") submits this memorandum of points and authorities in support of her Motion for Preliminary Approval of Class Action and Private Attorneys General Act Settlement ("Motion"). The Motion is not opposed by Defendant McDonald's Restaurants of California, Inc. ("McDonald's" and "Defendant").[1]

## I.   INTRODUCTION

This class action was initially brought on behalf the following classes:

> All of Defendant's past and present non-exempt California employees who worked for Defendant were paid any overtime wages at any time from April 6, 2019, through the present. (the "Overtime Class");
>
> All of Defendant's past and present non-exempt California employees who worked for Defendant were paid any MQI True Up wages at any time from April 6, 2019, through the present. (the "True Up Class").

(Complaint at ¶¶ 16(a), (b)).

This is a wage statement case for violation of Labor Code § 226 and the Private Attorneys General Act (the "PAGA") involving two distinct claims.  First, Plaintiff claimed that whenever overtime wages were paid to Plaintiff and Class Members, the wage statements did not identify the overtime rate as 1.5 times the regular rate of pay. Rather, the overtime rates appeared as one-half (0.5) the base hourly rate of pay. Second, Plaintiff claimed that whenever "MQI True Up" wages were paid to Plaintiff and Class Members, the wage statements failed to identify the correct rates of pay and applicable number of hours for such wages. While such payments were overtime wage payments, Plaintiff alleged that the wage statements do not appropriately identify what applicable rates and hours were applied to such payments.

The Parties, however, settled on behalf of the following classes:

> 2.23.1  The "June 2, 2020 Settlement Subclass" consists of all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime

---

[1] Capitalized terms herein shall have the same meaning as in the Class Action Settlement Agreement and Release ("Agreement," "Settlement" or "SA"), a copy of which is attached as Exhibit A to the Declaration of Edward W. Choi ("Choi Decl.") filed concurrently herewith.

and/or MQI True Up wages at any time from June 2, 2020 through the Preliminary Approval Date ("June 2, 2020 Subclass Class Period") and who were subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc*., Los Angeles County Superior Court Case No. BC499888.

2.23.2  The "April 6, 2019 Settlement Subclass" consists of all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from April 6, 2019 through the Preliminary Approval Date ("April 6, 2019 Subclass Class Period"), and who were not subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc*., Los Angeles County Superior Court Case No. BC499888.

(Agreement at §§ 2.23.1, 2.23.2).

The Parties modified the classes because of a prior class action settlement in *Sanchez v. McDonald's Restaurants of Cal., Inc.*, Los Angeles County Superior Court Case No. BC499888 (the "*Sanchez* Action"), which released all wage statement claims with an end date of June 1, 2020.  Thus, the Parties agreed to a settlement for all class members who were subject to the *Sanchez* Action settlement starting on June 2, 2020.  For all other class members not subject to the *Sanchez* Action settlement, their claims are being released for the entire class period in this action, *i.e.*, April 6, 2019, through the date that this Court grants preliminary approval.

As demonstrated below and in the accompanying declarations of Larry W. Lee, William L. Marder, Edward W. Choi, Dennis S. Hyun, and Gennifer Manzo, the proposed settlement warrants the Court's approval. This settlement was reached after extensive investigation and the exchange of pre-mediation information, including Defendant's provision of relevant wage statements and pay period data. Plaintiff and Defendant (collectively, the "Parties") also attended a full day mediation with Michael Loeb, Esq., a well-respected wage and hour class action mediator, thereby reaching the Settlement. Furthermore, the proposed Settlement provides for a non-reversionary gross settlement payment of $2,000,000.00 (the "Gross Settlement Amount"). After deducting the Class Counsel's Attorneys' Fees and Costs, Plaintiff's Service Award, Settlement Administration Costs, and the PAGA penalties paid to the California Labor Workforce & Development Agency (the "LWDA") as required by law, a Net Settlement Amount of approximately $1,188,333.33 will be available for distribution to Class Members who do not opt-out of the Settlement.

2

The proposed Settlement embodies all of the features of settlement that is fair, reasonable, adequate, and in the best interest of the Class Members. It is the product of arm's-length negotiations, was negotiated by experienced class action attorneys and reflects a reasoned compromise between the strength and value of the Class' claims and the inherent risks of continued litigation.

## II.    PROCEDURAL HISTORY

### A.    The PAGA Notice and Original Complaint.

On August 13, 2020, Plaintiff electronically submitted her written notice of Defendant's alleged violations of Labor Code § 226(a) to the LWDA and to Defendant via certified mail. (Declaration of Edward W. Choi ("Choi Decl.") ¶ 3).  On August 20, 2020, Plaintiff filed the Action asserting class and representative claims on behalf of herself and a proposed class consisting of all "past and present non-exempt California employees who worked for Defendant [and] were paid any overtime wages at any time from April 6, 2019, through the present" and all "past and present non-exempt California employees who worked for Defendant [and] were paid any MQI True Up wages at any time from April 6, 2019, through the present," alleging two causes of action: (1) violation of Cal. Labor Code § 226 (failure to provide accurate wage statements) and (2) violation of the PAGA, Cal. Labor Code § 2698, *et seq*. (Choi Decl. ¶4)

Defendant denies Plaintiff's allegations in their entirety and has asserted numerous affirmative defenses.  As an initial matter, Defendant would have attempted to rely on the Ninth Circuit's decision in *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668 (9th Cir. 2021), in which the Court held that an employer need not list the hourly rates and hours worked for an overtime adjustment earned in prior pay periods.  Defendant would have argued that the MQI-True Up is a similar overtime adjustment earned in prior pay periods.  Similarly, Defendant would have pointed to the California Court of Appeal's decision in *General Atomics v. Superior Court*, 64 Cal. App. 5th 987 (2021), in which the Court held that an employer could report daily overtime as a 0.5 premium.  While Plaintiff disagrees with *Magadia* and *General Atomics*, these cases nonetheless show the risks inherent with litigation.

### B.    Investigation and Private Mediation.

While Plaintiff prepared formal written discovery and planned to propound said discovery, the Parties agreed to stay formal discovery and instead attempt to resolve this case through mediation.  (Choi Decl. ¶ 5).  In advance of the mediation, Defendant provided data, including the number of putative class members and the number of wage statements issued to putative class members during the liability period, which allowed Plaintiff to conduct a full damages analysis. (Choi Decl. ¶ 6).

On May 17, 2021, the Parties participated in private mediation with Michael Loeb, Esq., a well-regarded neutral with experience mediating employment matters. (Choi Decl. ¶ 10). During the mediation, the Parties spoke at length about the strengths and weaknesses of each side's claims and defenses, the certifiability of the claims, and the scope of Defendant's liability. *Id.* Defendant argued that Plaintiff would be unable to establish a class-wide injury and/or a "knowing and intentional" violation of Labor Code section 226(a), as required by Section 226(e). *Id.* at ¶11.  As argued by Defendant, its wage statements complied fully with California law. *Id.* Defendant further argued that it acted in good faith and any violation was neither knowing, intentional, nor willful. *Id.* Defendant also maintained that maximum liability exposure is unrealistically high and subject to significant reduction. *Id.*.

After a full day of negotiation, the Parties were able to reach an agreement for settlement and the key terms, as detailed fully in the Settlement Agreement. (Choi Decl. ¶12, Ex. A).

## III.   SUMMARY OF THE PROPOSED SETTLEMENT

### A.   The Class.

Again, the Settlement covers the following classes:

> 2.23.1  The "June 2, 2020 Settlement Subclass" consists of all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from June 2, 2020 through the Preliminary Approval Date ("June 2, 2020 Subclass Class Period") and who were subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc*., Los Angeles County Superior Court Case No. BC499888.

> 2.23.2  The "April 6, 2019 Settlement Subclass" consists of all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from April 6, 2019 through

4

the Preliminary Approval Date ("April 6, 2019 Subclass Class Period"), and who were not subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc*., Los Angeles County Superior Court Case No. BC499888.

(Agreement at §§ 2.23.1, 2.23.2).

Approximately 5,500 individuals comprise these settlement classes. (Choi Decl. ¶ 16).

**B.      Class Settlement Amount and Allocation.**

Pursuant to the Settlement, Defendant will pay the gross amount of $2 million—the Class Settlement Amount—to resolve the claims of Settlement Class Members (i.e., Class Members who do not opt-out of the Settlement). (Settlement Agreement at § 3.1). In the case of the Settlement Class Members who do opt out, the Individual Settlement Payment shall be for $10.00, in consideration of their release of the PAGA Claims or remedies under the Final Judgment pursuant to *Arias v. Superior Court*, 46 Cal. 4th 969 (2009). (*Id.* at § 10.4.1). The balance of the Gross Settlement Amount remaining after deduction of Class Counsel's approved attorneys' fees and costs, Plaintiff's Service Award, the LWDA's PAGA Penalty, and Settlement Administration Costs ("Net Settlement Amount"), will be available for distribution to Settlement Class Members. (*Id.* at § 3.2). Plaintiff's counsel estimates that the Net Settlement Amount will be at least $1,188,333.33. (Choi Decl. ¶13).

Based on the number of Class Members, each Class Member will be entitled to recover, on raw average, up to $216.06. (Choi Decl. ¶ 16). Further, based on the Gross Settlement Amount of $2 million and approximately 57,000 wage statements at issue, the settlement achieves approximately $35.09 per wage statement. (*Id.* at ¶17) The amount any particular Class Member will be entitled to recover will be greater or lower than this average depending on the number of violative wage statements received during the Class Period. (Settlement Agreement at § 9.2). This is fair, as it directly allocates greater penalties to individual Class Members who have allegedly suffered greater harm. (Choi Decl. ¶16).

**C.      PAGA Allocation**

Pursuant to the Settlement Agreement and subject to judicial approval, $100,000 of the Gross Settlement Amount will be allocated to settle all claims under PAGA. (Settlement

Agreement at § 2.14). Seventy-five percent of that amount, or $75,000, will be paid to the California Labor & Workforce Development Agency. (*Id.*). The remaining 25%, or $25,000, will be included as part of the Net Settlement Amount to be distributed to the Settlement Class Members. (*Id.*).

**D.    Service Payment to Plaintiff.**

Pursuant to the terms of the Settlement Agreement, and without opposition from Defendant, Plaintiff will also be entitled to request a Service Award in the amount of $10,000. (Settlement Agreement § 2.20). This amount is to compensate Plaintiff for her efforts and work in prosecuting this case, including meeting and communicating with her counsel, reviewing the pleadings and documents in this case, and for executing a general release under California Civil Code § 1542. (Manzo Decl. ¶¶ 7-8, 11; Settlement Agreement at § 2.20). Any portion of the Service Award not approved by the Court shall be added to the Net Settlement Amount for distribution to the Settlement Class.

**E.    Attorney's Fees and Costs.**

Similarly, Class Counsel will seek an award of attorneys' fees of not more than 1/3 of the Gross Settlement Amount or $666,666.67, as well as declared litigation costs not to exceed $30,000.00 in connection with the prosecution of this Class Action. (Settlement Agreement at §§ 2.2, 2.22). Any portion of the Class Counsel Award not used or approved by the Court shall be added to the Net Settlement Amount for distribution to the Settlement Class.

**F.    Settlement Administration Costs.**

The Parties have selected ILYM as the Settlement Administrator. (Settlement Agreement at § 2.21). The anticipated costs for the settlement administration are not to exceed $30,000.00 and will be deducted from the Gross Settlement Amount. (Settlement Agreement at § 2.22). Plaintiff and his counsel believe that this amount is reasonable in relation to the value of the settlement and due to the number of class members involved. (Choi Decl. ¶ 14). Any portion of the administration costs not used or approved by the Court shall be added to the Net Settlement Amount for distribution to the Settlement Class.

///

G.      **Scope of Release.**

In exchange for the payments described above, Plaintiff and all Settlement Class Members will release Defendant and the Released Parties as follows:

8.1      June 2, 2020 Subclass Released Claims. In exchange for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all June 2, 2020 Settlement Subclass Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, individually and on behalf of their Legally Authorized Representatives, heirs, estates, trustees, executors, administrators, representatives, agents, successors, and assigns, and anyone claiming through them or acting or purporting to act on their behalf, past or present, fully and without limitation release and discharge each and all of the Released Parties from any and all claims for damages and/or penalties for alleged violations of § 226 of the California Labor Code and for penalties under § 2698, et seq. premised upon violation of Labor Code § 226 for the time period of June 2, 2020, through June 30, 2021, except that the release for claims relating to the display of MQI True Up shall extend through the date the Court grants final approval of the Settlement. This release covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing Plaintiff or Settlement Class Members, or by Plaintiff or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, the administration of such Settlement, and/or the released claims, except to the extent otherwise specified in the Agreement.

8.2      April 6, 2019 Subclass Released Claims. In exchange for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all April 6, 2019 Settlement Subclass Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, individually and on behalf of their Legally Authorized Representatives, heirs, estates, trustees, executors, administrators, representatives, agents, successors, and assigns, and anyone claiming through them or acting or purporting to act on their behalf, past or present, fully and without limitation release and discharge each and all of the Released Parties from any and all claims for damages and/or penalties for alleged violations of § 226 of the California Labor Code and for penalties under § 2698, et seq. premised upon violation of Labor Code § 226 for the time period of April 6, 2019, through June 30, 2021, except that the release for claims relating to the display of MQI True Up shall extend through the date the Court grants final approval of the Settlement. This release covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing Plaintiff or Settlement Class Members, or by Plaintiff or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, the administration of such Settlement, and/or the released

claims, except to the extent otherwise specified in the Agreement.

(Settlement Agreement at §§ 8.1, 8.2).  Further, Plaintiff executed a general release as part of the

settlement, including any rights under Civil Code § 1542.  (*Id.* at § 8.3).

### H.    Proposed Implementation Schedule.

The Settlement Agreement contemplates the following schedule to administer the

Settlement:

| Event | Deadline |
|---|---|
| Defendant to provide Class Information to the Settlement Administrator. | No more than twenty (20) business days after the Court's execution of the Order Granting Preliminary Approval. (Settlement Agreement § 5.1) |
| Settlement Administrator to mail the Class Notice. | No more than twenty (20) business days after its receipt of the Class Information from Defendant. (Settlement Agreement § 5.3) |
| Deadline for Class Members to object to or opt out of the Settlement. | No later than forty-five (45) calendar days after the mailing of the Class Notice or fifteen (15) calendar days after the re-mailing of a Settlement Class Member's Notice. (Settlement Agreement §§ 6.1, 7.1) |
| Deadline for Plaintiff to file Motion for Final Approval and application for attorneys' fees and costs. | Not less than 28 calendar days before the Final Approval hearing. |

## IV.    <u>PROVISIONAL AND CONDITIONAL CERTIFICATION OF THE CLASS IS</u>
## <u>APPROPRIATE</u>

Federal Rule of Civil Procedure 23 requires that all class action settlements satisfy two

primary prerequisites before a court may grant certification for purposes of preliminary approval:

(1) that the settlement class meets the requirements for class certification if it has not yet been

certified (Fed. R. Civ. P. 23(a) and (b)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

1998)); and (2) that the settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)).

Here, both requirements for preliminary approval of this class action settlement are satisfied.

### A.    The Settlement Class Satisfies FRCP 23(a) and (b).

To be certified, a settlement class must meet the following criteria: (1) numerosity, (2)

typicality of the class representatives' claims, (3) adequacy of representation, (4) predominance

of common issues, and (5) superiority. Fed. R. Civ. P. 23(a); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Here, as set forth below, all of these factors are met and provisional certification of the Class is appropriate.

### 1.   Rule 23(a)(1) – Numerosity.

Numerosity is easily satisfied as there are approximately 5,500 Class Members. (Choi Decl. ¶ 16); *see also Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (40 members are numerous enough). Further, the proposed Class is readily ascertainable because all Class Members have worked for Defendant and can be easily identified through its employee and payroll records. *In re NJOY Consumer Class Action Litigation,* 120 F. Supp. 3d 1050, 1091 (C.D. Cal. 2015).

### 2.   Rule 23(a)(2) – Commonality.

The commonality requirement is met if there are questions of law and fact that are common to the class. *Hanlon*, 150 F.3d at 1019. Plaintiff contends, and Defendant does not dispute for settlement purposes, that commonality is satisfied.  (Settlement Agreement at § 4.2). The claims of Plaintiff and the Class Members all flow from the same factual and legal issues, *i.e.*, Defendant's alleged failure to provide accurate itemized wage statements.[2]

### 3.   Rule 23(a)(3) – Typicality.

The typicality requirement is met if the named representative's claims are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F. 3d at 1020. Plaintiff contends, and Defendant does not dispute for settlement purposes, that Plaintiff's claims are typical of the claims of the Class because they arise from the same factual basis and are based upon the same legal theories as those applicable to the Class Members. (Manzo Decl. ¶¶ 3-5); *see also Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). Plaintiff worked for Defendant during the relevant time period, was subjected to the same alleged violations.  (*Id.*).

---

[2] Court routinely grant class certification for similar wage statement violations. *See Stafford v. Brink's, Inc.*, 2015 WL 12699458 (C.D. Cal., 2015); *Willner v. Manpower Inc.*, 35 F.Supp.3d 1116, 1127 (N.D. Cal., 2014); *see also Boyd v. Bank of America Corp.*, 300 F.R.D. 431, 440-44 (2014); *Magadia v. Wal-Mart Associates, Inc.,* 2018 WL 339139 (N.D. Cal. 2018) *Lubin v. The Wackenhut Corp.*, 5 Cal. App. 5th 926, 959 (2016).

Furthermore, even if Plaintiff was not serving as Class Representative, Plaintiff would be a member of the Class because her wage statements allegedly did not list the accurate overtime rates and the hours and rates for the MQI True Up wages.  (Manzo Decl. ¶ 5).  Thus, Plaintiff's claims are typical of the Class and satisfy this requirement.

### 4.    Rule 23(a)(4) – Adequacy.

The adequacy requirement is met if the named representative and his or her counsel have no interests adverse to those of the Class Members and are committed to vigorously prosecuting the case on behalf of the class. *Hanlon*, 150 F. 3d at 1020. Plaintiff contends, and Defendant does not dispute for settlement purposes, that those requirements are met.  (Settlement Agreement at § 4.2).

Throughout this case, Plaintiff has committed to prosecuting this Action on behalf of the Class Members by, among other things, locating and retaining attorneys, filing this Action and willingly putting Plaintiff's name on a public lawsuit, participating in investigation and reviewing the settlement documents with counsel. (Manzo Decl. ¶¶6-8). Plaintiff understands the claims and theories being advanced and has no conflicts with the other members of the Class. (*Id.* ¶6). Plaintiff's interests in prosecuting this Class Action and obtaining the most beneficial recovery possible fully comport with the interests of the Class Members. *Hanlon*, 150 F. 3d at 1021. Moreover, any Class Member who wishes to opt-out or object to the settlement will have the opportunity to do so. (Settlement Agreement at §§6.1, 7.1).

In addition, Class Counsel have no conflicts of interest and have vigorously prosecuted the Class Action on behalf of Plaintiff and the Class. (Declaration of Larry W. Lee ("Lee Decl.") ¶ 2; Declaration of William Marder ("Marder Decl.") ¶ 11; Choi Decl. ¶19; Declaration of Dennis Hyun ("Hyun Decl.") ¶ 9). Class Counsel's commitment to this case is not only demonstrated by their experience in litigating similar cases, having been certified by numerous state and federal courts as competent and adequate class counsel, but also by the substantial monetary and non-monetary relief they have conferred and will continue to confer upon the Class Members through their representation. (Lee Decl. ¶¶ 7-10; Marder Decl. ¶¶ 2-9; Choi Decl. ¶20; Hyun Decl. ¶¶ 3-6).

B.    **Common Issues Predominate and Class-wide Treatment is Superior.**

Class certification is authorized where common questions of law and fact predominate over individual questions and where class-wide treatment of a dispute is superior to individual litigation. Fed. R. Civ. P. 23(a) and (b)(3). Courts may consider that the class will be certified for settlement purposes only and that the manageability of trial is therefore irrelevant. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). Here, Class Members share a common nucleus of operative facts and potential legal remedies. SA § C-48; *see also Hanlon*, 150 F. 3d at 1022. Plaintiff contends, and Defendant does not dispute for settlement purposes, that common questions about Defendant's policies and practices predominate over individual questions, and the Class Members' potential legal remedies are identical – *i.e.*, all Class Members were subject to Defendant's allegedly unlawful practices of failing to provide accurate itemized wage statements. Further, class-wide determination of these issues is superior to other available methods for the fair and efficient adjudication of the controversy. *Hanlon*, 150 F. 3d at 1023.

## V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

A.    **Legal Standards for Preliminary Approval of Class Action Settlements.**

The purpose of the preliminary evaluation of a proposed class action settlement is to determine whether the settlement is within the range of possible approval, and thus whether notice to the class of the terms and conditions of the settlement and the scheduling of a formal fairness hearing are warranted. *Spann v. J.C. Penney Corp.,* 314 F.R.D. 312, 319 (C.D. Cal. 2016); 4 *Newberg* § 11.25. In passing on class action settlements, this Court has broad discretion to determine whether a settlement is fair under the circumstances of the case. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), cert. denied. Indeed, the Court need only find that the settlement falls within the range of possible final approval, also described as the "reasonable range." *Cordy v. USS-Posco Indus.,* 2013 U.S. Dist. LEXIS 108952, at *3 (N.D. Cal. 2013); 4 *Newberg* § 11:25.

To make this fairness determination, courts consider several relevant factors, including "the strength of the plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in

settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel…." *Hanlon*, 150 F.3d at 1026 (citations omitted). "[I]f the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing." *Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, at *2 (N.D. Cal. Oct. 15, 2009).  Courts must determine: whether "the class representatives and class counsel have adequately represented the class"; whether the proposal was "negotiated at arm's length"; whether "the relief provided for the class is adequate, taking into account" factors including the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, and any proposed award of attorney's fees; and whether "the proposal treats class members equitably relative to each other." F.R.C.P. 23(e)(2).[3] As explained further below, each of these factors supports preliminary approval.

Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialties,* 2011 U.S. Dist. Lexis 38667, at *19 (N.D. Cal April 1, 2011). The Ninth Circuit has repeatedly ruled that courts "put a good deal of stock in [class settlements that are] the product of arms-length, non-collusive, negotiated resolution." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 965 (9th Cir. 2009); *Hanlon*, 150 F.3d at 1027. Accordingly, a court's inquiry "into what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027.

A settlement is presumed fair where: (1) it is reached through arm's length bargaining;

---

[3] Rule 23(e)(2)(C) also requires the court to consider "any agreement required to be identified under Rule (e)(3)."  Here, the only such agreement is the Settlement discussed throughout this Motion.

(2) investigation and discovery are sufficient to allow counsel and the court to act intelligently;

(3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.

*Spann, supra,* 314 F.R.D. at 323. The law and public policy strongly favor settlement prior to

trial, particularly in class actions and other complex cases where substantial resources can be

conserved by avoiding the time, expense, and rigors of litigation. *Churchill Village*, 361 F.3d at

576; *In re Pac. Enters. Securities Litig.,* 47 F.3d 373, 378 (9th Cir. 1995); *Class Plaintiffs*, 955

F.2d at 1276. The Settlement here satisfies all of the legal standards for preliminary approval.

### B.     The Settlement is Fair and Reasonable and Not the Result of Fraud or Collusion.

Courts presume the absence of fraud or collusion in the negotiation of settlement unless

evidence to the contrary is offered. *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars*

*Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co*., 834 F.2d 677, 682 (7th Cir. 1987); *In*

*re Chicken Antitrust Litig*., 560 F. Supp. 957, 962 (N.D. Ga. 1980). Courts do not substitute their

judgment for that of the proponents, particularly where, as here, settlement has been reached

with the participation of experienced counsel familiar with the litigation. *Nat'l Rural Telecomms.*

*Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Hammon v. Barry*, 752 F. Supp.

1087 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979); *In re Armored Car*

*Antitrust Litig*., 472 F. Supp. 1357 (N.D. Ga. 1979); *Sommers v. Abraham Lincoln Federal Sav.*

*& Loan Ass'n*, 79 F.R.D. 571 (E.D. Pa. 1978).

While the recommendations of counsel proposing the settlement are not conclusive, the

Court can properly take them into account, particularly where, as here,  they appear to be

competent, have experience with this type of litigation, and have exchanged substantial evidence

from the opposing party and a highly experienced mediator was involved in the negotiations. *See*

*Newberg on Class Actions*, *supra*, at § 11.47; *Nat'l Rural Telecomms. Coop*., 221 F.R.D. at 528

(quoting *In re Paine Webber Ltd. P'ships Litig*., 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("[s]o

long as the integrity of the arm's length negotiation process is preserved, however, a strong

initial presumption of fairness attaches to the proposed settlement…[citations] and 'great weight'

is accorded to the recommendations of counsel, who are most closely acquainted with the facts

of the underlying litigation").

Here, both Plaintiff's and Defendant's counsel have a great deal of experience in wage and hour class action litigation. Plaintiff's counsel has been approved as class counsel in a number of wage and hour class actions and have extensive litigation experience. (Lee Decl. ¶¶ 7-10; Marder Decl. ¶¶ 2-9; Choi Decl. ¶¶23-24; Hyun Decl. ¶¶ 3-6).  Moreover, as discussed above, Plaintiff's counsel conducted an adequate investigation of the allegations involved in this case since its inception. (Choi Decl. ¶¶ 5-9). Each side has apprised the other of their respective factual contentions, legal theories and defenses, resulting in extensive arms' length negotiations taking place among the Parties. (*Id.* ¶¶10-12).

Despite the asserted fairness of the settlement terms, as set forth in the Class Notice, should any Class Member wish to pursue his or her own case for the claims being released herein, each Class Member has the right to submit a request for exclusion (*i.e.*, opt-out) from the settlement of the class claims.  (Settlement Agreement at §§ 6.1, 7.1).  Moreover, as set forth in the Class Notice, Class Members are advised of their right to attend the final approval hearing and object to any of the terms contained in the proposed Settlement Agreement. (Settlement Agreement Exh. A).

### 1. The Settlement Is a Fair Compromise Given the Risks and Uncertainties Presented by Continued Litigation.

Although Plaintiff believes that a class can be certified, Plaintiff also believes in the fairness of the settlement that is based on factoring in the uncertainty and risks to Plaintiff involved in not prevailing on one or more of the theories alleged in the Complaint, the possibility of non-certification and potential for appeals, and the costs of litigation. (Lee Decl. ¶ 4; Marder Decl. ¶ 10; Choi Decl. ¶¶18, 21; Hyun Decl. ¶¶ 7-8).

As discussed herein, Defendant asserted numerous defenses aimed at circumscribing both the Class' claims and the recoverable penalties. First, Defendant would have likely attempted to rely on *Magadia* and *General Atomics*, which again, Plaintiff disputes.  Nevertheless, such cases show the risks inherent in litigation, including the possibility that a court could find McDonald's wage statements compliant and Plaintiff and the class could recover nothing.  However, even if a

violation could be shown, Defendant would have argued that Plaintiff could not establish the "injury" or "knowing and intentional" elements of his Labor Code section 226(a)(6) claim where the alleged inaccuracies did not themselves cause any distinct injury.

Further, as to PAGA, Defendant would have argued for a reduction in penalties. The Court of Appeal's decision in *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) is instructive. In *Carrington*, while the plaintiff prevailed on his PAGA claim upon trial, the trial court reduced the maximum PAGA penalty amount by 90%, citing the employer's good faith attempt at complying with the law. *Id.* at 517. Upon review, the Court of Appeal found such reduction to be proper. *Id.* at 539. Again, the *Carrington* decision was after Plaintiff actually prevailed at trial, and even then, the PAGA penalties were reduced by 90%.

### 2. The Class Settlement Amount represents 13.75% of the Maximum Penalties at Issue

Based on the data provided by Defendant, Class Counsel estimated total penalties to be approximately $14,539,900. Choi Decl. ¶¶5-9. Therefore, Plaintiff's settlement of $2 million is about 13.75% of the total estimated liability, which is superior to other recently approved settlements. *See*, *e.g.*, *Bellinghausen v. Tractor Supply Co*., No. 13-CV-02377-JSC, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) (holding that class action settlement recovering between 8.5% and 25% of the defendant's potential exposure was fair); *Van Ba Ma v. Covidien Holding Inc*., U.S. Dist. Ct. Case No. 8:12-cv-02161 (C.D. Cal. 2014) (court granted preliminary approval of wage and hour class settlement which obtained only 9.1% of projected damages, given the risks of continued litigation) *Villegas v. J.P. Morgan Chase & Co*., No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (holding that gross class action settlement of approximately 15% of the potential recovery was fair and reasonable); *Greko v. Diesel U.S.A., Inc*., No. 10–cv–02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24% was reasonable).

### 3. An Analysis of the Terms of the Settlement Agreement.

#### a. Nature of Any Injunctive Relief.

The Settlement Agreement does not provide for any injunctive relief.

b.    **Amount and Manner of Distribution of the Compensation to be Provided to Class Members, Including an Estimate of What Each Class Member Will Receive.**

The Settlement provides for a gross Class Settlement Amount of $2 million.  (Settlement Agreement at § 3.1).  The Net Settlement Amount (calculated after deduction of the Class Counsel Award, Plaintiff's Service Award, the LWDA's PAGA Penalty payment, and Settlement Administration Costs) will be paid to all Class Members who do not opt out of the settlement (*i.e.* Settlement Class Members).  (*Id.* at § 3.2). Plaintiff's counsel estimates that the Net Settlement Amount will be at least $1,188,333.33. (Choi Decl. ¶13).

The amount any particular Class Member will be entitled to recover will be greater or lower than this average depending on the number of allegedly violative wage statements received during the Class Period. (Settlement Agreement at §§ 9.2, 9.3). This is fair, as it directly allocates greater penalties to individual Class Members who have allegedly suffered greater harm.  (Choi Decl. ¶ 16).  Based on the number of Class Members, each Class Member will be entitled to recover, on raw average, up to $216.06.  (*Id.*).  Further, based on the Gross Settlement Amount of $2 million and approximately 57,000 wage statements at issue, the settlement achieves approximately $35.09 per wage statement.  (*Id.* at ¶17)  The amount any particular Class Member will be entitled to recover will be greater or lower than this average depending on the number of allegedly violative wage statements received during the Class Period. (Settlement Agreement at §§ 9.2, 9.3).

c.    **Whether, and Under What Circumstances, Amounts Available for Payment in Settlement Might Not Be Paid to Class Members or Might Revert to the Defendant.**

This is a non-reversionary settlement as the entirety of the Class Settlement Amount will be fully paid out. (Settlement Agreement at § 3.2). Any individual settlement payments to Settlement Class Members that remain un-cashed within one hundred eighty (180) days of the mailing of settlement payment checks by the settlement administrator will be paid to the *cy pres*

recipient, the Center for Employment Training ("CET"), a California affiliate of Unidos US. [4]

(Settlement Agreement at § 10.5.)

### d.   The Scope of the Release of Class Members' Claims.

In exchange for the payments described above, Plaintiff and all Settlement Class

Members will release Defendant and the Released Parties as follows:

> 8.1    June 2, 2020 Subclass Released Claims. In exchange for
> good and valuable consideration, the receipt and sufficiency of
> which is hereby acknowledged, all June 2, 2020 Settlement
> Subclass Members who have not been excluded from the
> Settlement Class as provided in the Opt-Out List, individually and
> on behalf of their Legally Authorized Representatives, heirs,
> estates, trustees, executors, administrators, representatives, agents,
> successors, and assigns, and anyone claiming through them or
> acting or purporting to act on their behalf, past or present, fully and
> without limitation release and discharge each and all of the
> Released Parties from any and all claims for damages and/or
> penalties for alleged violations of § 226 of the California Labor
> Code and for penalties under § 2698, et seq. premised upon
> violation of Labor Code § 226 for the time period of June 2, 2020,
> through June 30, 2021, except that the release for claims relating to
> the display of MQI True Up shall extend through the date the
> Court grants final approval of the Settlement. This release covers,
> without limitation, any and all claims for attorneys' fees, costs or
> disbursements incurred by Class Counsel or any other counsel
> representing Plaintiff or Settlement Class Members, or by Plaintiff
> or Settlement Class Members, or any of them, in connection with
> or related in any manner to the Action, the Settlement of the
> Action, the administration of such Settlement, and/or the released
> claims, except to the extent otherwise specified in the Agreement.

> 8.2    April 6, 2019 Subclass Released Claims. In exchange for
> good and valuable consideration, the receipt and sufficiency of
> which is hereby acknowledged, all April 6, 2019 Settlement
> Subclass Members who have not been excluded from the
> Settlement Class as provided in the Opt-Out List, individually and
> on behalf of their Legally Authorized Representatives, heirs,
> estates, trustees, executors, administrators, representatives, agents,
> successors, and assigns, and anyone claiming through them or
> acting or purporting to act on their behalf, past or present, fully and
> without limitation release and discharge each and all of the
> Released Parties from any and all claims for damages and/or
> penalties for alleged violations of § 226 of the California Labor
> Code and for penalties under § 2698, et seq. premised upon
> violation of Labor Code § 226 for the time period of April 6, 2019,

---

[4] The mission of CET is to promote human development and education by providing people with marketable skills training and supportive services that contribute to self-sufficiency. The Parties do not have any relationship with CET. (Choi Decl. ¶15.)

17

through June 30, 2021, except that the release for claims relating to the display of MQI True Up shall extend through the date the Court grants final approval of the Settlement. This release covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing Plaintiff or Settlement Class Members, or by Plaintiff or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, the administration of such Settlement, and/or the released claims, except to the extent otherwise specified in the Agreement.

(Settlement Agreement at §§ 8.1, 8.2).  The release period is shorter for the non-MQI True Up claims because the format of McDonald's wage statements changed effective July 1, 2021, impacting Plaintiff's theory of liability as to the way in which daily, weekly, or seventh day premium overtime was displayed.  Thus, the Released Claims were narrowly tailored to track the claims advanced in the Action and do not include a Civil Code section 1542 waiver. Settlement Agreement at §§ 8.1, 8.2.

### e. Tax Treatment of the Individual Settlement Payments.

The Settlement provides that all Individual Settlement Payments shall be treated at 100% penalties. (Settlement Agreement at § 10.4.1). The Settlement Administrator will issue distribute appropriate IRS tax forms. (*Id.*)

### f. Affirmative Obligations to be Undertaken by Class Members or Class Counsel and the Reasons for Any Such Obligations.

As stated above, Class Members do not need to do anything should they wish to receive their share of the settlement funds. Thus, this substantially decreases the amount of burden each Class Member must bear in order to receive his/her settlement share. If a Class Member does not wish to take part in this settlement and be bound by the release of the class claims, he/she must submit an exclusion request. Such obligations are thoroughly identified in each Class Member's Class Notice. (*See* Settlement Agreement Exh. A).

### C. The Court Should Order Dissemination of the Notice.

Rule 23(c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Rule 23(e) requires that notice of a proposed settlement

inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing.  3 *Newberg* § 8:32.

### 1.   The Class Notice is Accurate and Informative.

The Notice of Class Action and PAGA Settlement that will be sent to all Class Members, will inform them of the terms of the Settlement, and is neutrally worded so as to avoid prejudice. The Class Notice meets all of the requirements of procedural due process and Rule 23(e) by identifying the Plaintiff and Defendant; describing the claims and the Action in a straightforward manner; succinctly describing the essential terms of the Settlement, including the Class Representative's proposed Enhancement Payment and the amount Class Counsel will request for attorneys' fees and costs; identifying the claims that are being released; identifying all parties against whom claims are being released; providing Class Members with information on how to participate in, exclude themselves from or object to the Settlement; clearly providing all applicable deadlines for such action; informing Class Members of the consequences of excluding themselves from the Settlement; and advising Class Members that, if they choose to participate and the Settlement is approved, and that they will be bound by the resulting judgment.[5] Further, the Class Notice clearly explains the manner in which Class Members can obtain further information and that the Final Approval Hearing may be moved without further notice. (Settlement Agreement, Ex. A). In short, the Class Notice will provide Class Members with all of the necessary information to make an informed decision regarding the Settlement.

### 2.   The Class Notice Satisfies Due Process.

Courts are vested with broad discretion to fashion an appropriate notice program, which must be the best notice practicable under the circumstances. Fed. R. Civ. P. 23(e)(1) and 23(c)(2)(B). The Settlement provides for direct mail notice of the settlement to each Class Member based upon Defendant's records, performing additional skip traces as necessary.

---

[5] *See Trotsky v. Los Angeles Fed. Sav. & Loan*, 48 Cal.App.3d 139, 152 and fn. 13 (1975).

(Settlement Agreement at §§ 5.3-5.6). Because all Class Members are current or former employees of Defendant, for whom Defendant has current or last known addresses as well as Social Security numbers, notice here is simpler and more reliable than in other types of class actions that require published notice to reach unidentifiable class members. The Class Notice is consistent with class notices approved by state and federal courts, and under the circumstances here, constitute the best notice practicable. *Spann, supra*, 314 F.R.D. at 331.

### D.   The Settlement of PAGA Claims Merits Approval.

Under California Labor Code section 2699(l), the Court must also "review and approve any penalties sought as part of a proposed settlement agreement" of PAGA claims. There is "no requirement," that the court "certify a PAGA claim for representative treatment," but the court must conclude that the PAGA relief provided is "genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public." *Id.* at *13. In conducting that analysis, courts in this Circuit have applied several of the *Hanlon* factors. *See O'Connor v. Uber Techs.*, 201 F. Supp. 3d. 1110, 1134 (N.D. Cal. 2016). Courts also "consider whether the proposed PAGA settlement is fair and adequate in view of the purposes and policies of the statute[]," which "include benefit[ting] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Id.* at 1132-33, 1135.

The PAGA settlement  meets the requirements for approval. First, Plaintiff has submitted the proposed settlement to the LWDA in accordance with subsection 2699(l)(2) of the California Labor Code. Choi Decl. ¶22; Exh. B. Second, as discussed above, the Settlement satisfies the applicable *Hanlon* factors. Finally, the $100,000 allocated to PAGA penalties adequately deters noncompliance with (and thereby, facilitates enforcement of) California labor laws. Plaintiff's counsel estimates the theoretical maximum PAGA penalties at $10,559,250. Choi Decl. ¶ 8. However, there are several reasons that this number may be unrealistic, including the possibility that a court could find Defendant's wage statements to be in compliance with California Labor Code requirements—and thus award $0 in penalties—or reduce default penalties under subsection 2699(e)(2), which gives courts authority to reduce PAGA penalties if, "based on the

facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2). Thus, numerous courts have approved PAGA settlements that represent an even smaller percentage of the gross settlement amount than what is provided for here. *See, e.g.*, *Ahmed v. Beverly Health & Rehab. Servs., Inc.*, No. 2:16–1747 WBS KJN, 2018 WL 746393, at *10 (E.D. Cal. Feb. 7, 2018) (approving $4,500 PAGA payment from $450,000 fund); *Martin v. Legacy Supply Chain Servs. II, Inc.*, No. 3:16-cv-02471-WQH-BLM, 2018 WL 828131, at *2 (S.D. Cal. Feb. 12, 2018) (approving $10,000 PAGA payment from $625,000 fund); *Viceral v. Mistras Gorup, Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) (approving $20,000 PAGA payment from $6 million fund); *Harris v. Radioshack Corp.*, No. C–07–4499 EMC, 2010 WL 3155645, at *3-4 (N.D. Cal. Aug. 9, 2010) (approving $50,000 PAGA payment from a $4.5 million settlement).

### E.  The Settlement Administrator's Fees are Reasonable.

The Parties have selected ILYM as the Settlement Administrator. (Settlement Agreement at § 2.21).  ILYM has substantial experience in administering class action settlements. (Declaration of Jonathan Paul ("Paul Decl.") ¶ 2, Ex. A.).  The anticipated costs for the settlement administration are not to exceed $30,000.00 and will be deducted from the Gross Settlement Amount. (Settlement Agreement at § 2.22).  ILYM will, among other things, distribute the Court-approved Class Notice (in both English and Spanish), establish and maintain a toll-free informational telephone support line to assist Class Members who have questions, calculate the Individual Settlement Payments, prepare and mail settlement checks, respond to Class Member inquiries/disputes as appropriate, prepare any appropriate tax forms, and generally perform all normal and customary duties associated with the administration of such settlements. (Settlement Agreement at § V; Paul Decl. ¶¶5-9).

### F.  The Service Payment to Plaintiff is Reasonable.

Named plaintiffs in class action litigation are eligible for reasonable service payments. *Stanton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003). Service payments are intended to "compensate class representatives for work done on behalf of the class, to make up for financial

or reputational risk undertaken in bringing the class action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009); *see also In re Cellphone Fee Termination Cases,* 186 Cal.App.4th 1380, 1394 (2010). The amount of any service payment, however, is within the sound discretion of the district court. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000). Service payments are particularly appropriate in wage-and-hour class actions where a plaintiff undertakes a significant reputational risk by bringing suit against their former employers. *Rodriguez*, 563 F.3d at 958-959. In deciding whether to approve an service payment, a court should consider: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulty encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *In re Cellphone Fee Termination Cases*, 186 Cal.App.4th at 1394-95 (internal quotation marks omitted); *see also Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) (applying similar factors to determine reasonableness of service payments).

All of the aforementioned factors support the $10,000.00 service payment requested here. The sought service payment is: (a) in line with amounts commonly awarded by courts in similar wage and hour class actions;[6] (b) just 0.5% of the $2 million Gross Settlement Amount; and (c)

---

[6] *See e.g.  Bond v. Ferguson Enterprises, Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) (approving $11,250 service award to each of the two class representatives in a trucker meal break class action); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010) (approving service awards in the amount of $10,000 each from a $300,000 settlement fund in a wage/hour class action); *Castellanos v. Pepsi Bottling Group, Inc.*, No. RG07332684 (Alameda Cnty. Super. Ct., March 11, 2010) (approving incentive award of $12,500 in a wage and hour class action settlement); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558, at *28 (E.D. Cal. Oct. 19, 2006) ("the court finds plaintiffs' enhancement payments of $15,000 each to be reasonable."); *Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314, at *18 (S.D. Cal. Oct. 6, 2008 (approving "$25,000 incentive award for each Class Representative" in a wage an hour settlement); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class").

---

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

fair, reasonable and appropriate under the circumstances of this case, **including Plaintiff's provision of a general release and Civil Code section 1542 waiver**. Plaintiff, who has worked diligently with Class Counsel throughout this entire litigation, including taking numerous calls with Class Counsel, participating in the Parties' informal information exchange, and participating in the settlement negotiations, should be rewarded for taking the initiative to pursue these claims on behalf of the class, and for Plaintiff's role in reaching a substantial settlement providing for valuable monetary relief to the Class. (Manzo Decl. ¶¶ 4-6).

        G.     **Class Counsel's Attorneys' Fees and Costs are Reasonable, Fair, and Appropriate.**

Plaintiff, in the settlement of this wage and hour class action, is entitled to payment of attorneys' fees and costs. Cal. Lab. Code §§ 226(e) and 2699(g); *Early v. Superior Court,* 79 Cal.App.4th 1420, 1427 (2000). An attorneys' fees award is justified where the legal action has produced benefits by way of a voluntary settlement. *Maria P. v. Riles*, 43 Cal.3d 1281, 1290-91 (1987); *Westside Cmty. For Indep. Living, Inc. v. Obledo*, 33 Cal.3d 348, 352-53 (1983). At the Final Approval Hearing, Plaintiff will seek an award of Class Counsel's fees under the common fund doctrine, which is customarily used in awarding fees and costs in settlement of Labor Code class actions and an approved method under California law. *Wershba v. Apple Computer*, 91 Cal.App.4th at 254 (2001); *Lealao v. Beneficial California Inc.*, 82 Cal.App.4th 19, 26-30 (2000); *Serrano v. Priest*, 20 Cal.3d 25, 34 (1977) ("[w]hen a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund."); *see also Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers for a common fund…is entitled to a reasonable attorney's fee from the fund as a whole."); *Hanlon, supra*, 150 F.3d. at 1029. The traditional method for calculating a common fund fee is to award a percentage of the total fund. *Blum v. Stenson,* 465 U.S. 886, 900 n. 16 (1984); *Mex. Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 2002). Courts have customarily approved payments of attorney's fees of as much as one-third to forty percent of the common fund in comparable wage and hour class actions. *Newberg*, § 14:6

(Studies show that "Fee awards in class actions average around one-third of the recovery").[7]

Here, Class Counsel will seek attorneys' fees of one-third of the Class Settlement Amount, or $666,666.67, and declared litigation costs of up to $30,000.00. (Settlement Agreement at § 2.2). Because these fees and costs are reasonable, within the range commonly awarded by state and federal courts in wage and hour class actions as set forth above, and because Plaintiff and Class Counsel have conveyed and will convey significant benefits upon the Class, the Court should preliminarily approve the requested fee and cost award as fair and reasonable.

## VI.   A FINAL APPROVAL HEARING AND ALL APPURTENANT DEADLINES SHOULD BE SET

Plaintiff respectfully requests that the Court set a date for the Final Approval Hearing, deadlines for Class Members to opt-out or object, and for the submission of motions associated with final approval. In order to enable sufficient time for the Parties and the Settlement Administrator to mail the Class Notice and for Class Members to decide how they wish to proceed, Plaintiff requests that the date for the Final Approval Hearing be set for approximately

---

[7] *See, e.g.*, *Wren v. RGIS Inventory Specialists* No. C-06-05778, JCS, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (approving fee award that constituted 42% of the common fund in wage and hour class and collective action); *Boyd v. Bank of Am. Corp*, 2014 WL 6473804, at *8-*12, (C.D. Cal. No. 18, 2014) (awarding one-third of settlement in wage and hour case on behalf of real estate review appraisers); *Birch v. Office Depot, Inc*. Case No. 06cv1690 DMS, at *13 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16,000,000 wage and hour class action settlement); *Stuart v. Radioshack Corp*., No. C-07-4499 EMC, 2010 WL 3155645 at *5-*7 (N.D. Cal. Aug. 9, 2010) (awarding one-third of $4.5 million settlement fund as fees in class case alleging failure to reimburse employees for expenses); *Quezada v. Con-Way Freight, Inc.,* No. 09-cv-3670, at ¶ 9 (N.D. Cal. Jan. 15, 2015) (awarding one-third of $2 million settlement fund as fees in class case alleging failure to pay wages for all hours worked); *Singer v. Becton Dickinson and Co.,* No. 08-CV-821-IEG (BLM) 2010 WL 2196104, at *8 (S.D. Cal. Jun. 1, 2010) (approving fee award of 1/3 of the common fund; award was similar to awards in three other cited wage and hour class action cases where fees ranged from 30% to 40%); *Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, 491-92 (citing five recent wage and hour class actions where federal district courts approved attorney fee awards ranging from 30% to 33%); *Cicero*, 2010 WL 2991486, at *6 (noting that fees of one-third are common in wage and hour settlements below $10 million, citing cases); *Rieve v. Coventry Healthcare Inc.* (C.D. Cal. Aug. 8, 2014) No. 11-cv-1032-DOC, at ¶ 7 (awarding one-third of $3 million settlement fund as attorneys' fees in wage & hour class settlement).

1   150 days after the Court's execution of the Order Granting Preliminary Approval.

2   **VII.** **CONCLUSION**

3        For all the reasons stated above, Plaintiff's unopposed Motion should be granted.

4

5   Dated:  October 22, 2021          LAW OFFICES OF CHOI & ASSOCIATES

6

7             By:  /s/ Edward W. Choi_____

8                   Edward W. Choi
                Attorneys for Plaintiff and the Class

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**