UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENNIFER MANZO,<br><br>    Plaintiff,<br><br>v.<br><br>MCDONALD'S RESTAURANTS OF CALIFORNIA, INC., AND DOES 1-50,<br><br>    Defendants. | Case No. 1:20-cv-1175-HBK<br><br>ORDER DENYING PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT WITHOUT PREJUDICE<br><br>(Doc. No. 15) |

Currently before the Court is Plaintiff Gennifer Manzo's ("Plaintiff" or "Manzo") unopposed Motion for Preliminary Approval of Class Action and Private Attorneys General Act Settlement, filed on October 22, 2021. (Doc. No. 15). For the reasons stated herein, the Court denies the motion without prejudice.

**BACKGROUND**

Plaintiff filed the present action on September 20, 2020. (Doc. No. 1). Asserting diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), she brought claims for penalties under California Labor Code §§ 226 and 2698, *et seq.*, the Private Attorney Generals Act ("PAGA"). (*Id.* at 1-2).

Plaintiff is a former employee of Defendant. (*Id.* at 4 ¶ 7; Doc. No. 15-6 at XX).

Plaintiff's claims were based on allegations that Defendant's wage statements were inaccurate in two ways.  First, she alleged the wage statements "did not identify the overtime rate as 1.5 times the regular rate of pay," but instead reflected the rate of "one-half (0.5) the base hourly rate of pay."  Second, she alleged the wage statements failed to identify the correct rates of pay and applicable number of hours for "MQI True Up" wages.  Though she does not explain "MQI True Up" wages, she characterizes them as a form of overtime.  (Doc. No. 1 at 9:3-10).  Plaintiff contends these inaccuracies violate Labor Code § 226 and entitle her and the putative class to penalties under that section and under the PAGA.  (*Id.* at 9:2-3; 9:22-27).  At the outset of this case, Plaintiff sought to represent non-exempt employees who, after April 6, 2019, were paid overtime or "MQI True Up" wages.  (*Id.* at 5:27-6:6).

The proposed settlement includes the following terms relevant to this Order:

### 1. Settlement Class

The proposed settlement class includes the following two groups:

> 2.23.1 The "June 2, 2020 Settlement Subclass" consists of all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from June 2, 2020 through the Preliminary Approval Date ("June 2, 2020 Subclass Class Period") and who were subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc.*, Los Angeles County Superior Court Case No. BC499888.
>
> 2.23.2 The "April 6, 2019 Settlement Subclass" consists of all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from April 6, 2019 through the Preliminary Approval Date ("April 6, 2019 Subclass Class Period"), and who were not subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc.*, Los Angeles County Superior Court Case No. BC499888.

(Doc. No. 15-2 at 13-14, ¶ 2.23).  There are approximately 5,500 class members and 57,000 wage statements at issue.  (Doc. 15-2 at 6:1-10).

### 2. Gross and Net Settlement Amounts

#### a. Gross Settlement Amount

The Gross Settlement Amount is $2 million.  (Doc. No. 15-2 at 14 ¶ 3.1).  This amounts to an average of $35.09 per wage statement.  (Doc. No. 15 at 16:18-20).  Should the actual number

of wage statements "containing daily, weekly, or seventh day premium overtime furnished to these groups exceeds 57,000 during the" relevant subclass periods through June 30, 2021, "the Gross Settlement Amount will increase proportionally on a per wage statement basis for the number of wage statements in excess of 57,000." (Doc. No. 15-2 at 14 ¶ 3.1).

No portion of the Gross Settlement Amount will be retained by or revert to Defendant. (*Id.* at ¶ 3.2).

### b. PAGA Penalties

The settlement allocates $100,000 of the Gross Settlement Amount for PAGA penalties. (*Id.* at 13 ¶ 2.14). From this amount, 75% will be paid to the California Labor and Workforce Development Agency ("LWDA") and 25% will be distributed to the settlement class members. (*Id.*). Potential class members who opt out of the class action settlement will receive $10.00 in settlement of their PAGA claims. (*Id.* at 24 ¶ 10.4.1).

### c. Estimate of Net Settlement Amount

Plaintiff estimates that the net settlement amount available for distribution to the class members will be approximately $1,188,333,33, which would amount to up to $216.06 on raw average. (Doc. No. 15 at 16:15-19).

### d. Distribution of Penalties and Net Settlement Amount

The settlement provides that both the PAGA penalties and the net settlement amount are to be distributed according to the class member's "proportionate share." (Doc. No. 15-2 at 22-23 ¶¶ 9.2, 9.3). The proportionate share is:

> based on the number of qualifying wage statements they received during their applicable Subclass Class period as follows:
>
> [ ] **April 6, 2019 Subclass:** the number of wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages received by the Settlement Class Member at any time during the April 6, 2019 Subclass Class Period divided by the total number of wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages received by all April 6, 2019 Settlement Class Members during the April 6, 2019 Subclass Class Period.
>
> [ ] **June 2, 2020 Subclass:** the number of wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages received by the Settlement Class Member at

3

> any time during the June 2, 2020 Subclass Class Period divided by the total number of wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages received by all June 2, 2020 Settlement Class Members during the June 2, 2020 Subclass Class Period.

(*Id.*).  No further description of individual settlement payment amounts is provided.  (*See id.*).

## APPLICABLE LAW

"Courts reviewing class action settlements must ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quotations and citations omitted).  Where parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003).

Preliminary approval of a settlement and notice to the proposed class is appropriate if "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval . . . ."  *Criswell v. Boudreaux*, No. 1:20-cv-01048-DAD-SAB, 2021 WL 4461640, at *3 (E.D. Cal. Sept. 29, 2021) (citations omitted).

## ANALYSIS

### A.  Obvious Deficiency

As mentioned above, the settlement provides that the Gross Settlement Amount may increase if the number of wage statements during the relevant subclass periods exceeds 57,000.  (Doc. No. 15 at 14 ¶ 3.1).  Specifically, it provides: "if the actual number of wage statements containing daily, weekly, or seventh day premium overtime furnished to these groups exceeds 57,000 during the periods defined above in **Paragraphs 2.6.1 and 2.6.2**, through June 30, 2021, the Gross Settlement Amount will increase proportionally on a per wage statement basis for the number of wage statements in excess of 57,000."  (Doc. No. 15 at 14 ¶ 3.1, emphasis applied).

There seems to be a minor error in this section, as Paragraphs 2.6.1 and 2.6.2 do not exist

4

in the settlement agreement. Instead, Paragraphs 2.23.1 and 2.23.2 seem to capture the relevant subclass periods. Because this issue could potentially go to the calculation of the Gross Settlement Amount, the parties must state the correct paragraph numbers or specify the appropriate subclass periods in Paragraph 3.1.

### B. Preferential Treatment

As part of the preliminary approval process, the Court examines whether the settlement agreement provides preferential treatment to any class member or segment of the class. *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1132 (E.D. Cal. 2018); Fed. R. Civ. P. 23(e)(2)(D). In this case, the settlement provides that each class member will receive their "proportionate share" of the PAGA allocation and Net Settlement Amount. (Doc. No. 15-2 at 21-22 ¶¶ 9.2, 9.3). The proportionate share will be determined based on the class member's subclass, i.e., the number of class member's qualifying wage statements in the subclass period divided by the total number of qualifying subclass wage statements. (Doc. No. 15-2 at 21-22 ¶¶ 9.2, 9.3). This calculation results in a percentage, but the settlement lacks any indication as to what that percentage is taken from. (*See id.*). Mathematically, the percentage cannot be taken directly from the Net Settlement Amount, because each subclass's total recovery would equal 100% of the Net Settlement Amount.

It is possible the individual proportionate share is intended to be taken from a subclass allocation of the Net Settlement Amount; however, no subclass allocation is mentioned in the settlement. Additionally, it seems there are other, simpler ways of calculating a proportionate share that would appear to treat all class members equally, such as dividing the individual's number of qualifying wage statements by the total number of qualifying wage statements received by both subclasses and multiplying this percentage against the Net Settlement Amount. Such a calculation would, theoretically, be an appropriate method for determining payments. *See, e.g.*, *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473, at *12 (E.D. Cal. June 30, 2016) (finding at the preliminary approval stage that a "mechanism for distributing the settlement funds proportionally based on the total number of weeks worked" was "reasonable"); *Pierce v. Rosetta Stone, Ltd.*, No. 11-cv-01238-SBA, 2013

WL 1878918, at *6 (N.D. Cal. May 3, 2013) (at preliminary approval, disbursement on a pro rata basis reasonable).

It is also possible the parties intended some other calculation to follow the determination of individual share percentages.  Without clarification as to how the shares will be used to determine actual payments, the Court cannot determine whether the settlement grants preferential treatment to one group.  *Cf.* Fed. R. Civ. P. 23(D).  Moreover, the proposed class notice merely repeats the incomplete description of how individual settlement payment amounts will be calculated.  (Doc. No. 15-2 at 32-33 § V ("Individual Settlement Shares")).  The absence of a clear statement as to how the Net Settlement Amount will be distributed renders the notice arguably confusing and may interfere with class members' ability to determine whether to object.  *Cf.* Fed. R. Civ. P. 23(e)(5).  The Court must therefore deny the motion for preliminary approval, without prejudice to a renewed motion to correct and/or clarify this issue.

**C. Notice Issues**

The Court has identified the following minor deficiencies in the proposed class notice:

(1) On page 1 of the proposed notice (Doc. No. 15-2 at 3), in the "GO TO A HEARING" row, the notice should advise potential class members that they may appear in person or remotely.

(2) On page 2 of the proposed notice (Doc. No. 15-2 at 31), it refers to the action as "U.S. District of California for the Eastern District of California Case No. 1:20-cv-01175-NONE-HBK" instead of "U.S. District Court for the Eastern District of California Case No. 1:20-cv-01175-HBK."

(3) On page 2 of the proposed notice (Doc. No. 15-2 at 31 § I), it states a "'**Settlement Class Member'** means a member of one or both of the June 2, 2020 Settlement Subclass and/or the April 6, 2019 Subclass."  The settlement seems to contemplate the subclasses as two different groups with no overlap.  The notice should clarify whether an individual can be a member of both subclasses.

(4) On page 6 of the proposed notice (Doc. No. 15-2 at 35 § VII[C]), wherever it states that the potential class member may appear, it should clearly state that the class

member may appear in person or by remote means. Where it states that the Court will consider the class member's views, it should also state that the Court can only approve or deny the settlement and cannot change the terms of the settlement. Additionally, the reference to the "Action" should restate the name and case number of this action.

(5) On page 6 of the proposed notice (Doc. No. 15-2 at 35 § VII[D]), wherever it states that the potential class member may appear, it should clearly state that the class member may appear in person or by remote means.

## CONCLUSION

For the reasons provided herein, the Court ORDERS the following:

(1) Plaintiff's Motion, (Doc. No. 15), is DENIED without prejudice to the parties submitting a renewed motion to correct and/or clarify the deficiencies noted above. In order to expedite the handling of this matter, the Court requests that such motion shall be filed within five (5) days of the date of this Order.

(2) If Plaintiff files a renewed motion, she shall also specify the necessary number of days between the Court's anticipated issuance of any preliminary approval order and the date of any final approval hearing.

Dated: __January 12, 2022__

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE