UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENNIFER MANZO,<br><br>    Plaintiff,<br><br>v.<br><br>MCDONALD'S RESTAURANTS OF CALIFORNIA, INC., AND DOES 1-50,<br><br>    Defendants. | Case No. 1:20-cv-1175-HBK<br><br>ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT[1]<br><br>(Doc. Nos. 15, 23) |

Currently before the Court is Plaintiff Gennifer Manzo's ("Plaintiff" or "Manzo") unopposed Motion and Renewed Motion for Preliminary Approval of Class Action and Private Attorneys General Act Settlement. (Doc. Nos. 15, 23). Filed in support are the declarations of Plaintiff's attorneys and proposed class counsel Edward W. Choi, Larry W. Lee, Dennis S. Hyun, and William Marder (Doc. Nos. 15-2–15-5), the declaration of Plaintiff Gennifer Manzo (Doc. No. 15-6), and the declaration of Jonathan Paul, relating to ILYM Group, Inc., the proposed class administrator (Doc. No. 15-7). Per Court Orders (Doc. Nos. 20, 22), Plaintiff filed supplemental briefing, evidence, and revisions to the settlement agreement and proposed class notice. (Doc. Nos. 21, 23). Having considered the moving and supplemental papers, as well as the Court's file,

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to magistrate judge jurisdiction. (Doc. No. 18).

the Court issues the following order approving the settlement.

## BACKGROUND

### A. Claims and Proceedings

Plaintiff filed the present action on September 20, 2020. (Doc. No. 1). Asserting diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), she brought claims for penalties under California Labor Code § 226 and under § 2698, *et seq.*, the Private Attorney Generals Act ("PAGA"). (*Id.* at 1-2).

Plaintiff is a former employee of Defendant. (*Id.* at 4 ¶ 7; Doc. No. 15-6 at 3:9-10). Plaintiff's claims were based on allegations that Defendant's wage statements were inaccurate in two ways. First, she alleged the wage statements "did not identify the overtime rate as 1.5 times the regular rate of pay," but instead reflected the rate of "one-half (0.5) the base hourly rate of pay." (Doc. No. 1 at 9:3-6). Second, she alleged that wage statements failed to identify the correct rates of pay and applicable number of hours for "MQI True Up" wages. Though she does not explain "MQI True Up" wages, she characterizes them as a form of overtime. (*Id.* at 9:6-10). Plaintiff contends these inaccuracies violate Labor Code § 226 and entitle her and the putative class to penalties under that section and under the PAGA. (*Id.* at 9:2-3; 9:22-27). At the outset of this case, Plaintiff sought to represent non-exempt employees who, on or after April 6, 2019, were paid overtime or "MQI True Up" wages. (*Id.* at 5:27-6:6).

On September 24, 2020, Defendant filed a Notice of Related Cases, referencing two actions: *Sanchez et al. v. McDonald's Restaurants of California, Inc.*,[2] then pending in state court, and *Rocha v. McDonald's Restaurants of California, Inc.*,[3] then pending in this district. (Doc. No. 6 at 2). By this time, the parties in *Sanchez* had obtained preliminary approval of a settlement and had a final approval hearing scheduled for September 30, 2020. (*Id.* at 2:12-14).

---

[2] *Sanchez* was filed in Los Angeles Superior Court on January 24, 2013. (Doc. No. 6 at 2:1-17). Defendant represents that the plaintiffs in *Sanchez* asserted similar wage statement claims against Defendant as Manzo asserts in this case. (*Id.*).

[3] *Rocha,* filed in Fresno Superior Court, was removed to federal court on August 20, 2020, Case No. 1:20-cv-00927-AWI-EPG. (Doc. No. 6 at 2:18-21). Defendant represents that *Rocha* asserted similar wage statement claims against Defendant as Manzo asserts in this case. (*Id.* at 2:21-26).

Plaintiff does not provide the Court with details about the claims in that action or the terms of the settlement but indicates that the *Sanchez* settlement "released all wage statement claims with an end date of June 1, 2020." (Doc. No. 15 at 13:10-13). According to Plaintiff, that release required modification of the scope of the putative class in this action. (*Id.* at 13:13-16).

Defendant filed an answer in this action on October 19, 2020. (Doc. No. 7). There has been no motion practice. (*See id.*).

On February 11, 2021, the parties filed a joint scheduling report requesting a stay of discovery until after mediation, which the Court granted. (Doc. Nos. 11-12). Though the parties did not exchange formal discovery, Defendant "provided data, including the number of putative class members and the number of wage statements issued to putative class members during the liability period, which allowed Plaintiff to conduct a full damages analysis." (Doc. No. 15-2 at 3:25-27; *see also id.* at 3:20-24). Based on this data, Plaintiff calculated Defendant's total maximum exposure to be $3,980,650 for Labor Code § 226 penalties and $10,559,250 for PAGA penalties. (*Id.* at 5:8-22). On May 28, 2021, following a mediation before experienced employment law mediator Michael Loeb, Esq., the parties filed a notice of settlement. (Doc. Nos. 13-14; 15-2 at 4:26-27).

**B. Proposed Settlement Terms**

**1. Settlement Class**

The proposed settlement class includes the following two groups:

> 2.23.1 The "June 2, 2020 Settlement Subclass" consists of all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from June 2, 2020 through the Preliminary Approval Date ("June 2, 2020 Subclass Class Period") and who were subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc.*, Los Angeles County Superior Court Case No. BC499888.
>
> 2.23.2 The "April 6, 2019 Settlement Subclass" consists of all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from April 6, 2019 through the Preliminary Approval Date ("April 6, 2019 Subclass Class Period"), and who were not subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc.*, Los Angeles County Superior Court Case No. BC499888.

(Doc. No. 15-2 at 13-14 ¶ 2.23). There are approximately 5,500 class members and 57,000 wage statements at issue. (Doc. 15-2 at 6:1-10).

Class members may opt out of the settlement by submitting timely written requests for exclusion to the settlement administrator. (*Id.* at 19 ¶ 6.1). Such request must be postmarked no later than forty-five (45) calendar days after mailing of the initial class notice, or fifteen (15) calendar days after remailing of a class member's notice, whichever is later. (*Id.*).

### 2. Releases

The class members release the claims asserted in this suit, depending on the relevant time period for their subclass:

> " . . . all June 2, 2020 Settlement Subclass Members who have not been excluded from the Settlement Class as provided in the Opt-Out List . . . release and discharge each and all of the Released Parties from any and all claims for damages and/or penalties for alleged violations of § 226 of the California Labor Code and for penalties under § 2698, et seq. premised upon violation of Labor Code § 226 for the time period of June 2, 2020, through June 30, 2021, except that the release for claims relating to the display of MQI True Up shall extend through the date the Court grants final approval of the Settlement [and]
>
> . . . all April 6, 2019 Settlement Subclass Members who have not been excluded from the Settlement Class as provided in the Opt-Out List . . . release and discharge each and all of the Released Parties from any and all claims for damages and/or penalties for alleged violations of § 226 of the California Labor Code and for penalties under § 2698, et seq. premised upon violation of Labor Code § 226 for the time period of April 6, 2019, through June 30, 2021, except that the release for claims relating to the display of MQI True Up shall extend through the date the Court grants final approval of the Settlement.

(Doc. No. 15-2 at 20-21 ¶¶ 8.1-8.2).

In addition, Plaintiff provides a general release, including a release of all known and unknown claims under California Civil Code § 1542. (*Id.* at 21 ¶ 8.3).

### 3. Gross and Net Settlement Amounts

#### a. Gross Settlement Amount

The Gross Settlement Amount is $2 million. (*Id.* at 14 ¶ 3.1). This amounts to an average of $35.09 per wage statement. (Doc. No. 15 at 16:18-20). Should the actual number of wage statements "containing daily, weekly, or seventh day premium overtime furnished to" the class

4

members during the relevant period for each subclass exceed 57,000, this "Gross Settlement Amount will increase proportionally on a per wage statement basis for the number of wage statements in excess of 57,000." (Doc. No. 23-1 at 5 ¶ 3.1). No portion of the Gross Settlement Amount will be retained by or revert to Defendant. (Doc. No. 15 at ¶ 3.2).

### b. PAGA Penalties

The settlement allocates $100,000 of the Gross Settlement Amount for PAGA penalties. (*Id.* at 13 ¶ 2.14). From this amount, 75% will be paid to the California Labor and Workforce Development Agency ("LWDA") and 25% will be distributed to the settlement class members in the same proportion as the Net Settlement Amount, discussed *supra*. (*Id.*). Potential class members who opt out of the class action settlement will receive $10.00 in settlement of their PAGA claims. (*Id.* at 24 ¶ 10.4.1).

### c. Attorney's Fees and Costs

Proposed Class Counsel seek up to thirty-three and one-third percent (33 1/3%) of the Gross Settlement Amount (equaling $666,666.67), as well as up to $30,000 in costs. (*Id.* at 11-12 ¶ 2.2).

### d. Service Payment

Plaintiff Gennifer Manzo seeks a service payment of up to $10,000. (*Id.* at 13 ¶ 2.20).

### e. Settlement Administrator Costs

The settlement administrator is ILYM. (*Id.* at 13 ¶ 2.21). Plaintiff's counsel selected ILYM after a blind bid process in which ILYM was the lowest bid. (*Id.* at 5:19-24). All fees, costs, and expenses of ILYM are not to exceed $30,000. (*Id.* at 13 ¶ 2.22).

### f. Estimate of Net Settlement Amount

Plaintiff estimates that the net settlement amount available for distribution to the class members will be approximately $1,188,333.33, which would amount to up to $216.06 on raw average. (Doc. No. 15 at 16:15-19). The amount each class member will receive will be calculated based on the number of qualifying wage statements during the relevant subclass period. (Doc. No. 23-1 at 6-7 ¶ 9.3).

///

### g. Cy Pres

If any individual settlement payments to Settlement Class Members remain uncashed one hundred eighty (180) days after their mailing by the settlement administrator, they will be paid to the *cy pres* recipient, the Center for Employment Training ("CET"), a California affiliate of Unidos US.  (Doc. No. 15-2 at 24 ¶ 10.5).  "The mission of CET is to promote human development and education by providing people with marketable skills training and supportive services that contribute to self-sufficiency."  (*Id.* at 5:25-27).  The parties do not have any relationship with CET.  (*Id.*)

### h. Equitable Relief

The settlement includes no injunctive or other equitable relief.  (*See* Doc. No. 15-2 at 10-19; Doc. No. 15 at 26:28).

## APPLICABLE LAW

"Courts reviewing class action settlements must ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quotations and citations omitted).  Where parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003).

The Court first determines whether, in its discretion, a class action may be certified.  *Id.; Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1041 (9th Cir. 2012).  Exercise of this discretion "demand[s] undiluted, even heightened, attention in the settlement context."  *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 620 (1997).  This level of attention "is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Id.*

To obtain class certification, the plaintiff must affirmatively demonstrate that the class meets the requirements of Rule 23.  *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 350 (2011).  The plaintiff must satisfy the four prerequisites identified in Rule 23(a), as well as one of the three

subdivisions of Rule 23(b).  *Amchem Prods., Inc.,* 521 U.S. at 614.  "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively."  *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.,* 593 F.3d 802, 806 (9th Cir. 2010).  Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods.  Fed. R. Civ. P. 23(b)(3).

Second, after determining that a class may be certified, the district court carefully considers "whether a proposed settlement is fundamentally fair, adequate, and reasonable," recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citations omitted); *see* Fed. R. Civ. P. 23(e)(2).  Where, as here, a settlement has been reached prior to formal class certification, "a higher standard of fairness" applies due to "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative."  *Id.* at 1026; *see Campbell*, 951 F.3d at 1122.  Although the court's role in reviewing a proposed settlement is critical, it is also a limited one.  The court does not have the ability to "'delete, modify or substitute certain provisions.'  The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026 (citation omitted).  The court may, however, voice its reservations about the proposed settlement and set conditions that, if satisfied, might lead the court to approve it.  Manual for Complex Litigation (Fourth) at 309, § 21.61 (2004).

When evaluating fairness, adequacy, and reasonableness at the final approval stage, the court will consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Kim v. Allison*, 8 F.4th 1178 (9th Cir. 2021).

Because some of these factors cannot be fully assessed until the Court conducts the final approval hearing, however, preliminary approval of a settlement and notice to the proposed class are appropriate if: "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval . . . ." *Criswell v. Boudreaux*, No. 1:20-cv-01048-DAD-SAB, 2021 WL 4461640, at *3 (E.D. Cal. Sept. 29, 2021) (citations omitted).

## ANALYSIS

### A. Rule 23(a) Requirements

"Although the parties in this case have stipulated a settlement class exists" solely for purposes of settlement, "the court must nevertheless undertake the Rule 23 inquiry independently, both at this stage and at the later fairness hearing." *Van Lith v. iHeartMedia + Ent., Inc.*, No. 1:16-cv-00066-SKO, 2017 WL 1064662, at *6 (E.D. Cal. Mar. 20, 2017) (quotation and citations omitted). The Court addresses each of the Rule 23(a) and Rule 23(b) factors in turn.

#### 1. Numerosity

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff's class definition, which includes two subclasses of workers, adequately identifies distinct and presently ascertainable groups of people. *See Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 206 (E.D. Cal. 2015). Though the definitions require inclusion in or exclusion from *another* class—i.e., the *Sanchez* class—this limitation does not render the classes ambiguous. The class administrator and parties, as well as the Court, can objectively determine whether an individual is a part of the class. *See Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593 (E.D. Cal. 2008). Within this appropriate class definition, Plaintiff estimates there are 5,500 individuals. The proposed class is sufficiently numerous.

#### 2. Commonality

The commonality prerequisite is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even a single common question that resolves a central issue will

1  be sufficient. *Castillo v. Bank of America, NA*, 780 F.3d 723, 728 (9th Cir. 2020). The key
2  inquiry is whether the common contention is of "a nature that it is capable of classwide
3  resolution—which means that determination of its truth or falsity will resolve an issue that is
4  central to the validity of each one of the claims in one stroke.'" *Id.*; *Abdullah v. U.S. Sec. Assoc.,*
5  *Inc.*, 731 F.3d 952, 957 (9th Cir. 2013). Here, the key issue in the case is common to the class:
6  whether Defendant's wage statements violated the requirements of Labor Code § 226 by failing
7  to accurately reflect wage rates for overtime and MQI True Up wages. Commonality is satisfied.

### 3. Typicality

Typicality requires the plaintiff's claims be typical of those of class. Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members." *Castillo*, 980 F.3d at 729 (quoting *Hanlon*, 150 F.3d at 1020). Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982). Here, Plaintiff and the putative class members were all employees of Defendant and claim the same injury—namely, the receipt of wage statements that allegedly violated state law because of the manner in which overtime and MQI True Up wages were reflected.

### 4. Adequacy of Representation

Adequacy of representation requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff and class counsel do not have any conflicts of interest with any other class members and will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Here, there does not appear to be any conflicts of interest between Plaintiff and the purported class members. Class counsel has extensive experience in class actions and complex litigation, including many employment law cases (*See* 21-2 at 3:13-4:10, 21-3 at 3:16-4:8, 21-4 at 3:7-5:10, 21-5 at 3:7-4:25), there is no evidence of any potential conflicts, and they have prosecuted the action swiftly on behalf of the class. (*See* docket). Accordingly, Plaintiff and her counsel appear to be adequate representatives of the proposed class.

Thus, Plaintiff has met all the requirements of Rule 23(a).

### B. Rule 23(b) Requirements

In addition to satisfying Rule 23(a)'s prerequisites, a plaintiff seeking class certification must show that the action is maintainable under Rule 23(b). *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539, 558 (9th Cir. 2019). Here, Plaintiff proceeds under Rule23(b)(3), which requires that she show that class issue predominate and that a class action is superior to other methods of resolution. *Id.*; Fed. R. Civ. P. 23(b). Predominance requires more than proof of common issues of law and fact. Rather, the common questions should "present a significant aspect of the case and ... be resolved for all members of the class in a single adjudication." *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d at 557, quoting *Hanlon*, 150 F.3d at 1022. Thus, "a central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy." *Vinole v. Countrywide Home Loans*, 571 F.3d 935, 944 (9th Cir. 2009).

Here, a single adjudication would resolve the central issue of the case—namely, whether Defendant's wage statements violated California Labor Code § 226. Judicial economy would be served by resolving this issue on a class-wide basis. Accordingly, Plaintiff has satisfied the requirements of Rule 23(b)(3).

### C. Rule 23(e) Requirements

Class settlements must be fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). When the settlement takes place before formal class certification, as it has here, the settlement requires a "higher standard of fairness." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2021) (quoting *Hanlon*, 150 F.3d at 1026). This "more exacting review" of pre-certification class settlements is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819; *see Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). At the preliminary approval stage, the Court analyzes both the procedural and substantive components of the settlement. *Criswell*, 2021 WL 4461640, at *3 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

///

10

1. **Settlement Process**

When reviewing the settlement process, the Court considers whether the agreement appears to be the product of arms-length negotiations, and not the result of collusion or fraud. Fed. R. Civ. P. 23(e)(2)(B); *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012)). Here, the parties engaged in settlement negotiations before an experienced employment law mediator and finalized their negotiations within the weeks following that mediation. (Doc. Nos. 13-14; 15-2 at 4:26-27). Their negotiation was based on data exchanged in a process of informal discovery in preparation for the mediation and revealed a large number of potential class members and wage statements at issue. (Doc. No. 15-2 at 4:25-27). In mediation, they discussed the strengths and weaknesses of their positions. (*Id.* at 5:1-13). Given this background, the settlement process appears procedurally fair. While there was no motion practice or formal discovery, the parties are not to be faulted for their cooperation and desire to swiftly resolve the matter given the uncertainty caused by relevant pending appeals (*See Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668 (9th Cir. 2021); *General Atomics v. Superior Court*, 64 Cal. App. 5th 987 (2021)).

2. **Range of Possible Approval**

To evaluate whether a settlement falls within the range of possible approval, "courts consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1131 (E.D. Cal. 2018) (citations omitted); *see Campbell*, 951 F.3d. at 1123 ("settlement's benefits must be considered by comparison to what the class actually gave up by settling"). Plaintiff estimates that the maximum recovery in this case is $14,539,900. (Doc. No. 15-2 at 5:8-22). Had the case continued, Plaintiff states, Defendant would not only have argued its wage statements complied with California law, but also that its conduct was not knowing, intentional, or willful, requirements for penalties under Labor Code § 226(e). (Doc. No. 15-1 at 15:13-15). Plaintiff represents that two decisions issued on the same date the parties filed their notice of the settlement in this case, *Magadia*, 999 F.3d 668 and *General Atomics*, 64 Cal. App. 5th 987, create risk in this litigation, as, going forward, Defendants would rely on these cases in support of their

position in this action. (Doc. No. 15 at 14:18-27). These cases appear to reject or at least cast serious doubt on both of Plaintiff's theories of recovery. *See Magadia*, 999 F.3d at 680-81; *General Atomics*, 64 Cal. App. 5th at 991.

Plaintiff also notes that the bulk of the penalties available in this action, $10,559,250 in PAGA penalties, are discretionary. (Doc. No. 15 at 26:4-10). Even if Plaintiff prevailed, a court may reduce PAGA penalties in a particular case if the award would be unjust, arbitrary and oppressive, or confiscatory. Cal. Lab Code § 2699(e)(2). Additionally, such penalties accrue 75% to the LWDA and 25% to class members. *Id.*

The $2 million settlement is about 13.75% of the total estimated liability. (*Id.* at 26:13-15). Given the considerations above, the Court finds the settlement is within in the range of possible approval.

### 3. No Obvious Deficiencies

The Court next "considers whether there are any obvious deficiencies with the proposed settlement." *Van Lith*, 2017 WL 1064662, at *17 (quoting *Pierce v. Rosetta Stone, Ltd.*, No. 11-cv-01283-SBA, 2013 WL 1878918, at *5 (N.D. Cal. May 3, 2013)).

The one potential deficiency obvious to the Court is the attorney's fees and costs provisions. Particularly in pre-certification settlements, the district "is required to search for 'subtle signs' that plaintiff's counsel has subordinated class relief to self-interest." *Kim*, 8 F.4th at 1179 (quoting *In re Bluetooth*, 654 F.3d at 947); *see also Briseño*, 998 F.3d at 1024-25. Possible signs of shortchanging the class include: (1) class counsel's receipt of a disproportionate distribution of the settlement or a handsome fee and minimal monetary class recovery, (2) a "clear sailing" provision under which defendant agrees not to object to the attorneys' fees sought or payment of fees are made separate from class funds, and (3) an agreement that fees not awarded will revert to the defendant, not to the class fund. *Kim*, 8 F.4th at 1180; *In re Bluetooth*, 654 F.3d at 947.

Here, there is a clear sailing provision, as Defendant agreed not to object to Plaintiff's fee request of up to one-third of the gross settlement amount. The collusion concerns raised by such a provision are minimized because any fees not awarded will be distributed to the class, not revert

to Defendant. *See, e.g., Garcia v. Sclumberger Lift Solutions*, No. 1:18-cv-01261-DAD-JLT, 2020 WL 6886383, *13-14 (E.D. Cal. Nov. 24, 2020). Accordingly, the Court's main concern is the amount of fees and costs. Because of concern, the Court sought supplemental submissions from Plaintiff on this issue. (Doc. No. 20).

Though percentage awards of one-third may be reasonable in some cases, "[p]ercentage awards of between twenty and thirty percent are common." *Taylor v. FedEx Freight, Inc.*, 1:13-cv-002237-DAD-BAM, 2016 WL 6038949, at *5 (E.D. Cal. Oct. 13, 2016); *see also* Newberg on Class Actions § 15:83 (2021) ("An earlier edition of the Treatise reported that (then-available) empirical studies showed that fee awards in class actions average around one-third of the recovery, a statement quoted by many courts.[] More recent empirical data on fee awards demonstrate that percentage awards in class actions are generally between 20–30%,[] with the average award hovering around 25%"). Therefore, the percentage requested is slightly outside the range of other class action settlements. And, as the Court noted in its order requesting supplemental submissions, the circumstances of this case make comparison with the percentages in post-certification, or even post-discovery cases, inapt. As such, the Court considers the lodestar cross-check particularly relevant here. *See Briseño*, 998 F.3d at 1024 (in both pre- and post-certification settlements, court must "examine whether the attorneys' fees arrangement shortchanges the class").

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. Courts consider the reasonable rates for the specific geographic area and type of practice. *See Chalmers* v. *City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986). Counsel are experienced wage and hour and class action litigators, with 18 or more years of experience each. Each attorney represents that their current hourly rate is $750, and base their estimate of the lodestar on these rates. They refer the Court to cases in which fees in this range were approved. (Doc. Nos. 21-1 at 4:19-5:4; 21-2 at 4:9-17; 21-3 at 5:19-6:11; 21-4 at 5:6-14). Nearly all of these cases were in state and federal courts in the Northern and Central District, i.e., the greater

Bay Area and Los Angeles. Plaintiff has not provided evidence or case law that persuades the Court the hourly rates are consistent with those routinely analyzed and approved in this District. *Cf. Ruiz v. JCP Logistics, Inc.*, No. 13-1908-JLS-ANx, 2016 WL 6156212, at *9 (C.D. Cal. Aug. 12, 2016) (counsel has the burden of showing that requested rates are in line with those in the community).

Regarding the number of hours, Counsel does not indicate that any associates or other legal professionals assisted on this case.[4] This suggests that the number of hours billed by counsel may involve administrative or other tasks that should reasonably be billed at lower rates. *See, e.g., Saenz v. Lowe's Home Centers, LLC*, No. 2:17-cv-08758-ODW-PLA, 2019 WL 3456810, at *6 (C.D. Cal. July 31, 2019); *Ruiz*, 2016 WL 6156212, at *9. Counsel also does not describe the work performed by each of the attorneys, or their exercise of billing judgment. Other than the few court filings in this case, the record reflects that counsel prepared formal discovery, negotiated production of and analyzed Defendants' data, attended mediation, and finalized the settlement. (Doc. No. 15-2 at 3:19-5:13). It is not clear how the 251.3 hours identified were spent among these tasks. *Cf. Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 505 (2016) (though court not *required* to scrutinize time records, summaries of work performed and detailed time records are appropriately considered). Given these issues, the Court cannot determine that the hours billed, a key component of the lodestar calculation, are reasonable. *See Allen*, 787 F.3d at 1225 (district court engaging in lodestar cross check should make express findings on what it considered to be a reasonable lodestar amount). As such, the 2.7 multiplier may, in fact, be a significant underestimate. This is concerning. As a class action authority indicates, "most multipliers are in the relatively modest 1-2 range;[] this fact counsels in favor of a presumptive ceiling of 4 or slightly above twice the mean." Newberg on Class Actions, § 15:87 (2021). The cases cited by Plaintiff bear this out. (Doc. No. 21 at 4).

As Plaintiff notes, *Laffitte*, which involved, *inter alia*, 68 depositions, three motions for

---

[4] Two attorneys describe their fees as amounts billed by "my firm," suggesting the possibility of other colleagues' contributions, but do not provide any other legal professional billing information or rates. (Doc. No. 21-3 at 6:10; 21-4 at 4:12).

14

summary judgment, a class certification motion, a reconsideration motion, and a motion to decertify, 1 Cal. 4th at 487, resulted in a 2.13 multiplier. In *Emmons*, this district approved a one-third fee when litigation had lasted over four years, plaintiff's counsel had used billing discretion to reduce the overall amount, and the lodestar crosscheck reflected a 1.7 multiplier. *Emmons v. Quest Diagnostics Clinical Labs., Inc.,* No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017). In *Wise*, this district approved a one-third fee when litigation had lasted almost four years, resulted in the defendant amending its policies, and the lodestar crosscheck reflected a 1.328 multiplier once counsel's rates were reduced to local rates. *Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*, Case No. 1:17-cv-00853-DAD-EPG, 2020 WL 1492672, * 8 (E.D. Cal. Mar. 27, 2020). In *Taylor*, this district approved a 30% fee in a lengthy and complex case in which a class was certified before settlement and the lodestar crosscheck reflected a 2.26 multiplier. *Taylor*, 2016 WL 6038949, at *6. Finally, in *Lindell*, this district approved a 30% fee when the litigation lasted five years and resulted in policy changes, and the lodestar exceeded the fee at both local and non-local rates. *Lindell v. Synthes USA*, No. 1:11-cv-02053-LJO-BAM, 2016 WL 7368274, at *2 (E.D. Cal. Dec. 20, 2016).

This is all to say that the Court currently is not persuaded that the requested one-third fee, requiring a lodestar multiplier of at least 2.7, should be awarded. Plaintiff did not submit any detail on costs in either her initial or supplemental filing. Still, neither the percentage and roughly estimated multiplier, nor the maximum cost amount, reflect inadequacy that would prevent preliminary approval. At the final approval stage, the Court will closely scrutinize the fee and cost requests and determine the exact amounts to be awarded. At this time and based on the information provided, the Court does not anticipate awarding attorney's fees of one-third of the gross settlement amount.

### 4. Preferential Treatment

#### a. Allocation of Payments

The revised settlement provides that class members will receive a proportionate share of the PAGA Allocation Amount and the Net Settlement Amount. (Doc. No. 23-1 at 6). The proportionate share will be determined by dividing the number of qualifying wage statements

1 received during the relevant subclass period by the total number of wage statements received by
2 both subclasses during the relevant periods. (*Id.*). This is an equitable and reasonable method of
3 allocating class members' payments. *See, e.g.*, *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-
4 KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473, at *12 (E.D. Cal. June 30, 2016) (finding
5 at the preliminary approval stage that a "mechanism for distributing the settlement funds
6 proportionally based on the total number of weeks worked" was "reasonable"); *Pierce v. Rosetta
7 Stone, Ltd.*, No. 11-cv-01238-SBA, 2013 WL 1878918, at *6 (N.D. Cal. May 3, 2013) (at
8 preliminary approval, disbursement on a pro rata basis reasonable).

### b. Service Award

While discretionary, service awards are "fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). They are particularly appropriate in employment actions. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. 2015). "'Incentive awards typically range from $2,000.00 to $10,000.00,' and '[higher] awards are sometimes given in cases involving much larger settlement amounts.'" *Sanders v. LoanCare, LLC*, No. 2:18-cv-09376-SJO (RAOx), 2019 WL 12340195, at *12 (C.D. Cal. Sept. 16, 2019) (quoting *Bellinghausen*, 306 F.R.D. at 266-67). Such awards are intended to compensate the plaintiff for work performed on behalf of the class and to make up for financial or reputational risk. *Roes, 1-2 v. SFBC Management, LLC*, 944 F.3d 1045, 1057-58 (9th Cir. 2019).

Given the modest information provided on the risks to Plaintiff and the time she spent on the case, the Court finds that a service award is appropriate. However, the Court is concerned that the proposed service award of $10,000, which is more than 46 times the average class member's award, appears excessive. As the Court will determine the specific amount to be awarded at final approval, the excessive service award request, in itself, does not establish preferential treatment that would prevent preliminary approval.

### D. Notice to Class Members

If the court determines it will likely be able to approve the settlement and certify the class for settlement purposes, it must direct notice to class members who will be bound by the settlement. Fed. R. Civ. P. 23(e)(1)(B). In terms of content, "[t]he notice must clearly and

concisely state" the following "in plain, easily understood language": (1) "the nature of the action;" (2) "the definition of the class certified;" (3) "the class claims, issues, or defenses;" (4) "that a class member may enter an appearance through an attorney if the member so desires;" (5) "that the court will exclude from the class any member who requests exclusion;" (6) "the time and manner for requesting exclusion;" and (7) "the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). As modified, the class notice meets each of these standards. (Doc. No. 23-1 at 8-14). However, several minor errors remain with the proposed notice:

- On pages 2 and 6 of the amended proposed notice (*id.* at 17, 21), the description of the court should read: U.S. District Court for the Eastern District of California (not "U.S. District of California for the Eastern District of California");
- On page 4 of the amended proposed notice (*id.* at 19), in the Individual Settlement Shares section, the revised language includes two typos, highlighted below. It should read: "The calculation of each Remaining Settlement Class Member's proportionate share shall be done by dividing the number of wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages that the ~~that~~ Remaining Settlement Class Member received during their applicable Subclass Class Period ("Qualifying Wage Statements") by the total number of Qualifying Wage Statements ~~of~~ received by all Remaining Settlement Class Members in both subclasses, with the resulting percentage multiplied against the Net Settlement Amount.";
- On page 4 of the amended proposed notice (*id.* at 19), in the Individual Settlement Shares section, the "April 6, 2019 Subclass" and "June 2, 2020" paragraphs should be eliminated, as they are inconsistent with the revised settlement paragraph 9.3 (*id.* at 6).

Where, as here, the parties propose to certify a class under Rule 23(b)(3), notice must be the best as "practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Before initially mailing

notice, the settlement administrator will make a good-faith attempt to obtain up-to-date names and mailing addresses for potential class members, including (1) cross-checking the names and/or postal mail addresses it received from Defendant, and (2) reviewing the addresses with the National Change of Address Database. (Doc. No. 15-2 at 18 ¶ 5.3). Additionally, the settlement administrator will remail any notices returned with a forwarding address, and if no forwarding address is received, will use skip tracking to find an updated address. (*Id.* at ¶ 5.4). Further, the settlement provides for a website to be maintained for the benefit of class members. (Doc. No. 23-1 at 14). This proposed notice plan is sufficient.

## CONCLUSION

For the reasons provided herein, the Court **ORDERS** the following:

(1) Plaintiff's Renewed Motion (Doc. No. 23) is GRANTED.

(2) On the basis of the findings set forth herein, the Court conditionally certifies the following Settlement Class pursuant to Federal Rule of Civil Procedure 23 for settlement purposes only in accordance with the terms of the Settlement Agreement:

    a. A "June 2, 2020 Settlement Subclass" consisting of all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from June 2, 2020 through the Preliminary Approval Date ("June 2, 2020 Subclass Class Period"), and who were subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc.*, Los Angeles County Superior Court Case No. BC499888; and

    b. An "April 6, 2019 Settlement Subclass" consisting of all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from April 6, 2019 through the Preliminary Approval Date ("April 6, 2019 Subclass Class Period"), and who were not subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc.*, Los Angeles County Superior Court Case No. BC499888.

(3) For settlement purposes only, Plaintiff's counsel, Diversity Law Group, A Professional Corporation, Polaris Law Group, Hyun Legal, APC, and Law Offices of Choi & Associates, P.C, are APPOINTED as class counsel.

(4) For settlement purposes only, Plaintiff Gennifer Manzo is APPOINTED as the class representative.

(5) On the basis of the findings set forth herein, the Court preliminarily APPROVES the settlement as fair, reasonable, and adequate.  The Court will evaluate the requested attorney's fees, costs, and service award at Final Approval.  If the Court grants final approval and decides to award less than the amounts requested, any unawarded amounts shall revert back to the Settlement Class Members only, to be distributed in accordance with the approved distribution formula.

(6) The method of notice to the class members, (*see* Doc. No. 15-2 at 17-18, § V), is APPROVED.

(7) ILYM is APPROVED to serve as the neutral, third-party Settlement Administrator in accordance with the Settlement Agreement and consistent with this Order.

The Court further **ORDERS** the following schedule for this matter:

(**1**) No more than **ten (10) calendar days after entry of this Order**, Plaintiff shall further revise the proposed class notice consistent with this Order and resubmit it to the Court for approval.

(**2**) No more than twenty (20) business days after entry of this Order, Defendant shall provide the Settlement Administrator with the Class Information for purposes of sending the Class Notice to Settlement Class Members.  (Doc. No. 15-2 at 17 ¶ 5.1).

(**3**) No more than twenty (20) business days after receipt of the Class Information, the Settlement Administrator shall send a copy of the Class Notice by U.S. mail to each potential Settlement Class Member (the "Notice Date").  Before the initial mailing of the Class Notice, the Settlement Administrator shall make a good-faith attempt to obtain the most-current names and postal mail addresses, including by using the means identified in the settlement agreement.  (Doc. No. 15-2 at 18 ¶ 5.3).

     **(4)** Any request for exclusion ("opt-out") or written objection to the settlement must be mailed to the Settlement Administrator at the address provided in the Class Notice and must be postmarked no later than forty-five (45) calendar days after the Notice Date or fifteen (15) calendar days after the re-mailing of a Settlement Class Member's Notice, whichever is later ("Exclusion/Written Objection Deadline").  (Doc. No. 15-2 at 19 ¶ 6.1; 20 ¶ 7.1).

     **(5)** Plaintiff shall file any final approval motion, along with all objections sent to the administrator, and any motion for attorney's fees and costs, by no later than **28 calendar days** before the Final Hearing Date.  The briefing should include information about the number of undeliverable class notices, the number of class members who elected to opt out of the class, the number of class members who objected to or commented on the settlement, and reasonable estimates of the highest, lowest, and median individual settlement payments.  It should also respond to any objections; and

     **(6)** The Court shall hold a hearing regarding final certification of the class and final approval of the settlement on **Friday, August 19, 2022 at 1:00 p.m.in Courtroom 6 at the U.S. District Court, 2500 Tulare Street, Fresno, CA.**  The Court reserves the right to adjourn or continue the date of the Final Approval Hearing and all dates provided for in the Settlement Agreement without further notice to Settlement Class Members and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

Dated:    January 20, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE