1  Larry W. Lee (State Bar No. 228175)
**DIVERSITY LAW GROUP, P.C.**
2  515 S. Figueroa St., Suite 1250
3  Los Angeles, California 90071
(213) 488-6555
4  (213) 488-6554 facsimile
lwlee@diversitylaw.com
5
6  Dennis S. Hyun (State Bar No. 224240)
dhyun@hyunlegal.com
7  **HYUN LEGAL, APC**
515 S. Figueroa St., Suite 1250
8  Los Angeles, California 90071
(213) 488-6555
9  (213) 488-6554 facsimile
10
11  Attorneys for Plaintiff and the Class
[Additional Counsel on Next Page]

12              **UNITED STATES DISTRICT COURT**

13              **EASTERN DISTRICT OF CALIFORNIA**

14  | GENNIFER MANZO, individually and on behalf of all others similarly situated, | Case No.: 1:20-cv-01175-NONE-HBK |
15  | | |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
16  | | |
17  | vs. | |
18  | MCDONALD'S RESTAURANTS OF CALIFORNIA INC., a corporation; and DOES 1 through 50, inclusive, | |
19  | | |
20  | Defendants. | Date:        August 19, 2022 |
21  | | Time:        1:00 p.m. |
| | Courtroom:   6, Fresno |
| | Judge:       Hon. Helena M. Barch-Kuchta |

22

23

24

25

26

27

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

## ADDITIONAL COUNSEL

Edward W. Choi, Esq. SBN 211334
**LAW OFFICES OF CHOI & ASSOCIATES**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
Telephone: (213) 381-1515
Facsimile: (213) 465-4885
Email: edward.choi@choiandassociates.com

WILLIAM L. MARDER, ESQ. (CBN 170131)
bill@polarislawgroup.com
**POLARIS LAW GROUP**
501 San Benito Street, Suite 200
Hollister, CA 95023
Tel: (831) 531-4214
Fax: (831) 634-0333


Attorneys for Plaintiff and the Class

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 19, 2022, at 1:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 6 of the United States District Court for the Eastern District of California, Robert E. Coyle Federal Courthouse, located at 2500 Tulare Street, Fresno, California 93721, before the Honorable Helena M. Barch-Kuchta, Plaintiff Gennifer Manzo ("Plaintiff") will and hereby does move the Court for an Order (1) granting final approval of the proposed class action settlement; (2) approving Class Counsel's application for attorneys' fees in the amount of $600,000.00 (30% of the Gross Settlement Amount) and reimbursement of costs in the amount of $7,311.08; and (3) approving Plaintiff's request for an enhancement award of $10,000.00.

Given that this is a Motion for Final Approval of a settlement reached with Defendant McDonald's Restaurants of California Inc. ("Defendant"), Plaintiff has been informed that Defendant will not oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, William L. Marder, Edward W. Choi, Dennis S. Hyun, Plaintiff Gennifer Manzo, and Nicole Bench of ILYM, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.


DATED: July 22, 2022                    LAW OFFICES OF CHOI & ASSOCIATES


                                        By: _____
                                              Edward W. Choi
                                        Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................ **10**

II.     LITIGATION HISTORY ...................................................................... **10**

     A.   Plaintiff's Claims ..................................................................... **10**

     B.   Defendant Vigorously Denies Plaintiff's Allegations ................ **11**

     C.   Procedural History ................................................................... **11**

     D.   Settlement Negotiations ........................................................... **12**

     E.   The Court Granted Preliminary Approval of the Settlement ........... **12**

III.    SUMMARY OF THE PROPOSED SETTLEMENT ............................ **12**

     A.   The Settlement Class ............................................................... **12**

     B.   Scope of the Released Claims ................................................... **13**

     C.   Monetary Relief Under the Settlement ..................................... **14**

     D.   Service Payment to Plaintiff .................................................... **14**

     F.   Attorney's Fees and Costs ....................................................... **15**

     G.   Settlement Administration Costs .............................................. **15**

IV.     FINAL CLASS CERTIFICATION OF THE CLASS IS APPROPRIATE ............ **15**

V.      CLASS MEMBERS WERE PROVIDED PROPER NOTICE OF THE
    SETTLEMENT ................................................................................ **16**

VI.     THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL. **17**

     A.   The Strength of Plaintiff's Case Supports Settlement ................ **17**

     B.   Risks, Expense, and Duration of Continued Litigation Supports Settlement .. **18**

     C.   The Settlement Amount Favors Settlement ............................... **18**

     D.   The Extent of Discovery Favors Settlement .............................. **19**

     E.   The Recommendations of Counsel Favor Approval of the Settlement ............ **19**

     F.   The Class Has Responded Favorably to the Proposed Settlement .................. **20**

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT

G.    The Procedure Through Which the Settlement Was Achieved Supports Final Approval ........................................................................................... 20

H.    The Settlement of the PAGA Claims Merits Approval ..................................... 22

VII.    THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED ........................................................................................................... 22

A.    Attorneys' Fees in Common Fund Cases....................................................... 22

1.    The Court Should Award Fees Based on the Percentage of the Recovery ...................................................................................... 22

2.    Class Counsel Satisfies the Criteria for a Common Fund Award......... 25

B.    The Lodestar Calculation "Cross-Check"....................................................... 29

C.    The Court Should Approve the Request for Reimbursement of Costs ........... 32

VIII.    PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED ................................. 32

IX.    SETTLEMENT ADMINISTRATION COSTS SHOULD BE APPROVED ........... 33

X.    CONCLUSION ........................................................................................... 33

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT

## <u>TABLE OF AUTHORITIES</u>

<b><u>Page(s)</u></b>

<u>**Cases**</u>

*Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980)...........................................19

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013).......................28

*Bellinghausen v. Tractor Supply Co.*, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015).......19

*Benitez v. Wilbur*, No. 1:08–cv–01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009)........29

*Birch v. Office Depot, Inc.,* No. 06CV1690 DMS (WMC), slip opin. (S.D. Cal. Sept. 28, 2007)29

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ......................................................................23

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)....................................................22, 23, 24

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)...................................................19

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) ..................................33

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991).......................23, 26

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885) ................................................23

*Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX, 2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016) ..............................................................................................................24

*Chavez v. Petrissans*, Case No. 1:08–cv–00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009) ................................................................................................................................29

*Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) ..... 17, 19, 20, 21

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004).........................................20

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ................................................17

*Contreras v. Bank of Am., N.A.* (S.F. Cnty. Super. Ct. Sept. 3, 2010) No. CGC-07-467749.......31

*Cordy v. USS-Posco Indus.*, No. 12-CV-00553-JST, 2014 WL 212587, at *3 (N.D. Cal. Jan. 17, 2014) ................................................................................................................................29

*Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014)... 17, 18, 19, 20

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ......................................19

---

*Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) ................................................................. 25

*Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) .......................................................................................................................... 24

*Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629 (1998), 632................................ 31

*Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)................................................................. 23

*Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ....................................................................................................... 28

*Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007).. 22, 33

*Glendora Cmty. Redev. Agency v. Demeter,* 155 Cal. App. 3d 465 (1984)................................. 31

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ......................................... 17, 21

*In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ..................................... 23

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) . 33

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)................................... 18, 19

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)............................. 20

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) ....................... 26

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995)............................................. 23

*In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)....................................... 28

*In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000). ..................................................................................................................... 29

*Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881) ................................ 23

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000) ............................................................. 17

*Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST, 2013 WL 3287996, at *5-9 (C.D. Cal. June 28, 2013) ................................................................................................. 29

*Ketchum vs. Moses*, 24 Cal.4th 1122, 1133 (2001) .................................................................... 30

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ................................................... 19

*Laffitte v. Robert Half Int'l*, 1 Cal.5th 480, 503 (2016) .................................................. 24, 25, 31

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1   *Laffitte v. Robert Half Int'l., Inc.* (2014) 231 Cal.App.4th 860, 871 ............................................ 25

2   *Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No. 166) ........... 25

3   *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) .................................... 22

4   *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375 (1970) ......................................................................... 23

5   *Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013)............. 18

6   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ........................................ 30

7   *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615,

8      625 (9th. Cir. 1982) ................................................................................................ 20, 21

9   *Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ................................ 20

10  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) ................................................. 16

11  *PLCM Group, Inc.*, 22 Cal. 4th 1084 (2000), 1095 ..................................................................... 31

12  *Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34)................................ 25

13  *Rodriguez v. West Publishing Corp*., 563 F.3d 948 (9th Cir. 2009)........................................... 21

14  *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. 2007) ......... 29

15  *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939) .................................................... 23

16  *Stanton v. Boeing Co*., 327 F.3d 938, 975 (9th Cir. 2003) ........................................................ 32

17  *Stetson v. West Publishing Corp.*, Case No. 13-57061, at  (9th Cir. May 11, 2016)............. 23, 30

18  *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ................ 33

19  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492-93 (E.D. Cal. 2010) ..................... 28

20  *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047 ......................................... 24, 26

21  *Vo v. Las Virgenes Municipal Water Dist*., 79 Cal.App.4th 440, 447 (2000) .............................. 31

22  *Wershba*, 91 Cal. App. 4th at 255 ............................................................................................. 31

23  *Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir.1997) ................ 22

24  *Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-

25      EPG (Dkt. No. 55) ................................................................................................................ 25

26  **Statutes**

27  California Civil Code §1542 ....................................................................................................... 15

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT**

Labor Code § 218.5 ................................................................................ 33

Labor Code § 226 ................................................................................. 12

Labor Code § 226(a) ............................................................................ 12

Labor Code § 226(e) ........................................................................ 12, 33

Labor Code § 2698, *et seq*. ................................................................ 12

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11.26 (4th ed. 2002) .......... 19

*Manual for Complex Litigation* (Fourth) (2004) ........................................ 22

Newberg on Class Actions, Fourth Edition, vol. 4, p. 556, §14.6 ................................ 24

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................ 16, 18

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

## I.     INTRODUCTION

Plaintiff Gennifer Manzo ("Plaintiff") seeks final approval of a substantial class-wide settlement reached between Plaintiff and Defendant McDonald's Restaurants of California Inc. ("Defendant") (Plaintiff and Defendant collectively, the "Parties"). Plaintiff also seeks an order approving Class Counsel's application for attorneys' fees in the amount of $600,000.00 (30% of the total settlement amount of $2,000,000.00 ("Gross Settlement Amount"), reimbursement of actual litigation costs in the amount of $7,311.08, and Plaintiff's application for an enhancement award of $10,000.00. This request was set forth in the Notice of Class Action and PAGA Settlement ("Class Notice") mailed to all Class Members. As set forth in the Class Action Settlement Agreement and Release ("Agreement" or "Settlement") between the Parties, Defendant has agreed to not object to the requests sought herein.

On January 20, 2022, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Action and Private Attorneys General Act Settlement ("Preliminary Approval Order"). (Dkt. No. 24.) The Parties now seek this Court's final approval of the settlement. **Again, this settlement is non-reversionary, such that no monies will revert back to Defendant**. As such, there was no claims process involved. Class Members were given an opportunity to object or opt-out of the settlement. To date, there have been zero (0) opt-outs or objections to the settlement. (Declaration of Nicole Bench ("Bench Decl.") ¶¶ 11-12.) Accordingly, this shows that the overwhelming majority of Class Members have reacted favorably to the settlement as there is a **100% participation rate and not a single objection from the 5,437-member class**. Moreover, all of the Court's orders concerning dissemination of the Class Notice have been followed. Based thereon, Plaintiff respectfully requests that final approval be granted in its entirety.

## II.     LITIGATION HISTORY

### A.     Plaintiff's Claims

Plaintiff was employed by Defendant as a non-exempt shift manager at Defendant's restaurant in Clovis, California. Plaintiff contends that Defendant failed to provide proper and

accurate itemized wage statements to Plaintiff and other employees. Specifically, Plaintiff alleges that Defendant's wage statements did not identify the correct rate of pay for overtime wages and the correct rate of pay and applicable number of hours for "MQI True Up" wages, in violation of Labor Code § 226(a).[1]

**B.    Defendant Vigorously Denies Plaintiff's Allegations**

Defendant vigorously denies Plaintiff's allegations in their entirety, contends that it has complied with the law, and has asserted numerous affirmative defenses. Specifically, Defendant contends that its wage statements were lawful in all respects and that Plaintiff would be unable to establish a class-wide injury and/or a "knowing and intentional" violation of Labor Code § 226(a), as required by § 226(e). Defendant further maintains that it acted in good faith and should not be subject to penalties for a violation that was not knowing, intentional, or willful.

**C.    Procedural History**

On August 20, 2020, Plaintiff commenced this action in the United States District Court, Eastern District of California, alleging two causes of action for (1) failure to provide accurate wage statements in violation of California Labor Code § 226; and (2) violation of the Private Attorneys General Act ("PAGA"), Labor Code § 2698, *et seq.*, based on the underlying violation of Labor Code § 226. (Dkt. No. 1.)

Following the filing of the action, Plaintiff prepared formal written discovery to be served upon Defendant. (Declaration of Edward W. Choi ("Choi Decl.") at ¶4.) Prior to the service of said discovery requests, the Parties agreed to stay discovery and attempt to resolve this case through mediation. (*Id.* at ¶5.) In advance of the mediation, Defendant provided data, including the number of putative class members and the number of wage statements issued to putative class members during the liability period, which allowed Plaintiff to conduct a full damages analysis. (*Id.* at ¶6.)

///

---

[1] The history of this litigation was previously detailed in Plaintiff's Motion for Preliminary Approval. Dkt. No. 15.

1

### D.       Settlement Negotiations

2       On May 17, 2021, the Parties participated in private mediation with Michael Loeb, Esq.

3   (Choi Decl. ¶7.) Following the conclusion of the mediation, the Parties were able to reach a

4   class-wide settlement.

5       ### E.       The Court Granted Preliminary Approval of the Settlement

6       On January 20, 2022, this Court granted preliminary approval of the Settlement. (Dkt.

7   No. 24.)

8   ## III.    SUMMARY OF THE PROPOSED SETTLEMENT

9       The Settlement terms were summarized in detail in the Motion for Preliminary Approval

10  (Dkt. No. 15), Supplemental Brief in Support of Motion for Preliminary Approval (Dkt. No. 21),

11  and Renewed Motion for Preliminary Approval (Dkt. No. 23), and Plaintiff respectfully

12  incorporates those arguments herein so as to avoid unnecessary duplication. The specific terms

13  of the settlement are set forth in the Settlement Agreement, First Amendment to the Settlement

14  Agreement, and the Order Granting Preliminary Approval of Class Action and PAGA

15  Settlement. (Dkt. Nos. 15-1, Ex. A, Dkt. No. 23-1, Ex. 1, and 24.) The principal terms are set

16  forth below.

17      ### A.       The Settlement Class

18      The Settlement Class is comprised of "all California non-exempt employees who

19  received wage statements that included daily, weekly, or seventh day premium overtime and/or

20  MQI True Up wages at any time from June 2, 2020 through the Preliminary Approval Date

21  ("June 2, 2020 Subclass Class Period"), and who were subject to the class settlement reached in

22  *Sanchez v. McDonald's Restaurants of Cal., Inc.*, Los Angeles County Superior Court Case No.

23  BC499888" ("June 2, 2020 Settlement Subclass"); and "all California non-exempt employees

24  who received wage statements that included daily, weekly, or seventh day premium overtime

25  and/or MQI True Up wages at any time from April 6, 2019 through the Preliminary Approval

26  Date ("April 6, 2019 Subclass Class Period"), and who were not subject to the class settlement

27  reached in *Sanchez v. McDonald's Restaurants of Cal., Inc.*, Los Angeles County Superior Court

Case No. BC499888" ("April 6, 2019 Settlement Subclass").  (Dkt. No. 15-2, Ex. A at § 2.23.)

The Class specifically excludes individuals who were subject to the class action settlement in the

matter of *Sanchez v. McDonald's Restaurants of Cal., Inc.*, Los Angeles County Superior Court

Case No. BC499888. (*Id.*) The Settlement Class includes all Class Members who do not submit

valid and timely requests for exclusion. (*Id.* at § 2.12.) There are 5,437 Settlement Class

Members. (Bench Decl. ¶ 5.)

### B. Scope of the Released Claims

The Settlement Class is releasing:

8.1    June 2, 2020 Subclass Released Claims. In exchange for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all June 2, 2020 Settlement Subclass Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, individually and on behalf of their Legally Authorized Representatives, heirs, estates, trustees, executors, administrators, representatives, agents, successors, and assigns, and anyone claiming through them or acting or purporting to act on their behalf, past or present, fully and without limitation release and discharge each and all of the Released Parties from any and all claims for damages and/or penalties for alleged violations of § 226 of the California Labor Code and for penalties under § 2698, et seq. premised upon violation of Labor Code § 226 for the time period of June 2, 2020, through June 30, 2021, except that the release for claims relating to the display of MQI True Up shall extend through the date the Court grants final approval of the Settlement. This release covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing Plaintiff or Settlement Class Members, or by Plaintiff or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, the administration of such Settlement, and/or the released claims, except to the extent otherwise specified in the Agreement.

8.2    April 6, 2019 Subclass Released Claims. In exchange for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all April 6, 2019 Settlement Subclass Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, individually and on behalf of their Legally Authorized Representatives, heirs, estates, trustees, executors, administrators, representatives, agents, successors, and assigns, and anyone claiming through them or acting or purporting to act on their behalf, past or present, fully and without limitation release and discharge each and all of the Released Parties from any and all claims for damages and/or penalties for alleged violations of § 226 of the California Labor Code and for penalties under § 2698, et seq. premised upon violation of Labor Code § 226 for the time period of April 6, 2019, through June 30, 2021, except that the release for claims relating to the display of MQI True Up shall extend through the date the Court grants final approval of the Settlement. This release covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing Plaintiff or Settlement Class Members, or by Plaintiff or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, the administration of such Settlement, and/or the released claims, except to the extent otherwise specified in the Agreement.

(Dkt. No. 15-2, Ex. A at §§ 8.1-8.2.)

///

---

1

2      **C.**      **Monetary Relief Under the Settlement**

3      Defendant will pay a total Gross Settlement Amount of $2,000,000.00. The sum available

4 for use as payments to Settlement Class Members after the settlement administration costs,

5 awards of attorneys' fees and costs, class representative service award, and PAGA penalties paid

6 to the LWDA shall be referred to as the Net Settlement Amount. (Dkt. No. 15-2, Ex. A at § 3.2.)

7 The Net Settlement Amount will total at least $1,211,022.25. (Bench Decl. ¶ 14.) Defendant

8 agrees that it shall pay the entirety (100%) of the Net Settlement Amount. **In other words, the**

9 **settlement is non-reversionary, meaning that no funds will revert back to Defendant**. (Dkt.

10 No. 15-2, Ex. A at § 3.2.)

11      No claim forms were necessary for any Class Member to participate in the settlement and

12 receive their share of the settlement. Thus, any Class Member who did not opt-out in connection

13 with this settlement will automatically receive his/her share of the settlement proceeds. On

14 average, each Settlement Class Member will receive an average gross payment of approximately

15 $222.74. (Bench Decl. ¶ 14.) The highest individual settlement payment to be paid will be

16 approximately $1,528.99. (*Id.*). Any remaining monies from uncashed checks will be paid to the

17 Center for Employment Training, a California affiliate of Unidos US. (Dkt. No. 15-2, Ex. A at §

18 10.5.)

      **D.**      **Service Payment to Plaintiff**

19      Plaintiff applies for a Class Representative Service Award in the amount of $10,000.00.

20 (Dkt. No. 15-2, Ex. A at § 2.20.) This amount is to compensate Plaintiff for her efforts and work

21 in prosecuting this case, including meeting and communicating with her counsel, and reviewing

22 the pleadings and documents in this case. (Declaration of Gennifer Manzo ("Manzo Decl.") ¶ 6.)

23 Plaintiff has also executed a general release under California Civil Code § 1542. (Dkt. No. 15-2,

24 Ex. A at § 8.3.1.) The propriety of the requested enhancement payment is discussed in greater

25 detail below. Class Members have been apprised of Plaintiff's request for a Class Representative

26 Enhancement Payment, as well as their ability to obtain a copy of the Settlement Agreement, and

27 to object to said request if they so desire. (Bench Decl. ¶ 7, Ex. A.) Not a single Class Member

1 objected to the requested enhancement payment. (*Id.* ¶ 12.)

### F. Attorney's Fees and Costs

Similarly, Class Counsel applies for an award of attorneys' fees in the amount of approximately one-third of the Gross Settlement Amount or $600,000.00, as well as declared litigation costs in the amount of $7,311.08 in connection with the prosecution of this Class Action. The propriety of the sought fees and costs are discussed in greater detail below. Class Members have been apprised of Class Counsel's request for attorney's fees, as well as their ability to obtain a copy of the Settlement Agreement, and to object to said request if they so desire. (Bench Decl. ¶ 7, Ex. A.) Not a single Class Member objected to the requested fees and costs. (*Id.* ¶ 12.)

### G. Settlement Administration Costs

The Court preliminarily approved ILYM to serve as the Settlement Administrator. Plaintiff seeks approval of the Settlement Administrator's fees in the amount of $30,000.00. (Bench Decl. ¶ 15, Ex. B.) The administration costs will be deducted from the Gross Settlement Amount. (Dkt. No. 15-2, Ex. A at § 2.22.)

## IV. FINAL CLASS CERTIFICATION OF THE CLASS IS APPROPRIATE

To be certified, a settlement class must meet the following criteria: (1) the individuals in the settlement class are so numerous that joinder would be impractical; (2) there is a commonality of interest between the plaintiff and the members of the settlement class; (3) plaintiff's claims are typical of the claims of the settlement class members; and (4) plaintiff and their counsel will fully and adequately represent the interests of the settlement class members. Fed. R. Civ. P. 23(a); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). In preliminarily approving the proposed Settlement, the Court found each of these criteria to be satisfied. Preliminary Approval Order (Dkt. No. 24.) Insofar as nothing has changed with respect to the Class definition or its suitability for certification, the Court should grant final class certification of the class.

///

1    **V.     CLASS MEMBERS WERE PROVIDED PROPER NOTICE OF THE**

2    **SETTLEMENT**

3          The notice procedures required by the Preliminary Approval Order, have been followed

4    and satisfy all due process rights of Class Members. The Preliminary Approval Order

5    contemplated that the Class Notice, as approved in the Preliminary Approval Order, be sent to all

6    Class Members by first class mail, as specified in the Settlement Agreement. Further, the

7    Preliminary Approval Order contemplated, that ILYM would serve as the Settlement

8    Administrator.

9          As clearly stated in the Bench Declaration, notice was provided to Class Members, as

10   required by the Preliminary Approval Order. On February 15, 2022, the Settlement

11   Administrator received a Class Member data file from Defendant's counsel that included 5,437

12   Class Members. (Bench Decl. ¶ 5.) On March 17, 2022, each of the persons identified in the data

13   file were sent the Class Notice in English and Spanish via first class mail. (*Id*. ¶ 7.) From the date

14   of mailing, 238 notices were returned with an invalid address. (*Id.* ¶¶ 8-9.) Of these, 117 were

15   mailed to updated addresses after performing a skip-trace and 7 were remailed to the forwarding

16   address. (*Id*.) As of the date of this filing, 161 Class Notices remain undeliverable. (*Id*. ¶ 10.)

17   Further, the Class Notice provided Class Members with Class Counsel's contact information,

18   where they could further seek information regarding the class settlement, leave questions for the

19   Settlement Administrator, and update their address. (*Id*. ¶ 7, Ex. A.)

20         The provision of sending the notice to class members as described above meets the

21   requirements for the "best notice practicable" in this case as necessary to protect the due process

22   rights of class members. *See*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)

23   (provision of "best notice practicable" with description of the litigation and explanation of opt-

24   out rights satisfies due process). Class Members were provided with a mailing regarding the

25   settlement that explained the settlement and allowed Class Members to seek information, ask

26   questions, and object, if so desired. As such, proper notice has been given to the Class Members.

27   ///

1    **VI.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL**

2          Rule 23(e) of the Federal Rules of Civil Procedure provides that any compromise of a

3    class action must receive Court approval. The court has broad discretion to grant such approval

4    and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product

5    of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v.*

6    *Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000). In determining whether a proposed settlement

7    should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement,

8    particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955

9    F.2d 1268, 1276 (9th Cir. 1992).

10          The fairness, reasonableness, and adequacy of any class action settlement depends on

11    "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of

12    further litigation; the risk of maintaining class action status throughout the trial; the amount

13    offered in settlement; the extent of discovery completed and the stage of the proceedings; the

14    experience and views of counsel;…and the reaction of class members to the proposed

15    settlement." *Hanlon* 150 F.3d at 1026. Here, as set forth in the Motion for Preliminary Approval

16    and discussed below, the factors for final approval of this settlement have been established.

17          **A.    The Strength of Plaintiff's Case Supports Settlement**

18          This factor is generally satisfied when the plaintiff must overcome barriers to make his

19    case. *Chun-Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 851 (N.D. Cal. 2010). First,

20    Plaintiff would have been required to prevail on a class certification motion, which is never a

21    guarantee. Second, even assuming class certification could be achieved, Plaintiff would have

22    been required to establish that the violations did in fact exist. Defendant disputes any liability or

23    wrongdoing of any kind associated with the claims alleged by Plaintiff. Moreover, Defendant

24    asserted numerous defenses aimed at circumscribing both the Class's claims and the penalties

25    available to it. *See* § II-B, *supra*. Therefore, this factor favors settlement. *See Dyer v. Wells*

26    *Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final

27    approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will

encounter significant obstacles in establishing their claims"); *see also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

**B.      Risks, Expense, and Duration of Continued Litigation Supports Settlement**

"Difficulties and risks in litigating weigh in favor of approving a class settlement." *Dyer*, 2014 WL 5369395, at *3 (citation omitted). In addition to the obstacles set forth above, even if Plaintiff had prevailed at trial, there was a likelihood that Defendant would have appealed the verdict. Thus, the risks, expense, and duration of continued litigation favor final approval of the settlement. *See id.* at *3 ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation"). Again, Plaintiff faced significant risk in this case based on Defendant's contention that its wage statements complied with the law.

**C.      The Settlement Amount Favors Settlement**

The standard of review for class settlements is whether the Settlement is within a range of reasonableness. As Professor Newberg comments:

> Recognizing that there may always be a difference of opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness.…

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.45 (4th ed. 2002).

Numerous courts have held that **<u>gross</u>** settlements approximating between only 8 and 25% of the defendant's potential exposure are fair and reasonable. *See*, *e.g.*, *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) (holding that class action settlement recovering 16% of potential exposure was fair and reasonable; "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment"); *Bellinghausen v. Tractor*

1  *Supply Co.*, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) (holding that class action

2  settlement recovering between 8.5% and 25% of the defendant's potential exposure was fair).

3  　　　　As already stated above, Defendant contends that it has complied with the law.

4  Nevertheless, assuming 100% liability, the $2,000,000.00 settlement represents 13.75% of the

5  maximum $14,539,900.00 exposure, which is reasonable and consistent with other class action

6  settlement recoveries.

7  　　　**D.**　　**The Extent of Discovery Favors Settlement**

8  　　　　Here, settlement was reached following the exchange of significant meet and confer

9  processes and production and review of substantial amounts of data and documents. The

10  negotiations at all times were adversarial and non-collusive, including a full day before a third-

11  party mediator. Moreover, Class Counsel had the information necessary to ascertain the value of

12  the class claim. Courts have held that such discovery is sufficient for parties to make an informed

13  decision regarding the adequacy of the settlement. *See*, *e.g.*, *Dyer*, 2014 WL 5369395, at *3;

14  *Chun-Hoon*, 716 F.Supp.2d at 848 ("true value of the class claims is well-known and class

15  counsel possess a sufficient understanding of the issues involved and the strengths and

16  weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.

17  2000) (formal discovery not necessary where the parties have sufficient information to make an

18  informed decision about settlement).

19  　　　**E.**　　**The Recommendations of Counsel Favor Approval of the Settlement**

20  　　　　The recommendations of experienced counsel should be given considerable weight.

21  *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework*

22  *Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the

23  case approved the settlement after hard-fought negotiations is entitled to considerable weight.");

24  *Kirkorian v. Borelli*, 695 F.Supp. 446, 451 (N.D. Cal. 1988).

25  　　　　Class Counsel has broad experience litigating employment class actions. (Choi Decl. ¶11;

26  Declaration of Larry W. Lee ("Lee Decl.") ¶¶; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶¶

27  3-6; Declaration of William L. Marder ("Marder Decl.") ¶¶ 3-11.) They support this settlement

as a fair and reasonable settlement which is in the best interest of the Settlement Class. (Choi Decl. ¶9; Lee Decl. ¶3; Hyun Decl. ¶9). Therefore, this factor favors approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-Hoon*, 716 F.Supp.2d at 848 (same).

### F.    The Class Has Responded Favorably to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that" the settlement is favorable to class members. *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness.").

Here, zero individuals have objected, opted out, or had any disputes with their settlement payments. (Bench Decl. ¶¶ 11-12.) In other words, this settlement has a 0% objection and opt out rate. (*Id.*) Thus, the absence of objections and opt-outs strongly support the fairness of the settlement. *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) (approving settlement with 45 objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively); *Dyer*, 2014 WL 5369395, at *4 (strong support from class in favor of approving settlement where only three of 8,695 class members opted out); *Chun-Hoon*, 716 F.Supp.2d at 852 (where 16 of 329 class members opted out, court found that positive class reaction "strongly supports settlement").

### G.    The Procedure Through Which the Settlement Was Achieved Supports Final Approval

The Ninth Circuit has recognized that the factors to be examined at final approval may differ depending on the circumstance of each case. *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982). Therefore, although not one of the *Officers for Justice* listed factors, the procedures by which the settlement was achieved also strongly support the fairness of the settlement. *See Chun-Hoon*, 716 F.Supp.2d at 851 ("To these factors, the court adds as a ninth factor to consider the procedure by which the

settlement was arrived at"), citing *Manual for Complex Litigation, Fourth* § 21.6 (Fed. Jud. Ctr., 4th ed. 2004). As noted above, the Parties participated in an arm's length negotiation, facilitated by a professional mediator with significant class action experience. This weighs in favor of approval of the settlement. *See Chun-Hoon*, 716 F.Supp.2d at 851 (finding that use of formal arm's-length mediation supported approval of settlement agreement).

Further, the Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." 563 F.3d 948, 965 (9th Cir. 2009), citing *Hanlon*, 150 F.3d at 1027. The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The Court in *Rodriguez* found that the settling parties "put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted). As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* at 965 (citations omitted); *see also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation, Fourth* § 30.42).

The proposed settlement has no deficiencies. There is no standard or benchmark for determining whether any given settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625  (citation omitted). In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

The settlement has been reached after considerable investigation, litigation, negotiation, and involving the mediation efforts of a highly experienced mediator. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as well as Defendant's contention that it would prevail on the merits.

### H.    The Settlement of the PAGA Claims Merits Approval

As detailed in Plaintiff's Motion for Preliminary Approval, the settlement as to Plaintiff's PAGA claims also merits approval. Among other factors, the LWDA has been notified of the settlement and the PAGA Allocation is in line with what courts have approved in other cases. (Dkt. No. 15 at 20-21, Dkt. No. 15-2, ¶ 22.)

## VII.    THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

### A.    Attorneys' Fees in Common Fund Cases

#### 1.    The Court Should Award Fees Based on the Percentage of the Recovery

Governing Ninth Circuit law, following the clear instruction of the United States Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), establishes that percentage awards are to measure against the entire common fund created in the settlement. In *Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007), citing to the Ninth Circuit authority, the Court noted:

> The Ninth Circuit has held, however, that the district court must award fees as a percentage of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the fund actually claimed by the class.

*See also Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir.1997).

Moreover, the U.S. Supreme Court consistently has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled

to a reasonable attorney's fee from the fund as a whole." *Boeing Co.*, 444 U.S. at 478; *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375 (1970). The purpose of this doctrine is largely to avoid unjust enrichment, by spreading the litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone. It provides that when a litigant's efforts create or preserve a fund from which others derive benefits, the litigant may require the passive beneficiaries to compensate those who created the fund.

Every United States Supreme Court case that has considered the award of attorney's fees under the common fund doctrine has determined those fees as a percentage of the recovery. *See, e.g.*, *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)) (noting that the percentage of recovery method is the appropriate method to award attorney's fees in common fund cases); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885); *Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881).

The Ninth Circuit has also recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee of 33% of the recovery). Although the Ninth Circuit has typically found that 25% of the common fund is "benchmark," numerous courts in the Ninth Circuit have awarded higher amounts. *See Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016). The twenty-five percent benchmark may be adjusted upward or downward depending on the circumstances presented by the particular case. Indeed, the Ninth Circuit and district courts therein have routinely permitted recovery in the amount of 33.33%, 40%, and even up to 50% of the common fund. *See, e.g.*, *In re Activision Sec. Litig.,* 723 F.Supp. 1373, 1378 (N.D. Cal. 1989) (listing Ninth Circuit cases).

Seeking a fee based on a percentage of the gross recovery, which is what Class Counsel is seeking here, is appropriate and even desirable in cases like this. *See* Newberg on Class Actions § 14.6 (4th ed. 2002) (noting that percentage of the fund awards are preferable because

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

they align the interests of the attorney with the client, as the attorney is not incentivized to bill

unnecessary hours to generate a greater fee); *Boeing Co.*, 444 U.S. at 478. Unlike the lodestar

method which can encourage class counsel to devote unnecessary hours to generate a substantial

fee, under the POR [percentage of recovery] method, the more the attorney succeeds in

recovering money for the client, and the fewer legal hours expended to reach that result, the

higher dollar amount of fees the lawyer earns. Thus, one of the primary advantages of the POR

method is that it is thought to equate the interests of class counsel with those of the class

members and encourage class counsel to prosecute the case in an efficient manner.

Plaintiff respectfully submits that California law should govern this Court's analysis.[2]

The California Supreme Court clarified its stance on common fund cases, ruling –

> "We join the overwhelming majority of federal and state courts in holding that
> when class action litigation established a monetary fund for the benefit of the
> class members, and the trial court in its equitable powers awards class counsel a
> fee out of that fund, the court may determine the amount of a reasonable fee by
> choosing an appropriate percentage of the fund created."

*Laffitte v. Robert Half Int'l*, 1 Cal.5th 480, 503 (2016). Explaining its ruling, the Court further

held that "[t]he recognized advantages of the percentage method—including relative ease of

calculation, alignment of incentives between counsel and the class, a better approximation of

market conditions in a contingency case, and the encouragement it provides counsel to seek an

early settlement and avoid unnecessarily prolonging litigation—convince us the percentage

method is a valuable tool that should not be denied by our trial courts." *Id.* (internal citations

omitted); *see also Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047.

Based on this rationale, the California Supreme Court in *Laffite* affirmed a fee award

representing one-third of the fund and rejected the objections of putative class members to this

---

[2] Courts are obligated to apply California law in diversity jurisdiction cases in awarding attorneys' fees. *Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) ("Because this case is based on diversity jurisdiction, we are obligated to apply California state law regarding attorneys' fees."); *Chambers v. Whirlpool Corp*., No. CV111733FMOJCGX, 2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016) ("**[i]n diversity actions…, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees**") (emphasis added).

award. *Laffitte*, 1 Cal.5th at 506. Further, this was based on a lodestar amount that required a multiplier of 2.13. *Id*. at 487. As the Court held, only when the multiplier is "extraordinarily high or low [should] the trial court [] consider whether the percentage method should be adjusted so as to bring the imputed multiplier within a justifiable range." *Id*. at 505. Moreover, in the *Laffitte* intermediate court decision, the court observed that "33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits." *Laffitte v. Robert Half Int'l., Inc*. (2014) 231 Cal.App.4th 860, 871.

Numerous district courts have followed *Laffitte* in awarding 1/3 of the common fund. Indeed, District Judge Edward Davila in *Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34) and *Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No. 166), followed *Laffitte* in awarding class counsel (the same counsel as in the instant case) 1/3 of the common fund of $1.15 million based on a multiplier of 1.32 and $3.8 million based on a negative multiplier, respectively.

Further, the Eastern District Court in *Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55), followed *Laffitte*, in awarding 1/3 of the common fund of $3.4 million, or $1,133,333.33 in attorneys' fees applying a multiplier of 1.328. (Dkt. No. 55 at 12-14). In so holding, the Court reiterated that "[i]n a diversity action such as this, federal courts apply state law both to determining the right to fees and the method of calculating them." *Id.*; *see also Emmons v. Quest Diagnostics Clinical Labs., Inc*., No. 113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) (following *Laffitte* in awarding 33% of the common fund; "[t]he California Supreme Court recently held that the percentage-of-fund method of calculating attorneys' fees survives in California courts").

**2.    Class Counsel Satisfies the Criteria for a Common Fund Award**

Courts consider the following factors in issuing an award under the common fund approach:

[T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the

particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation marks omitted) (quoting *Vizcaino*, 290 F.3d at 1047-50).

In *Camden I Condominium Association, Inc., v. Dunkel*, 946 F. 2d 768 (11th Cir. 1991), the court identified various factors to be considered in arriving at a common fund fee determination. Each of the factors are addressed as follows:

(a) **The time and labor required -** Plaintiff's counsel's time and labor required is discussed more thoroughly below in section VII.B. in the lodestar cross-check. In sum, Plaintiff's counsel's lodestar of 2.05 is well within the range awarded in common fund cases.

(b) **The novelty and difficulty of the questions involved** – this case involved novel and difficult questions of evolving law. Plaintiff asserted a theory of liability, namely, that Defendant was required to list the hourly rates and hours worked for the "MQI True Up" wage, which is an adjustment to overtime when taking into account additional non-discretionary remuneration. Plaintiff's counsel asserted this claim in another case, *Magadia v. Wal-Mart*, 999 F.3d 668 (2021), in which the Ninth Circuit held that an employer is not required to list the hourly rates and hours for overtime wage adjustments because said wages are earned in prior pay periods. The Ninth Circuit noted that there was no case law on point and it adopted the rationale of two unpublished California Court of Appeal cases. Thus, this factor weighs in favor of a percentage of the common fund and, as discussed below, shows how much risk Plaintiff's counsel assumed in bringing this case.

(c) **The skill requisite to perform the legal services properly** – this goes hand in hand with the first and second factors. Plaintiff's counsel was able to litigate this case effectively and ultimately achieved a very good result for the class because of Plaintiff's counsel's experience in litigating wage and hour cases.

(d) **The preclusion of other employment by the attorney due to the acceptance of the case** – the case required and demanded attorney time on both sides. The

result of this scheduling was that Class Counsel could have spent such time on numerous other matters while this litigation was ongoing.

(e) **The customary fee** – as discussed above, numerous courts have approved an award of 33.33% of the gross settlement fund, which is the standard percentage pursuant to California law. However, instead of seeking the maximum 33.33% that was agreed upon by the Parties, Plaintiff's counsel is requesting that the court award 30% fees for this matter.

(f) **Whether the fee is fixed or contingent** – this matter was clearly contingent without any sort of fixed or guaranteed fees for Class Counsel. Indeed, Plaintiff's counsel's sole payment was based on contingency fee and no fixed guaranteed costs would have received unless Plaintiff's counsel were successful in this litigation. In addition to the supporting documentation and legal authority presented in the Plaintiff's moving papers, Plaintiff's counsel submits that the attorneys' fees proposed are not just fair and reasonable; they are necessary in order to incentivize attorneys to take on the risk of time and expense associated with class and PAGA actions. Indeed, many times Plaintiff's counsel expend enormous amounts of work and out of pocket costs in the interest of aggrieved employees and/or the State of California, only to end up without any recovery whatsoever. For example, in the matter of *Magadia v. Wal-Mart*, Plaintiff's counsel expended thousands of hours work and over two hundred thousand dollars ($200,000.00) in out of pocket costs. While Plaintiff's counsel initially obtained a trial verdict of $102 million, the entirety of this verdict was wiped away on appeal. *See Magadia v. Wal-Mart*, 999 F.3d 668 (2021). In yet another recent example, Plaintiff's counsel also expended significant time and expenses in another wage/hour class and PAGA action, only to have the District Court grant summary judgment in its entirety against Plaintiff. *See Guynn-Neupane*, 2021 WL 4481661 (N.D. Cal. Sep. 30, 2021). These are the actual risks that Plaintiff requests this Court take into account when considering the requested attorneys' fees, including any multiplier to be accounted into Plaintiff's lodestar.

(g) **Time limitation imposed by the client or the circumstances** – although the client did not impose any time limitations, Class Counsel invested a significant amount of time in this case.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

(h) **The amount involved and results obtained** – Plaintiff and her counsel achieved a concrete monetary award in the amount of $2 million.  This will benefit class members without having to wait for a trial and appeals.

(i) **The experience, reputation and ability of the attorney** – as evidenced by the supporting declarations, Class Counsel has been designated and certified as class counsel in numerous other matters.  Further, as discuss above, if Plaintiff's counsel did not expeditiously mediate this matter and instead engaged in protracted discovery, there was a substantial risk that the class could have received nothing, as was the case in *Magadia v. Wal-Mart*, 999 F.3d 668 (2021) and *Guynn-Neupane*, 2021 WL 4481661 (N.D. Cal. Sep. 30, 2021).

(j) **The nature and length of the relationship with the client** – this factor does not apply in this matter.

In addition to the above factors, given the risk involved of obtaining nothing for the class, the $2,000,000.00 settlement should be considered an exceptional result, providing a concrete monetary recovery for the class. The average estimated individual settlement payment to be paid being approximately $222.74, and the estimated highest individual settlement payment to be paid will be approximately $1,528.99. (Bench Decl. ¶ 14.)

Further, with respect to the market rate for similar cases, numerous courts have awarded 1/3 of the common fund in class action settlements, such that the requested award in this case is well within the range of the marketplace. *In re Pacific Enterprises Sec. Litig*., 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *Barbosa v. Cargill Meat Solutions Corp*., 297 F.R.D. 431, 450 (E.D. Cal. 2013) ("The Settlement Agreement's provision of $430,000 in attorneys' fees (33 percent of the total settlement amount), is fair and reasonable in light of the awards of attorneys' fees in similar wage-and-hour cases in this district"); *Garcia v. Gordon Trucking, Inc*., No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) (court approving attorneys' fees in the amount of 33 percent of the common fund); *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 492-93 (E.D. Cal. 2010) (33 1/3% awarded); *Benitez v. Wilbur*, No. 1:08–cv–01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15,

2009) (awarding 33.3 percent of the benefit to the class in attorneys' fees); *Chavez v. Petrissans*, Case No. 1:08-cv-00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009) (court approved awards of attorneys' fees of 33.3 percent of the common fund); *Romero v. Producers Dairy Foods, Inc*., 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. 2007) (33 1/3% awarded).[3]

Here, while Plaintiff and her counsel could seek up to 1/3 of the Gross Settlement Amount based on case law and the Settlement Agreement, they respectfully request that the Court award 30% of the common fund, or $600,000.00.

## B.    The Lodestar Calculation "Cross-Check"

It has been noted that it is sometimes helpful to courts to "cross-check" a percentage award by employing a lodestar with a multiplier analysis. While the lodestar method is generally considered inappropriate in a common fund case where real cash benefits (as opposed to coupons or non-monetary benefits) are made available to class members, its use can provide further validation of the appropriateness of the percentage award approach. *See In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F.Supp.2d 721 (D.N.J. 2000). Such is the case here.

The declarations of Class Counsel evidence the fact that they devoted approximately 349.80 hours of time to this litigation to date. (Choi Decl. ¶15, Ex. B; Lee Decl. ¶11, Ex. A; Hyun Decl. ¶ 7, Ex. A; Marder Decl. ¶ 12, Ex. A.) These hours are summarized in the time and task charts that are attached to Plaintiff's counsel's declarations. And, to the extent that any argument is made that the time spent was duplicative, the way in which Class Counsel work is for each attorney to handle a task and for the other attorneys to review and revise the work, which is identical to the way defense firms staff and handle cases. More importantly, as recently noted by the Ninth Circuit in *Stetson v. West Publishing Corp.*, Case No. 13-57061, at *13 (9th

---

[3] *See also Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST, 2013 WL 3287996, at *5-9 (C.D. Cal. June 28, 2013) (granted attorneys' fees and costs of $993,000 in class settlement involving recall of vehicles, without any immediate financial payout to the class); *Cordy v. USS-Posco Indus.*, No. 12-CV-00553-JST, 2014 WL 212587, at *3 (N.D. Cal. Jan. 17, 2014) ("a proposed attorney's fee award of not more than 33% appears to be reasonable"); *Birch v. Office Depot, Inc.,* No. 06CV1690 DMS (WMC), slip opin. (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million break claim wage and hour class action).

Cir. May 11, 2016), "some amount of duplicative work is 'inherent in the process of litigating over time.'" (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, Class Counsel expect to expend an additional 40 hours through the final approval hearing, including on matters such as preparing the Motion for Final Approval, attending the final approval hearing, and further conferring with class members regarding the case status. (Choi Decl. ¶15; Lee Decl. ¶ 12; Hyun Decl. ¶ 8; Marder Decl. ¶ 13.) Thus, Class Counsel will have expended 389.80 hours through final approval. Applying the various hourly rates of the lawyers who dedicated their efforts to this matter, a lodestar of $292,350.00 is established for the amount of work spent through final approval. (Choi Decl. ¶ 15 Ex. B; Lee Decl. ¶13, Ex. A; Hyun Decl. ¶ 7, Ex. A; Marder Decl. ¶ 12, Ex. A.) Thus, the fee application is supported whether by the cross-check lodestar method discussed herein, or by the percentage of the common fund discussed in the preceding sections.

The hourly rates employed by Class Counsel, as declared to in the attorney declarations, are reasonable. Plaintiff's attorneys are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. The background and experience of Class Counsel are fully set forth in the declarations filed in support of this motion. The basic hourly rates listed for each firm are fair, and representative of the combination of years of experience and the clear successes they have had in the past in connection with class action litigation. The time and task charts summarize the total hours devoted to the matter by the various law firms, along with the hourly rates as set forth in the supporting declarations, and the total billed. (Choi Decl. ¶15, Ex. B; Lee Decl. ¶13, Ex. A; Hyun Decl. ¶ 7, Ex. A; Marder Decl. ¶ 12, Ex. A.)

As discussed in their supporting declarations, Class Counsel are a group of well-experienced litigators, including class action litigation. (Choi Decl. ¶ 11; Lee Decl. ¶¶5-9; Hyun Decl. ¶¶ 3-6; Marder Decl. ¶¶ 3-11.) Under California law, counsel are entitled to compensation for all hours reasonably spent on the matter. *Ketchum vs. Moses*, 24 Cal.4th 1122, 1133 (2001). Reasonableness of hours is assessed by "the entire course of the litigation, including pretrial

matters, settlement negotiations, discovery, litigation tactics, and the trial itself….” *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal.App.4th 440, 447 (2000). In addition, the attached time and task charts clearly reflect the many hours which were necessarily spent on the case.

A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community. *PLCM Group, Inc.*, 22 Cal. 4th 1084 (2000), 1095. When determining a reasonable hourly rate, courts may consider factors such as skill and experience, the nature of the work performed, the relevant area of expertise and the attorney's customary billing rates. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629 (1998), 632. The Laffey Matrix supports the rates of Counsel. (Choi Decl. ¶13, Exhibit A thereto.) (Laffey Matrix suggests that $919 per hour is the market rate for a lawyer with comparable experience to Messrs. Marder and Choi, and $764 for Messrs. Lee and Hyun).

In the Litigation History section above and in the accompanying attorney, the nature and extent of the proceedings held throughout this litigation were set forth in detail. Without repeating the same, it is incorporated herein. The total hours and billings thus generated are all supported herein. In sum, it is submitted that the reasonableness of Plaintiff's lodestar is manifest. In the present case, Class Counsel's lodestar requires a modest multiplier of 2.05, which is consistent with other cases.  In wage and hour actions, California and Ninth Circuit courts both approve reasonable multipliers on the class counsel's lodestar, which range from 2 to 4 times, to reward counsel for accepting the contingent risk of the litigation or obtaining excellent results.  *See, e.g., Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th at 506 (approving one-third fee award with multiplier between 2.03 and 2.13); *see also Wershba*, 91 Cal. App. 4th at 255 (noting that multipliers can range from 2 to 4 or higher); *Glendora Cmty. Redev. Agency v. Demeter,* 155 Cal. App. 3d 465 (1984)(affirming multiplier of 12); *Contreras v. Bank of Am., N.A.* (S.F. Cnty. Super. Ct. Sept. 3, 2010) No. CGC-07-467749 (approving one-third of common fund fee award, which was 2.73 multiplier of lodestar).

Thus, whether analyzed under the percentage of the fund approach, which is the dominant view, or via the cross-check approach under the loadstar approach, the fees are fully

1 supported.

2      **C.    The Court Should Approve the Request for Reimbursement of Costs**

3      The request for reimbursement of costs, in the amount of $7,311.08 is fair and

4 reasonable. The costs are all litigation related costs, which have been detailed in the supporting

5 declaration of Class Counsel. (Lee Decl. ¶ 14, Ex. B.) The authority for the Court to award costs

6 is the Parties' Settlement Agreement and Labor Code §§ 218.5 and 226(e). Further, pursuant to

7 the Settlement Agreement, Defendant has agreed not to oppose any request for reimbursement of

8 costs up to $30,000.00, but the actual costs that are being sought are much less than the amount

9 allotted in the Settlement Agreement.

10 **VIII.   PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED**

11      Finally, Plaintiff respectfully requests that the full amount of the service payment be

12 awarded to her for the efforts that she undertook on behalf of the Class Members. It is commonly

13 held that it is appropriate to recognize the role of the representative plaintiff without whose

14 actions and courage the benefits of the settlement, which are conferred on the class as a whole,

15 would never have been achieved. The criteria courts may consider in relation to incentive

16 payments include: (1) the risk to the class representative in commencing the suit, both financial

17 and otherwise; (2) the notoriety and personal difficulties encountered by the class representative;

18 (3) the amount of time and effort spent by the class representative; (4) the duration of the

19 litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a

20 result of the litigation. *See Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003). Each of

21 these factors favors the service awards requested in the present case.

22      Plaintiff is the only representative in this case. Plaintiff met with her attorneys to provide

23 information regarding the facts involved. (Manzo Decl. ¶ 6.) Plaintiff also met with her attorneys

24 to discuss the case and facts related to this matter. (*Id.*) Plaintiff has made herself available to

25 answer questions, review pleadings, and to sign declarations in support of the various motions

26 that have been brought in this case. (*Id.*) Plaintiff took these risks upon herself from which the

27 whole Class benefitted. Class members did not have to file individual lawsuits, nor did they have

to bear the risks of payment of fees and costs should they not prevail. (*Id.* ¶ 7.) Class members also do not have to face the risk of potential retaliation or risk of future employment, due to Plaintiff's efforts. In short, Plaintiff sacrificed a significant amount of time, effort, and her own rights in bringing about the benefits to the class.

The payment of enhancement awards to successful class representatives is appropriate and the amount of $10,000.00 to Plaintiff is within the typically accepted range. *See e.g. Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (incentive award of $50,000); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000 Incentive award); *Glass v. UBS Fin. Servs.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007) (awarding $25,000 Incentive award in FLSA overtime wages class action). Moreover, a $10,000.00 service payment represents only **0.5%** of the gross settlement amount. For such reasons, Plaintiff respectfully requests that this Court find the enhancement payment amount of $10,000.00 to Plaintiff as fair, reasonable, and adequate and that the enhancement payment be awarded to Plaintiff.

## IX.    SETTLEMENT ADMINISTRATION COSTS SHOULD BE APPROVED

Here, ILYM dutifully administered the settlement. (*See generally* Bench Decl.) The Agreement provides up to $30,000.00 for ILYM's costs. (Dkt. No. 15-2, Ex. A at § 2.22.) Plaintiff respectfully requests that the Court approve payment of $30,000 to ILYM in settlement administrator expenses.

## X.    CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that this Motion be granted in its entirety, including Plaintiff's requests for attorney's fees in the amount of $600,000.00, litigation costs in the amount of $7,311.08, a class representative service award of $10,000.00, and settlement administration costs of $30,000.00. Plaintiff respectfully requests that the Court:

1.      Grant final approval of the proposed class and PAGA settlement;

2.      Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

3.      Order payment from the settlement proceeds to Class Counsel and Plaintiff in compliance with the Settlement Agreement;

4.      Enter the proposed Final Approval Order and Judgment submitted herewith; and

5.      Retain continuing jurisdiction over the implementation, interpretation, and consummation of the settlement.

DATED: July 22, 2022                              LAW OFFICES OF CHOI & ASSOCIATES

By:  _____
        Edward W. Choi
        Attorneys for Plaintiff and the Class