1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19

| | |
|---|---|
| GENNIFER MANZO,<br>*individually and on behalf of all others<br>similarly situated*,<br><br>            Plaintiffs,<br><br>    v.<br><br>McDONALD'S RESTAURANTS OF<br>CALIFORNIA, INC.,<br><br>            Defendant. | Case No.  1:20-cv-1175-HBK<br><br>ORDER GRANTING FINAL APPROVAL OF<br>CLASS ACTION AND PAGA SETTLEMENT<br>AND GRANTING MOTION FOR<br>ATTORNEY'S FEES, IN PART<br><br>(Doc. No.  27) |

20        Before the Court is Plaintiff Gennifer Manzo's ("Plaintiff" or "Manzo") Motion for Final

21   Approval of Class Action and Private Attorneys General Act Settlement and Motion for

22   Attorney's Fees and Costs, filed on July 22, 2022.  (Doc. No. 27, "Motion").  Filed in support are

23   the declarations of the attorneys for Plaintiffs: Edward W. Choi, Larry W. Lee, Dennis S. Hyun,

24   and William Marder (Doc. Nos. 27-2, 27-3, 27-4, 27-5); declaration of Nicole Bench, Case

25   Manager for ILYM Group, Inc., the Settlement Administrator (Doc. No. 27-6), and declaration of

26   class representative, Plaintiff Gennifer Manzo (Doc. No. 27-7).  Defendant filed no opposition to

27   the Motion.  On August 19, 2022, the Court held a hearing on Plaintiff's Motion.  (See Doc. No.

28   29, Minutes).  Attorney Edward Choi appeared for Plaintiff and Attorney Kelsey Israel-Trummel

appeared for Defendant. (*Id*.). Neither the class representative Ms. Manzo, nor any other class members appeared. (*Id*.). No objectors appeared. Defendant raised no opposition to the Motion at the hearing. (*Id*). Having considered the moving papers, as well as the Court's file, the Court grants the Motion to the extent set forth herein.

## BACKGROUND

The Court's previous Order Granting Preliminary Approval described the history of this action in some detail. (Doc. No. 24). The Court briefly summarizes the pertinent matters here.

Plaintiff filed the present action on September 20, 2020. (Doc. No. 1). Plaintiff, a former employee of Defendant, asserting diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), brought claims for penalties under California Labor Code § 226 and under California's Private Attorney General Act ("PAGA"). (*Id.* at 1-2). Plaintiff's claims challenged the methods by which Defendant reported overtime and other compensation on wage statements. (Doc. No. 1 at 9:3-10). Based on data provided by Defendant in preparation for mediation, Plaintiff calculated Defendant's total maximum exposure to be $3,980,650 for Labor Code § 226 penalties and $10,559,250 for PAGA penalties. (Doc. No. 15-2 at 5:8-22). On May 28, 2021, following a mediation before experienced employment law mediator Michael Loeb, Esq., the parties filed a notice of settlement. (Doc. Nos. 13-14; 15-2 at 4:26-27).

### A. Settlement Terms

#### 1. Rule 23 Settlement Class

The settlement class includes the following two groups:

> 2.23.1 The "June 2, 2020 Settlement Subclass" consists of all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from June 2, 2020 through the Preliminary Approval Date ("June 2, 2020 Subclass Class Period") and who were subject to the class settlement reached in *Sanchez v. McDonald's Restaurants of Cal., Inc.*, Los Angeles County Superior Court Case No. BC499888.

> 2.23.2 The "April 6, 2019 Settlement Subclass" consists of all California non-exempt employees who received wage statements that included daily, weekly, or seventh day premium overtime and/or MQI True Up wages at any time from April 6, 2019 through the Preliminary Approval Date ("April 6, 2019 Subclass Class Period"), and who were not subject to the class settlement reached in *Sanchez*

*v. McDonald's Restaurants of Cal., Inc.*, Los Angeles County Superior Court Case No. BC499888.

(Doc. No. 15-2 at 13-14, ¶ 2.23).  There are 5,437 members in the Settlement Class.  (Doc. 27 at 13; citing Doc. No. 27-6 ¶ 13).  A total of 3,553 individuals are part of the June 2, 2020, Subclass and 1,884 individuals are part of the April 6, 2019, Subclass.  (Doc. No. 27-6 ¶ 5).

### 2.  Releases

The Settlement Class is releasing the claims asserted in this suit, depending on the relevant time period for their subclass:

> " . . . all June 2, 2020 Settlement Subclass Members who have not been excluded from the Settlement Class as provided in the Opt-Out List . . . release and discharge each and all of the Released Parties from any and all claims for damages and/or penalties for alleged violations of § 226 of the California Labor Code and for penalties under § 2698, et seq. premised upon violation of Labor Code § 226 for the time period of June 2, 2020, through June 30, 2021, except that the release for claims relating to the display of MQI True Up shall extend through the date the Court grants final approval of the Settlement [and]

> . . . all April 6, 2019 Settlement Subclass Members who have not been excluded from the Settlement Class as provided in the Opt-Out List . . . release and discharge each and all of the Released Parties from any and all claims for damages and/or penalties for alleged violations of § 226 of the California Labor Code - 12 - and for penalties under § 2698, et seq. premised upon violation of Labor Code § 226 for the time period of April 6, 2019, through June 30, 2021, except that the release for claims relating to the display of MQI True Up shall extend through the date the Court grants final approval of the Settlement.

(Doc. Nos. 15-2 at 20-21 ¶¶ 8.1-8.2;Doc. No. 27 at 13:9-25). In addition, Plaintiff provides a general release, including a release of all known and unknown claims under California Civil Code § 1542.  (Doc. No. 15-2 at 21 ¶ 8.3).

### 3.  Gross and Net Settlement Amounts

#### a.  Gross Settlement Amount

The Gross Settlement Amount is $2 million.  (Doc. No. 27 at 14:2).  No portion of the Gross Settlement Amount will be retained by or revert to Defendant.  (Doc. No. 27 at 14:6-9).

#### b.  PAGA Penalties

The settlement allocates $100,000 of the Gross Settlement Amount for PAGA penalties.

(Doc. No. 15-2 at 13 ¶ 2.14).  From this amount, 75% will be paid to the California Labor and Workforce Development Agency ("LWDA") for civil penalties and 25% will be distributed to members of the Settlement Class for penalties for tax reporting purposes.  (*Id.*).

### c.  Attorney's Fees and Costs

Class counsel seek $600,000.00 for attorney fees, which is 30% of the gross settlement amount.  (Doc. No. 27 at 10.).  Class counsel also seeks reimbursement of litigation costs in the amount of $7,311.08.  (*Id.*).

### d.  Incentive Payment

In addition to her payment under the settlement agreement, Plaintiff Gennifer Manzo seeks an incentive award of $10,000.  (*Id.*).

### e.  Settlement Administrator Costs

Plaintiff requests approval of $30,000.00 in costs to Settlement Administrator ILYM Group, Inc. to be deducted from the gross settlement amount.  (Doc. No. 27 at 15:12-15; Doc. No. 27-6 ¶15).  Under the settlement agreement, all fees, costs, and expenses of ILYM were not to exceed $30,000.  (Doc. No. 15-2 at 11-12 ¶ 2.22).

### f.  Estimate of Net Settlement Amount

Based on the foregoing, Plaintiff estimates that the net settlement amount available for distribution to the class members will be approximately $1,211,022.25.  (Doc. No. 27 at 14).  On average each member of the Settlement Class will receive an approximate average gross payment of $222.74.  (Doc. No. 27 at 14:12-14; Doc. No. 27-6 ¶14).  The highest individual settlement payment is approximately $1,528.99.  (Doc. No. 27 at 14:14-15; Doc. No. 27-6 ¶ 14).  The amount each class member will receive will be calculated based on the number of qualifying wage statements during the relevant subclass period divided by the total number of wage statements received by the class members.  (Doc. No. 23-1 at 6 ¶ 9.3).

### g.  Cy Pres

If any individual settlement payments to members of the Settlement Class remain un-cashed after one hundred eighty (180) days of their mailing by the settlement administrator, they will be paid to the *cy pres* recipient, the Center for Employment Training ("CET"), a California

affiliate of Unidos US. (Doc. No. 15-2 at 24 § 10.5). "The mission of CET is to promote human development and education by providing people with marketable skills training and supportive services that contribute to self-sufficiency." (*Id.* at 5:25-27). No party has any relationship with CET. (*Id.*).

### h.  Equitable Relief

The settlement includes no injunctive or other equitable relief. (*See* Doc. No. 15-2 at 10-19; Doc. No. 15 at 26:28).

### B.  Notice to the Class and Responses to Settlement

The Court previously found the form of notice sufficient. (*See* Doc. Nos. 24, 26). Following the approval of the notice, ILYM Group received the class list of 5,437 individuals from the Defendant and, after processing the class list against the National Change of Address database, mailed the Notice Packet (Doc. No. 21-6, Exhibit A) in English and Spanish via First Class U.S. Mail to all 5, 437 individuals on March 17, 2022. (Doc. No. 27-6 ¶¶ 4-7). The Notice informed members of the Settlement Class that class counsel would be seeking up to $666,666.67 in attorney's fees and Plaintiff Manzo would be seeking a service payment of $10,000. (Doc. Nos. 27-6; 27-6, Exhibit A). After performing skip tracing and obtaining forwarding addresses, a total of 161 Notice Packets of the 285 Notice Packets initially returned, have been deemed undeliverable. (Doc. No. 27-6 ¶¶ 8-10). ILYM Group received no requests for exclusion and no objections to the settlement. (Doc. No. 27-6 ¶¶ 11-12). The Court accepts the report of the Class Administrator, and finds adequate notice provided. Rule 23(e)(1); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

### APPLICABLE LAW

"Courts reviewing class action settlements must ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quotations and citations omitted). Where parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the

1    fairness of the settlement." *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003).

2           The Court first determines whether, in its discretion, a class action may be certified. *Id.;*

3    *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1041 (9th Cir. 2012). Exercise of this

4    discretion "demand[s] undiluted, even heightened, attention in the settlement context." *Amchem*

5    *Prods. Inc. v. Windsor,* 521 U.S. 591, 620 (1997). This level of attention "is of vital importance,

6    for a court asked to certify a settlement class will lack the opportunity, present when a case is

7    litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

8           To obtain class certification, the plaintiff must affirmatively demonstrate that the class

9    meets the requirements of Rule 23. *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 350 (2011). The

10   plaintiff must satisfy the four prerequisites identified in Rule 23(a), as well as one of the three

11   subdivisions of Rule 23(b). *Amchem Prods., Inc.,* 521 U.S. at 614. "The four requirements of

12   Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy

13   of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber,*

14   *Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.,* 593

15   F.3d 802, 806 (9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where common

16   questions of law or fact predominate and class resolution is superior to other available methods.

17   Fed. R. Civ. P. 23(b)(3).

18          Second, after determining that a class may be certified, the district court carefully

19   considers "whether a proposed settlement is fundamentally fair, adequate, and reasonable,"

20   recognizing that "[i]t is the settlement taken as a whole, rather than the individual component

21   parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

22   1026 (9th Cir. 1998) (citations omitted); *see* Fed. R. Civ. P. 23(e)(2). Where, as here, a

23   settlement has been reached prior to formal class certification, "a higher standard of fairness"

24   applies due to "[t]he dangers of collusion between class counsel and the defendant, as well as the

25   need for additional protections when the settlement is not negotiated by a court designated class

26   representative." *Id.* at 1026; *see Campbell*, 951 F.3d at 1122. Although the court's role in

27   reviewing a proposed settlement is critical, it is also a limited one. The court does not have the

28   ability to "'delete, modify or substitute certain provisions.' The settlement must stand or fall in

6

1    its entirety." *Hanlon*, 150 F.3d at 1026 (citation omitted).

2    When evaluating fairness, adequacy, and reasonableness of a class action settlement at the

3    final approval stage, the Court considers a number of factors, often referred to as either the

4    *Hanlon* or *Churchill* factors, including: (1) the strength of plaintiff's case; (2) the risk, expense,

5    complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

6    throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed,

7    and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

8    governmental participant; and (8) the reaction of the class members to the proposed settlement.

9    *Kim v. Allison*, 8 F.4th 1178 (9th Cir. 2021).

10    "'A PAGA representative action is . . . a type of qui tam action' in which a private

11    plaintiff pursues 'a dispute between an employer and the state Labor and Workforce Development

12    Agency' ('LWDA') on behalf of the state." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp.

13    3d 959, 971 (N.D. Cal. 2019) (quoting *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 382,

14    384 (2014)).  Although such actions do not require class certification, the Court must review and

15    approve the settlement of an action filed pursuant to the PAGA.  *Id.*; Cal. Lab. Code § 2699(*l*)(2).

16    Courts consider: (1) whether the statutory requirements of notice to the LDWA have been

17    satisfied, and (2) whether the settlement agreement is fair, reasonable, and adequate, as well as

18    meaningful and consistent with PAGA's public policy goals, which include "augmenting the

19    state's enforcement capabilities, encouraging compliance with Labor Code provisions, and

20    deterring noncompliance."  *Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230, *15 (N.D. Cal.

21    Dec. 8, 2021); *Perez v. All Ag, Inc.*, 2021 WL 3129602, *4 (E.D. Cal. July 23, 2021); *see Moniz*,

22    72 Cal. App. 5th at 64, 77 ("we also agree with the LWDA and federal district courts that have

23    found it appropriate to review a PAGA settlement to ascertain whether a settlement is fair in view

24    of PAGA's purposes and policies") (citing cases).  Accordingly, many of the same considerations

25    relevant to review of class action settlements are relevant to review of PAGA settlements:

26    Thus, while PAGA does not require the trial court to act as a fiduciary
     for aggrieved employees, adoption of a standard of review for
27    settlements that prevents 'fraud, collusion or unfairness,' and
     protects the interests of the public and the LWDA in the enforcement
28    of state labor laws is warranted.  Because many of the factors used to

evaluate class action settlements bear on a settlement's fairness—including the strength of the plaintiff's case, the risk, the stage of the proceeding, the complexity and likely duration of further litigation, and the settlement amount—these factors can be useful in evaluating the fairness of a PAGA settlement.

*Moniz v Adecco USA, Inc.*, 72 Cal. App. 5th 56, 77 (2021) (internal quotation marks and citation omitted).

## ANALYSIS

### A. Class Certification

At the preliminary approval stage, the Court analyzed each of the Rule 23(a) and Rule 23(b) factors and concluded Plaintiff had satisfied each. The record on final approval reflects the same or substantially similar information as already provided and analyzed at the preliminary approval stage. No additional substantive issues regarding the certification have been raised. Thus, the Court sees no reason to change its analysis regarding the appropriateness of certification of the class for settlement purposes and finds Plaintiff has met all requirements under Rules 23(a) and 23(b).

### B. Fairness, Adequacy, and Reasonableness of the Settlement

Class actions require the approval of the court prior to settlement and a finding that the class settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). When the settlement takes place before formal class certification, as it has here, the settlement requires a "higher standard of fairness." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026). This "more exacting review" of pre-certification class settlements is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819; *see Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). At the final approval stage, a "district court must show it has explored comprehensively" the eight factors identified above, "and must give a reasoned response to all non-frivolous objections." *Allen*, 787 F.3d at 1223-24 (quoting *Dennis v. Kellogg Co.,* 697 F.3d 858, 864 (9th Cir. 2012). The Court turns to these matters.

### 1. Strength of Plaintiff's Case

Plaintiff seeks to recover penalties based on the manner in which Defendant reported overtime (as 0.5 the rate of pay, Doc. No. 1 at 9:3-6) and overtime adjustment wages (without an hourly rate, Doc. No. 9:6-10) on employees' wage statements. Two recent appellate decisions seem to cast some question into the validity of Plaintiff's claims. One, *General Atomics v. Superior Court*, 64 Cal. App. 5th 987 (2021), held that an employer did not violate California's wage statement law (Labor Code § 226(a)(9)) by listing overtime hours at a 0.5 rate of pay. The other, *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668, 680 (9th Cir. 2021), held that an employer did not violate California's wage statement law by failing to list an "hourly rate" for an overtime adjustment bonus. Under these precedents, Plaintiff's claims arguably lack strength. This factor thus weighs in favor of approval of the settlement.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

On the related question of the risk, expense, complexity and duration of further litigation, the recent authority indicates that Plaintiff's risks are high and that further litigation would likely necessitate appellate practice. At the final class certification and approval of settlement hearing, Plaintiff's Counsel discussed how the decision in *Magadia* demonstrates that continued litigation of the case was risky and could ultimately result in class members receiving a reduced award or no award at all on one of the claims. (Final Class Certification and Approval of Settlement Hearing, August 19, 2022, ECHRO 1:04:39-1:05:52). This factor too weighs in favor of approval of the settlement.

### 3. Risk of Maintaining Class Action Status Through Trial

As an initial matter, a plaintiff need not maintain class action status in order to recover penalties under the PAGA. *Arias v. Superior Court*, 46 Cal. 969 (2009).

Plaintiff's class claims involve alleged class-wide policies—i.e., the manner Defendant reported compensation on wage statements. Such claims are often considered appropriate for class treatment. *See, e.g., Arroyo v. Int'l Paper Co.*, No. 17-cv-06211-BLF, 2019 WL 1508457, at *5 (N.D. Cal. Apr. 4, 2019); *McKenzie v. Fed. Exp. Corp.*, 275 F.R.D. 290, 296 (C.D. Cal. 2011). Defendant asserts numerous affirmative defenses that might serve as the basis for

arguments against predominance under Rule 23(b) or manageability at trial, such as release or res judicata.  (*See* Doc. No. 7 at 6-9).  However, as the proposed settlement in this case indicates, it would likely be possible to create manageable subclasses that could address some or all of these defenses.

Thus, it seems likely Plaintiff would be able to pursue this case either with or without class treatment.  This factor is neutral as to the settlement.

### 4.  Amount Offered in Settlement

#### a.  Gross Settlement Amount

The gross settlement amount is $2 million.  Plaintiff initially estimated that the maximum recovery in this case is $3,980,650 for Labor Code § 226 penalties and $10,559,250 for PAGA penalties.  (Doc. No. 24 at 3).  Had the case continued, Plaintiff states, Defendant would not only have argued its wage statements complied with California law, but also that its conduct was not knowing, intentional, or willful, requirements for penalties under Labor Code § 226(e).  (*Id.* at 11).  Plaintiff also notes that the bulk of the penalties available in this action, $10,559,250 in PAGA penalties, are discretionary.  (*Id.* at 12).  Even if Plaintiff prevailed, a court may reduce PAGA penalties in a particular case if the award would be unjust, arbitrary and oppressive, or confiscatory.  Cal. Lab Code § 2699(e)(2).  Given these considerations, the Court finds the gross settlement amount of $2 million is fair, reasonable, and adequate.

#### b.  PAGA Penalty Allocation

When evaluating the fairness, adequacy, and reasonableness of a PAGA penalty, courts compare the potential penalty amount (its verdict value, as some courts refer to it) with the actual recovery under the settlement.  *See Haralson*, 383 F. Supp. 3d at 972-74; *see also Moniz*, 72 Cal. App. 5th at 87 ("In estimating the potential recovery in the case to evaluate the fairness of the settlement, the trial court assumed one violation [] per employee").  There is no express or even baseline percentage of recovery required.  Under the express terms of the PAGA, a verdict value is not guaranteed even if the plaintiff prevails, as courts have discretion to lower the amount of penalties based on the circumstances of a particular case.  Cal. Lab. Code § 2699(e)(2); *see also Haralson*, 383 F. Supp. 3d at 973-74 (courts evaluating settlements may consider likelihood of

1  exercising discretion to discount claims).

2        As such, courts have approved settlements across of range of verdict value percentages.

3  *See Perez v. All Ag, Inc.*, 2021 WL 3129602, *4 (49% of verdict value of PAGA penalty); *Decker*

4  *v. AllStates Consulting Services, LLC*, 2020 WL 7769842, *3 (E.D. Cal. Dec. 30, 2020) (42% of

5  verdict value of PAGA penalty, resulting in average payment per employee of $188); *Hartley v.*

6  *On My Own, Inc.*, 2020 WL 5017608, * 4 (E.D. Cal. Aug. 25, 2020) (approving settlement at

7  3.47% of verdict value of PAGA penalty, resulting in average payment per employee of $61); *see*

8  *Haralson*, 383 F. Supp. 3d at 972-74 (citing cases reflecting approval of settlements at 0.2% to

9  1.1% of verdict value of PAGA penalty).  And courts have rejected settlements where the PAGA

10 penalty discount was too great.  *O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d

11 1110,1133-1134 (N.D. Cal. 2016) (declining to approve proposed settlement of penalties at 0.1%

12 of verdict value); *see also Haralson*, 383 F. Supp. 3d at 972-74 (requesting more information

13 regarding proposed settlement of penalties at less than 1% of verdict value).

14       Critical to the analysis is whether the plaintiff provides a reasonable explanation for the

15 settlement amount.  *Compare Ramirez v. Benito Valley Farms, LLC*, 2017 WL 3670794, *4 (N.D.

16 Cal. Aug. 25, 2017) (considering early stage of litigation, defendant's weak financial condition,

17 and injunctive relief provided by settlement, approving PAGA settlement of 4.5% of verdict

18 value) with *Smith v. Grundfos Pumps Manufacturing Corp.*, 2021 WL 5298863, *12-13 (E.D.

19 Cal. Nov. 15, 2021) (plaintiff failed to show why significant PAGA penalty reduction at

20 settlement was appropriate).

21       Some courts evaluate fairness based on a comparison of the amount of PAGA penalties to

22 the overall settlement.  In this analysis too, wide variability exists.  *E.g., Newell v. Ensign United*

23 *States Drilling (Cal.) Inc.*, 2021 WL 6000227, *14 (E.D. Cal. Dec. 20, 2021) (approving

24 settlement where PAGA penalties were 4% of gross settlement amount); *see Haralson*, 383 F.

25 Supp. 3d at 972-74 (discussing cases approving settlements where PAGA penalty accounted for

26 1% to 2.4% of gross settlement amount).

27       Here, the parties have allocated $100,000, equal to five percent (5%) of the gross

28 settlement amount of $2,000,000 to PAGA penalties.  Plaintiff estimated the verdict value of the

PAGA claim to be $10,559,250.  (Doc. No. 24 at 3).  Recovery, therefore, is less than one percent (1%) of the verdict value.  Even if Plaintiff established Defendant's knowing and intentional violation of law under Labor Code § 226(e)(1), an award of PAGA penalties may be reduced by a court if the amount would be unjust, arbitrary and capricious, or confiscatory.  Cal. Labor Code § 2699(e)(2).  The LWDA has not objected to the settlement.  (*See* docket).  Given the risks of proceeding with this action, and the discretion afforded under the PAGA, the Court finds the PAGA allocation here is fair, reasonable, and adequate.

### 5. **Extent of Discovery and Stage of the Proceedings**

This case was settled within approximately nine months of filing.  It involved no motion practice and de minimis discovery but nonetheless involved a full-day of mediation before a third-party mediator.   This was likely a good use of resources, since while the case was pending and in settlement negotiations, the legal issues involved here were before state and federal appellate courts.  Though the parties did not exchange formal discovery, Defendant "provided data, including the number of putative class members and the number of wage statements issued to putative class members during the liability period…"  (Doc. No. 24 at 3).  Plaintiff's counsel, who are experienced employment class action litigators, represent that this data was sufficient to allow them "to conduct a full damages analysis."  (Doc. No. 27. at 11, 19; *see also* Doc. No. 24 at 3).  Further, the settlement included a provision that requires an increase in the gross settlement amount if the number of wage statements at issue exceeds the estimate of 57,000 provided during discovery.  (Doc. No. 23-1 at 5 ¶ 3.1).  The Court finds that the extent of discovery and stage of the proceedings weigh in favor of final approval of the settlement.

### 6. **Experience and Views of Counsel**

As mentioned above, Class Counsel are experienced class action and employment law litigators.  (Doc. Nos. 27-2 at 3-4 ¶6-9, 27-3 at 4 ¶10-11, 27-4 at 3-4 ¶3-11, 27-5 at 3-4 ¶3-6).  They have at least 18 years of experience each and have been appointed class counsel in numerous cases.  (Doc. Nos. 27-2 at 3 ¶5, 4 ¶8-9; 27-3 at 4 ¶10-11; 27-4 at 3 ¶3 ,4 ¶ 10-11; 27-5 at 3 ¶3, 4 ¶6).  They have each concluded that settlement is in the best interests of the class.  (Doc. Nos. 27-2 at 3¶3, 27-3 at 3 ¶9, 27-5 at 6 ¶9).  Thus, the experience and views of counsel

weigh in favor of final approval of the settlement.

**7.  Presence of A Governmental Participant**

The PAGA requires that any proposed settlement be submitted to the LWDA at the same time it is submitted to the court for approval.  Cal. Lab. Code § 2699(*l*)(2).  Plaintiff has satisfied this requirement.  (Doc. No. 23-1 at 3:14-15).  The LWDA did not object to the settlement.  (*See* docket).  This weighs in favor of settlement.

**8.  Reaction of the Class to the Proposed Settlement**

There are no objections or disputes with the settlement, and no individual class members opted out of the settlement.  (Doc. Nos. 27 at 20; 27-6 ¶12).  No objectors appeared at the final fairness hearing held on August 19, 2022.  (Doc. No. 29).  The lack of any objection weighs in favor of final approval of the settlement.

**C.  Procedural Requirements**

**1.  Notice to LWDA**

In addition the notice to the members of the Settlement Class, Plaintiff through the Class Administrator ILYM Group, Inc. gave proper notice of the settlement of this the class under Rule 23(e) and of this action to the LWDA under California Labor Code § 2699(*l*)(2).  (Doc. Nos. 23-1 at 3:14-15; 27-6).

**2.  CAFA Notice**

Under the CAFA, within 10 days after a proposed settlement of a class action is filed in court, the settling defendant is required to serve certain state and federal officials with a settlement notice.  28 U.S.C. § 1715(b).  The Court is satisfied with the notification provision set forth in the settlement agreement.  (*See* Doc. No. 15-2).  Defendant satisfied this requirement through a mailing from ILYM Group.  (Doc. No. 15-7; *see also* Doc. No. 27-6).

**D.  Attorney's Fees and Costs**

**1.  Fees**

The Court previously expressed concern about the amount of attorney's fees sought in this case and indicated it would closely scrutinize the fee percentage and lodestar at final approval.  (Doc. Nos. 20, 24).  Class Counsel has voluntarily reduced its initial fee request of 33% to 30%

1    of the gross recovery.  (Doc. No. 27 at 15).

2    　　　Recently, the Ninth Circuit held "Rule 23(e)(2), as revised in 2018, requires courts 'to go

3    beyond our precedent' by accounting for the terms of any proposed award of attorney's fees when

4    determining whether the relief provided for the class is adequate."  *Miguel-Sanchez v. Mesa*

5    *Packing, LLC*, No. 20-cv-00823-VKD, 2021 WL 4893394, at *5 (N.D. Cal. Oct. 20, 2021) (citing

6    *Briseño v. Henderson*, 998 F.3d 1014, 1023-36 (9th Cir. 2021); *Kim*, 8 F.4th at 1179).

7    Particularly in pre-certification settlements, the district "is required to search for 'subtle signs'

8    that plaintiff's counsel has subordinated class relief to self-interest."  *Kim*, 8 F.4th at 1179

9    (quoting *In re Bluetooth*, 654 F.3d at 947); *see also Briseño*, 998 F.3d at 1024-25.  Possible signs

10   of shortchanging the class include: (1) class counsel's receipt of a disproportionate distribution of

11   the settlement or a handsome fee and minimal monetary class recovery, (2) a "clear sailing"

12   provision under which defendant agrees not to object to the attorneys' fees sought or payment of

13   fees are made separate from class funds, and (3) an agreement that fees not awarded will revert to

14   the defendant, not to the class fund.  *Kim*, 8 F.4th at 1180; *In re Bluetooth*, 654 F.3d at 947.

15   　　　Here, Defendant agreed not to object to Plaintiff's fee request of up to one-third of the

16   gross settlement amount.  The collusion concerns raised by such a provision are minimized

17   because any fees not awarded will be distributed to the class, not revert to Defendant.  *See, e.g.,*

18   *Garcia v. Sclumberger Lift Solutions*, No. 1:18-cv-01261-DAD-JLT, 2020 WL 6886383, *13-14

19   (E.D. Cal. Nov. 24, 2020).  Accordingly, the Court's main concern remains the amount of fees

20   and costs.  Because of this concern, before preliminary approval, the Court sought supplemental

21   submissions from Plaintiff on this issue.  (Doc. No. 20).

22   　　　In the supplemental briefing, Plaintiff emphasized that California law applies to attorney's

23   fees in California Labor Code actions like this one and indicates that percentage of the common

24   fund recoveries are allowed in California courts.  (Doc. No. 21 at 3-5).  This is correct.  *Ridgeway*

25   *v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 982 (N.D. Cal. 2017); *see Vizcaino v. Microsoft*

26   *Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also

27   governs the award of fees.").  However, Plaintiff has not suggested that California law on

28   attorney's fees differs materially from federal law.  (*Cf.* Doc. No. 21 at 5-7 (discussing attorney's

1   fees factors set out in Eleventh Circuit case at length)).

2         One potential, if minor, difference is the "benchmark" fee percentage.  The Ninth Circuit

3   has endorsed calculating attorneys' fees using a benchmark of 25% of the common fund amount,

4   subject to discretionary modification depending on the circumstances of the case.  *In re*

5   *Bluetooth*, 654 F.3d at 942.  "Notably, while the California Supreme Court recognized the Ninth

6   Circuit's 25 percent benchmark for percentage awards in common fund cases, it did not adopt

7   such a benchmark for California cases."  *Ridgeway*, 269 F. Supp. 3d at 982 (internal citations

8   omitted) (citing *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 495 (2016)).  Still, in both courts,

9   reasonableness of the fee is the touchstone.  *In re Bluetooth,* 654 F.3d at 942; *see Laffitte*, 1 Cal.

10  5th at 503.

11        When evaluating the reasonableness of a percentage-based attorney's fees award, district

12  courts consider:

13  > (1) the results achieved; (2) the risk of litigation; (3) the skill required
14  > and the quality of work; (4) the contingent nature of the fee and the
    > financial burden carried by the plaintiffs; and (5) awards made in
15  > similar cases.  Additionally, district courts may cross-check the
    > reasonableness of a percentage award by comparing it to a lodestar
16  > calculation and risk multiplier.

17  *Chavez v. Converse, Inc.*, No. 15-cv-03746-NC, 2020 WL 10575028, at *5 (N.D. Cal. Nov. 25,

18  2020) (citations and internal quotation marks omitted).  These are similar to the factors California

19  courts have long used when evaluating the reasonableness of a lodestar fee and multiplier.  *See*

20  *Rodriguez v. Penske Logistics, LLC*, No. 2:14-cv-02061-KJM-CKD, 2019 WL 246652, at *10–11

21  (E.D. Cal. Jan. 17, 2019); *Willner v. Manpower Inc.*, No. 11-cv-02846-JST, 2015 WL 3863625, at

22  *5 (N.D. Cal. June 22, 2015); *see also Laffitte*, 1 Cal. 5th at 504 (trial court using percentage

23  method did not abuse its discretion when it considered, *inter alia*, risks and value of the litigation,

24  the contingency, novelty, and difficulty of the case, the skill shown by counsel, and the lodestar,

25  which the trial court found was not overstated).  Thus, it is appropriate to consider these factors

26  here.

27        Doing so, the Court remains concerned that the attorney's fees requested remain in excess

28  of what is reasonable for this case.  On the first factor, the amount recovered—$2 million—is

significant.  Although it is a fraction of Defendant's total maximum exposure, that maximum

exposure was likely significantly overstated, for the reasons described above.

On the second factor, Plaintiff indicates that case law on the issue was undecided at the

time the case was filed.  This is true enough; published federal and state appellate decisions

regarding the wage statement questions at issue here had not yet issued, though the plaintiffs in

those cases had prevailed at trial, *Magadia*, 999 F.3d at 672, and defeated summary judgment,

*General Atomic*, 64 Cal. App. 5th at 991.  Additionally, unpublished appellate authority existed,

and the *Sanchez* action, which apparently includes some overlapping claims, was settled after

having been pending for seven years, before or around the time this case was filed.  (*See* Doc. No.

6).  Moreover, *Rocha*, also including apparently similar claims, was filed several months before

this one (*see id.*), which suggests that the issues were not novel, nor were they so complex or

unsettled as to deter parties or counsel from pursuing them.

On the third factor, certainly counsel are experienced wage and action litigators who

timely negotiated a settlement for the class.  (Doc. Nos. 27-2 at 3:19-28-4:1-22; 27-3 at 4:3-27;

27-4 at 3:8-28-4:1-25; 27-5 at 3:8-28-4:1-28-5:1-10).  Their familiarity with the issues, as

presented in other pending cases, was likely valuable to the class during negotiations.  However,

given that there was no formal discovery, no depositions, no motion practice, and no trial, the

skill and work quality required in this case are not readily apparent.

On the fourth factor, the fee was contingent, and as counsel points out, such cases do not

always lead to recovery and can lead to significant unreimbursed expenses.  (Doc. No. 27 at 27:7-

24).  Yet, there does not appear to be a serious threat of financial burden in this case.  The key

issue is one of law that was already pending in the courts and Defendant had already settled or

was close to settling an action that included apparently similar claims.

On the fifth factor, though percentage awards of one-third may be reasonable in some

cases, "[p]ercentage awards of between twenty and thirty percent are common."  *Taylor v. FedEx

Freight, Inc.*, 1:13-cv-002237-DAD-BAM, 2016 WL 6038949, at *5 (E.D. Cal. Oct. 13, 2016);

*see also* Newberg on Class Actions § 15:83 (2021) ("An earlier edition of the Treatise reported

that (then-available) empirical studies showed that fee awards in class actions average around

one-third of the recovery, a statement quoted by many courts.[]  More recent empirical data on fee awards demonstrate that percentage awards in class actions are generally between 20–30%,[] with the average award hovering around 25%"); *see also Arredondo v. Southwestern & Pacific Specialty, Inc.*, 2022 WL 2052681, (E.D. Cal. Jun. 7, 2022 (awarding attorney's fees of 33.33% for counsel in a case where defendant produced 45,000 pages of discovery and where the fees requested was $416,666.25 and the lodestar check was $479,416); *Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998 (E.D. Cal. May 8 2019) (awarding attorney's fees of 33.33% for a case that consisted of nine years of litigation, an appeal to the Ninth Circuit, discovery disputes, review of over 300,000 documents, and over 23,000 hours lodged by counsel); *Wilson v. Metals USA, Inc.*, 2021 WL 516585 (E.D. Cal. Feb. 11, 2021) (awarding attorney's fees of 34.9% where the lodestar was $1,040,810 and the fees requested at 34.9% was $983,228.20); *Newell*, 2022 WL 2704551 (reducing attorney's fees from 35% to 30% where litigation spanned over six years, significant formal and informal discovery was conducted, and counsel spent 600-700 hours on the case); *Castro v. Paragon Industries, Inc.*, 2021 WL 204233 (E.D. Cal. May 20, 2021) (reducing attorney's fees from 35% to 27.5% where there was no motions practice and the case resolved after limited discovery).

　　　　Here there was no protracted discovery.  And the case reached resolution quickly. Therefore, the percentage requested is slightly above the range of other class action settlements. Given each of these factors, a twenty-eight percent (28%) fee, subject to a lodestar cross-check, is more reasonable.  *See Briseño*, 998 F.3d at 1024 (in both pre- and post-certification settlements, court must "examine whether the attorneys' fees arrangement shortchanges the class").

　　　　"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth,* 654 F.3d at 941. Courts consider the reasonable rates for the specific geographic area and type of practice.  *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986).  Counsel are experienced wage and hour and class action litigators, with 18 or more years of experience each. Each attorney represents that their current hourly rate is $750, and base their estimate of the

lodestar on these rates.  They refer the Court to cases in which fees in this range were approved.  (Doc. Nos. 27-2 at 5:7-8, 5:24-28-6: 1-12; 27-3 at 5:1-9; 27-4 at 5:3-11; 21-5 at 5:15, 19-27).  Nearly all of these cases were in state and federal courts in the Northern and Central District, i.e., the greater Bay Area and Los Angeles.  Plaintiff still has not provided evidence or case law that persuades the Court the hourly rates are consistent with those routinely analyzed and approved in this District.  *Cf. Ruiz v. JCP Logistics, Inc.*, No. 13-1908-JLS-ANx, 2016 WL 6156212, at *9 (C.D. Cal. Aug. 12, 2016) (counsel has the burden of showing that requested rates are in line with those in the community).

The Court's review of recent cases suggests that these rates are above those routinely analyzed and approved as reasonable in this district.  *See, e.g.*, *Cooks v. TNG GP*, No. 2:16-cv-01160-KJM-AC, 2021 WL 5139613, at *6 (E.D. Cal. Nov. 4, 2021) (calculating lodestar using rate of $695 for attorneys with 30 years' experience and $660 for attorneys with 20 to 30 years' experience); *Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-cv-01063-KJM-CKD, 2020 WL 5535399, at *10 (E.D. Cal. Sept. 15, 2020) (calculating lodestar using rate of $695 for attorney with 25 years' experience); *Hartley v. On My Own, Inc.*, No. 2:17-cv-00353-KJM-EFB, 2020 WL 5017608, at *5 (E.D. Cal. Aug. 25, 2020) (calculating lodestar based on $650 per hour for attorneys with 31 and 40-plus years' experience, and $350 for attorney with 12 years' experience); *Rodriguez*, 2019 WL 246652, *13 (calculating lodestar using range of $540 to $695 per hour for counsel with over 20 years' experience).  For purposes of the lodestar cross-check, the Court will consider rates of $625 for Attorneys Lee and Hyun, and $695 for Attorneys Choi and Marder.

The Court also considers the hours spent on this case.  At preliminary approval, counsel indicated that had spent 251.3 hours on the case and expected to spend approximately 90 additional hours through final approval.  (Doc. Nos. 21-2, 21-3, 21-4, and 21-5).  At final approval, counsel represents they collectively spent 349.8 hours on the case and anticipate spending an additional 40 hours (10 hours per attorney).  (Doc. Nos. 27 at 29:15-17; 27-2 at 5:1-6 (87.1 hours for Attorney Larry Lee); 27-3 at 5:19-20 (96.8 hours for Attorney Edward Choi); 27-4 at 4:26-27-5:1 (54.1 hours for Attorney William Marder); 27-5 at 5:11-13 (111.8 hours for

Attorney Dennis Hyun)).  The records submitted in connection with the fee motion reflect counsel currently lodged 349.8 hours on the case.  (Doc. Nos. 27-2 at Exhibit A, 27-3 at Exhibit B, 27-4 at Exhibit A, 27-5 at Exhibit A).  After spending 40 hours through the final approval hearing, Counsel spent a total of 389.8 hours on the case.  (Doc. No. 27 at 30).  Counsel still does not indicate that any associates or other legal professionals assisted on this.  (*See generally* Doc. Nos 27, 27-2, 27-3, 27-4, 27-5).  This suggests that the number of hours billed by counsel may involve administrative or other tasks that should reasonably be billed at lower rates.  *See, e.g., Saenz v. Lowe's Home Centers, LLC*, No. 2:17-cv-08758-ODW-PLA, 2019 WL 3456810, at *6 (C.D. Cal. July 31, 2019); *Ruiz*, 2016 WL 6156212, at *9.

The Court believes the hours each attorney spent on this case are reasonable.  However, given the foregoing, the Court determines using more reasonable hourly rates, that the lodestar amount for cross-check purposes is $255,588.00.  Because of the result achieved and the contingent nature of the fee, the Court accepts the multiplier of 2.05 as suggested by Plaintiff as appropriate.  (Doc. No. 27 at 31).  As a class action authority indicates, "most multipliers are in the relatively modest 1-2 range;[] this fact counsels in favor of a presumptive ceiling of 4 or slightly above twice the mean."  Newberg on Class Actions, § 15:87 (2021).  To reach the amount of $600,000.00 in fees that class counsel as requested here, a multiplier of approximately 2.35 would have to be applied to the lodestar.  While such a multiplier may be perfectly appropriate in other matters, here, the court finds that such an attorney's fee award is not justified int this case.  The adjusted lodestar, for cross-check purposes, is thus $523,955.41.[1]  This cross-check confirms the reasonableness of the 28% fee award found above.

Considering the lodestar cross-check and compared to the cases discussed *supra*, this action involved no formal discovery, no depositions, limited motions practice, and no prolonged

---

[1] The Court calculated the lodestar as follows.  For Attorney Larry Lee, who reports a total of 97.1 hours billed, applying an hourly rate of $625, his portion of the total lodestar is $124,409.38.  For Attorney Edward Choice, who reports a total of 106.8 hours billed, applying an hourly rate of $695, his portion of the total lodestar is $152,163.3.  For Attorney William Marder, who reports a total of 64.1 hours billed, his portion of the total lodestar is $91,326.48.  For Attorney Daniel Hyun, who reports a total of 121.8 hours billed, his portion of the total lodestar is $156,056.25.

litigation.  Accordingly, the Court will award a fee of twenty-eight percent (28%) of the gross settlement amount, or $560,000.00.

### 2. Costs

Class counsel seeks to reimbursement of costs connected to prosecuting this class action. (Doc. No. 27 at 10, 15, 32).  The costs awarded "should be limited to typical out of pocket expenses that are charged to a fee-paying client and should be reasonable and necessary." *Castro v. Paragon Industries, Inc.*, 2021 WL 2042333, * 12 (E.D. Cal. 2021) (quoting *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)).  Reimbursable expenses may include "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id.* (quoting *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d at 1177.

Here class counsel requests reimbursement of $7,311.08 in costs and expenses.  (Doc. No. 27-2).  The Court reviewed class counsel's declaration and finds all charges incurred to be reasonable.  Accordingly, the Court will approve the reimbursement of costs and expenses in the amount requested.

### E. Service Award to Plaintiff Manzo

As previously indicated (Doc. No. 24), a service award is likely appropriate in this case. While discretionary, service awards are "fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  They are particularly appropriate in employment actions.  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. 2015).  "'Incentive awards typically range from $2,000.00 to $10,000.00,' and '[higher] awards are sometimes given in cases involving much larger settlement amounts.'" *Sanders v. LoanCare, LLC*, No. 2:18-cv-09376-SJO (RAOx), 2019 WL 12340195, at *12 (C.D. Cal. Sept. 16, 2019) (quoting *Bellinghausen*, 306 F.R.D. at 266-67).  There is no precise method for calculating the amount of an appropriate service award; such awards are intended to compensate the plaintiff for work performed on behalf of the class and to make up for financial or reputational risk.  *Roes, 1-2 v. SFBC Management, LLC*, 944 F.3d 1045, 1057-58 (9th Cir. 2019).

1    Many courts evaluating the appropriateness of a requested service award greater than the

2    "presumptively reasonable" amount of $5,000 consider the amount by which the service award

3    exceeds the average class member's recovery.  *See, e.g., Aguilar v. Wawona Frozen Foods*, No.

4    1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2019) (and cases cited

5    therein; approving $7,500 requested when average recovery was about $500); *see also Jackson v.*

6    *Fastenal Co.*, 1:20-cv-00345-NONE-SAB, 2021 WL 5755583, *12 (E.D. Cal. Dec. 3, 2021)

7    (expressing skepticism of $7,500 request which was eight times average recovery).  Courts also

8    consider the service award's percentage of the total settlement amount.  *See, e.g., Uschold v.*

9    *NSMG Shared Servs., LLC*, 333 F.R.D. 157, 171 (N.D. Cal. 2019) (approving $8,000 service

10   awards that amounted to 0.36% of total settlement); *Wise*, 2019 WL 3943859, at *11 (approving

11   $10,000 service awards that amounted to 0.6% of total settlement).

12   Courts have considered the representative's time spent and contributions to the action.

13   *See, e.g., Rodriguez v. Danell Custom Harvesting, LLC*, 327 F.R.D. 375, 390 (E.D. Cal. 2018)

14   (plaintiffs spent 50 to 60 hours on case over ten months, awarding $4,000 each); *Arredondo v.*

15   *Delano Farms Co.*, Case No. 1:09-cv-01247-MJS, 2017 WL 4340204, at *2-3 (E.D. Cal. Sept.

16   29, 2017) (plaintiffs spent between 257 and 352 hours on case over eight years, awarding $7,000

17   each); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1181 (S.D. Cal. 2016)

18   (approving requested $5,000 when plaintiff met with counsel many times over two years, was

19   deposed, and assisted in discovery); *Arredondo*, 2022 WL 2052681, *16-*17 (approving

20   requested $10,000 settlement award for plaintiff but noting that it was over eleven times larger

21   than the average settlement payment); *Maciel v. Bar 20 Dairy, LLC*, 2021 WL 1813177 (E.D.

22   Cal. May 6, 2021) (reducing named plaintiffs' requested settlement award from $7,500 to $6,500

23   for spending over 50 hours on case and from $7,500 to $5,000 for spending 25-35 hours on case).

24   Notably, significant service awards have been approved in this district when the named plaintiff's

25   participation in the case was substantial.  *See Arredondo*, 2022 WL 2052681 at *16-*17

26   (approving $10,000 service award for named plaintiff who spent approximately 148 hours on the

27   case); *Carlin*, 380 F.Supp.3d at 1025-27 (awarding $45,000 to each of the named plaintiffs who

28   prepared and participated in lengthy depositions, participated in the nine year litigation of the

case, produced computer hard drives and thousands of pages of documents, and responded to more than 100 interrogatories); *Newell*, 2022 WL 2704551 at *11 (approving incentive payment of $35,000, 8.7 times higher than the average class member award, and $25,000, 6.2 times higher than the average class member award, to the two named plaintiffs for spending between 150 and 275 hours on the case).

Courts also consider the representative's financial risk, such as the potential liability for costs. *See, e.g., Zubia v. Shamrock Foods Co.*, No. 16-cv-03128-ABA (GRX), 2017 WL 10541431, at *21 (C.D. Cal. Dec. 21, 2017). Similarly, courts may consider general or specific evidence of potential workplace retaliation or reputational risk. *See, e.g., Staton*, 327 F.3d at 97; *Arredondo*, 2017 WL 4340204, at *2–3. It is questionable whether a court should consider the named plaintiff's general release as supporting a service award. *See Roes, 1-2*, 944 F.3d at 1057-58 (district court should have "closely scrutinized" additional "general release" payments, as such payments appear untethered to work performed for class and reflect possibility of collusion).

There is no evidence Plaintiff Manzo contributed a significant amount of time to this case. (*See* Doc. No. 27-7 at 4:4-5) (Plaintiff estimating she spent 30 hours completing tasks on this case). Plaintiff was not deposed, did not have to respond to discovery, and did not appear for the final hearing in this matter. The Court finds the requested $10,000 service payment for Plaintiff Manzo is excessive. Considering the average class member approximate recovery of $222.74, the requested $10,000 incentive award, while a small percentage of the gross settlement amount, is almost 45 times higher than the average payment. While significant service awards have been granted in this district, the representative plaintiffs in those cases lodged substantial hours and participated extensively in the litigation of the case by answering interrogatories and being deposed. *See Arredondo*, 2022 WL 2052681 at *16-*17; *Carlin*, 380 F.Supp.3d at 1025-27; *Newell*, 2022 WL 2704551 at *11. The Court reduces the requested service award and finds an award of $6,000.00 is more appropriate.

Accordingly, it is **ORDERED**:

1. Plaintiff's unopposed motion for final approval of the class action settlement (Doc. No. 27) is GRANTED to the extent that the court approves the settlement as fair,

reasonable, and adequate;

2. Plaintiff's unopposed motion for attorney's fees, costs and incentive award to Plaintiff (Doc. No. 27) is GRANTED in part to the extent the Court awards the following sums:

    a. Class counsel shall receive $560,000.00. in attorneys' fees and $7,311.08 in expenses;

    b. Plaintiff Manzo shall receive $6,000.00 as a service award; and

    c. ILYM Group, Inc. shall receive $30,000.00 in settlement administration costs and expenses.

3. The parties are directed to effectuate all terms of the settlement agreement and any deadlines or procedures for distribution set forth therein **within ten (10) months** of this date of this Order;

4. The action is DISMISSED with prejudice in accordance with he terms of the parties' settlement agreement.  The Court retains jurisdiction over this action for purposes of enforcing the parties' settlement agreement;

5. The Clerk of Court shall CLOSE this action.


Dated:   September 29, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE